IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LW CONSTRUCTION OF CHARLESTON, LLC | ) ) ) | No. 14-960C |
| Plaintiff, | ) ) | (Judge Horn) |
| v. | ) ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DEFENDANT'S MOTION FOR LEAVE
TO FILE AMENDED ANSWER WITH COUNTERCLAIM**

Pursuant to Rule 15(b) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this motion for leave of Court to amend its answer to assert a new affirmative defense of common law fraud, and to assert fraud counterclaims pursuant to common law and the False Claims Act, 31 U.S.C. §§ 3729 (FCA). The Government's proposed amended answer is attached hereto as Exhibit A. Plaintiff opposes this motion.

**STATEMENT OF THE ISSUE**

Whether the Court should grant the United States leave to amend for the purpose of adding one new affirmative defense and two counterclaims, based upon the false and fraudulent claims and documents that LW Construction of Charleston, LLC (LW) certified to the Department of Veterans Affairs (VA).

**STATEMENT OF THE CASE**

LW was awarded a $10 million contract set-aside for service-disabled veteran-owned small businesses (SDVOSB), to construct a national cemetery for the VA at Fort Jackson, SC (Fort Jackson contract). *See* Amended Complaint, Dkt. No. 22 at ¶¶ 3, 11, 12. After numerous

contract modifications and associated issues with completing the contract, LW was terminated for default. *See id.* at ¶¶ 11-76. On October 8, 2014, LW filed its complaint in this Court. Dkt. No. 1. Following the Government's answer, LW filed its certified claim with the VA, and the case was stayed until the contracting officer issued her final decision. Dkt. Nos. 8, 11, 12. LW then filed its amended complaint on December 15, 2015, seeking $5,586,992.83 for alleged wrongful termination, entitlement under the changes clause of the contract, and breach of contract. Dkt. No. 22 at ¶¶ 82-92. We answered and asserted a counterclaim for the costs incurred in reprocuring the contract, and for liquidated damages. Dkt. No. 23. The parties began discovery, which was extended until October 27, 2017. *See* Dkt. No. 59.

During discovery, Government counsel evaluated the evidence regarding LW's claims that was obtained through the production of documents from the VA and LW, and in numerous fact witness depositions. We determined that LW fraudulently presented itself as an SDVOSB to the VA, and that, absent such representation, LW would never have received the Fort Jackson contract. We then sought approval from supervisory officials at the Department of Justice to assert an affirmative defense and a counterclaim based upon fraud. On September 18, 2017, we received the necessary authorizations, and subsequently informed LW and the Court of our intent to file this motion and to assert our affirmative defense and counterclaim. *See* Dkt. Nos. 58, 60.

The proposed amended answer attached as Exhibit A details the fraudulent nature of LW's actions. In short, brothers Sidney and Gary Brantley, who own and operate several construction related business including Brantley Construction, approached Louis White, a service-disabled veteran and a Brantley Construction employee, about creating LW in an attempt to obtain Government contracts set-aside for veteran-owned small businesses. Ex. A at ¶¶ 22-41. LW was apparently formed absent any financial contribution from Mr. White, who was given

only illusory control of the business: although he was given 51% of the stock in the company, Mr. White could not perform any significant business functions without a vote of the three managing members—Mr. White, Sidney Brantley, and Gary Brantley. *Id.* at ¶¶ 41-48. At the time LW was formed and until performance on the Fort Jackson project began, the majority of Mr. White's income came from Brantley Construction. *Id*. at ¶ 33-34, 41. Even when working full time at LW, his salary was significantly less than at least two LW employees who supposedly reported to him, including Ronald Brantley, the Project Superintendent who was a former Vice President of Brantley Construction and the brother of Sidney and Gary Brantley. *Id.* at ¶¶ 67-69.

So that LW could bid on the Fort Jackson contract, Brantley Construction employees prepared for Mr. White's signature certifications that LW was a Service-Disabled Veteran-Owned Small Business as defined in FAR 52.212-3 and 38 C.F.R. § 74.2-74.4. *See* Ex. A at ¶¶ 54-61. Mr. White self-certified LW's SDVOSB status, completed the annual certifications of the Online Representations and Certifications Application website, and registered on the VetBiz.gov website. *Id.* at ¶¶ 55-59. Brantley Construction employees then estimated and prepared a proposal for the Fort Jackson contract to be submitted on behalf of LW, and that Mr. White then signed. *Id.* at ¶¶ 54. Based upon LW's representations that it was a legitimate SDVOSB, the VA awarded the Fort Jackson contract to LW. *Id.* at ¶¶ 63, 101. Although LW was required to complete the Fort Jackson contract by September 4, 2012, it failed to do so. *Id.* at ¶¶ 129-147. The VA terminated the Fort Jackson contract on October 16, 2013, after LW had submitted for payment multiple invoices. *Id.* at ¶¶ 95, 101, 147.

Based upon this information learned during discovery, the United States requests leave to amend its answer to assert a new affirmative defense under common law fraud and a counterclaim under the FCA. LW opposes this motion.

## ARGUMENT

**I.      Legal Standard**

RCFC 15 governs the amendment of an answer to assert a counterclaim. *See* Adv. Comm. Notes to 2009 Amendments to Fed. R. Civ. P. 15 ("Abrogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim."); *Va. Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:12-CV-548, 2014 WL 1308699, *6 (E.D. Va. Mar. 31, 2014). RCFC 15(a)(2) "declares that leave to amend 'shall be freely given when justice so requires,'" and the Supreme Court has made clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (discussing Fed. R. Civ. P. 15).

There is a "general presumption in favor of allowing a party to amend pleadings." *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). In the leading Supreme Court case examining whether leave to amend should be granted, the Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman*, 371 U.S. at 182; *see Phonometrics, Inc. v. Resinter N. Am. Corp.*, 124 F.3d 229 (Fed. Cir. 1997) (unpublished); *Katzin v. United States*, 115 Fed. Cl. 618, 620 (2014). Although the grant or denial of an opportunity to amend a pleading is committed to the sound discretion of the trial court, "outright refusal to grant the leave without any justifying reason appearing for the

denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182.

The act of filing suit against the United States in this Court has the effect of vesting the Court with broad authority to hear, within the same action, whatever counterclaims the Government may possess against the plaintiff. *See* 28 U.S.C. §§ 1503, 2508. The Court's counterclaim jurisdiction "was intended to permit the Government to have adjudicated in one suit all controversies between it and those granted permission to sue it." *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539 (1946); *see Continental Mgmt., Inc. v. United States*, 527 F.2d 613, 616 n.2 (Ct. Cl. 1975). Furthermore, it is "well-settled that the United States Government has a right to recover funds mistakenly or erroneously paid." *Bank One, Mich. v. United States*, 62 Fed. Cl. 474, 478 (2003).

A motion for leave to amend should be denied if the Court finds that granting leave would be futile. A finding of futility in this procedural context, however, "requires the Court to determine that the proposed amendment is subject to dismissal or so wholly and patently lacking in merit that it cannot possibly succeed." *Centech Group, Inc. v. United States*, 78 Fed. Cl. 658, 661 (2007). It is not for the Court at a motion to amend stage to "engage in an extensive analysis of the merits of the proposed amendments." *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 155 (1994). The Court's inquiry is whether the proposed amendment is "facially meritless and frivolous." *Id*.

This Court may also deny a motion to amend if the movant unduly delayed in filing the motion. In that situation, however, the Court should allow the amended pleading unless plaintiff is able to demonstrate some showing of prejudice, bad faith, or futility. *Alaska v. United States*, 15 Cl. Ct. 276, 280 (1988) ("mere delay . . . is insufficient to deny a motion to amend a

complaint . . . ); *see Veridyne Corp. v. United States*, 86 Fed. Cl. 668, 676-80 (2009). Such a showing cannot be demonstrated solely on the basis that the relief sought is adverse to the non-movant's interests. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *see also Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969) ("Appellee is prejudiced, of course, in that she gained a verdict which is now being reversed. But this is not the kind of prejudice contemplated by Rule 15(b)."). Rather, a court will only refuse to allow an amendment if the opposing party can 'show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185-86 (E.D. Pa. 1991).

## II.     The Government Meets The Requirements For Amendment

LW's false certifications that it was eligible to receive the Fort Jackson contract resulted in the Government's payment of $10,792,336.20 to an ineligible business, rather than to a legitimate SDVOSB. The interests of justice require that the Government be permitted to amend its answer to assert the affirmative defense of common law fraud and to assert an FCA counterclaim so that LW is denied from reaping any benefit, and particularly, any further benefit, from its wrongdoing at the expense of American taxpayers as well as legitimate service-disabled veteran-owned small businesses. *See O'Brien Gear & Machine Co. v. United States*, 591 F.2d 666, 678 (Fed. Cir. 1979) ("the objective of Congress [in passing the FCA] was broadly to protect the funds and property of the Government from fraudulent claims") (citation omitted). LW will be unable to demonstrate that amendment is futile or untimely, nor that it is prejudiced by the amendment.

### A.     The Government's Motion For Leave Is Not Futile

The Government's motion for leave is not futile.  Rather, its detailed allegations set forth in Exhibit A are sufficient to demonstrate that its proposed affirmative defense and counterclaim are neither facially meritless nor frivolous.  Indeed, before the Government could file this motion, it needed to seek and obtain supervisory authority within the Department of Justice.  On its face, the affirmative defense and amended answer provide sufficient detail such that a finding of futility is unwarranted.  *Centech*, 78 Fed. Cl. at 661; *St. Paul*, 31 Fed. Cl. at 155.

### B.     The Government's Motion For Leave Is Timely, And LW Cannot Demonstrate Any Prejudice

Moreover, the Government's motion for leave is timely and LW has no legitimate grounds to assert prejudice.  It is well established that "[i]n most cases, delay alone is not a sufficient reason for denying leave."  6 Charles Alan Wright et al.*, *Fed. Practice & Procedure Civ. § 1488 (3d ed.) ("Quite appropriately the courts have not imposed any arbitrary timing restrictions on requests for leave to amend and permission has been granted under Rule 15(a) at various stages of the litigation.").  Rather, the Federal Circuit has recognized that the trial court may deny amendment where the delay is "undue[,]" *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1034 (Fed. Cir. 1992) (quoting *Foman*, 371 U.S. at 182); *accord Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976) ("Mere delay is not a reason in and of itself to deny leave to amend.  There must be found some prejudice which would result to others if leave were to be granted."), meaning that "it must prejudice the nonmoving party or impose unwarranted burdens on the court."  *King v. United States*, 119 Fed. Cl. 51, 55 (quoting *Mayeaux v. La. Health Servs. & Indem. No.*, 376 F.3d 420, 427 (5th Cir. 2004)).

7

No undue delay exists here.  Discovery has been ongoing for approximately one year and a half, in which the parties exchanged numerous documents and conducted twenty-nine of thirty-one depositions.  Although a disgruntled subcontractor had challenged LW's status in a *qui tam* suit, at the time the challenge appeared to be little more than an attempt to leverage LW into paying unpaid invoices.  However, at the first deposition, on November 14, 2016, counsel for the Government began to seriously question LW's actual business structure after Gary Brantley—who is no longer one of LW's managing members—insisted on attending each deposition.  Following further internal investigation and requests for documents, and despite LW's refusal to provide requested documents, Government counsel determined that LW's claim was fraudulent and promptly sought the required internal authority within the Department of Justice to assert the affirmative defense and counterclaim.  Authority was granted on September 18, 2017, and on September 22, 2017, we informed the Court that we intended to seek further extension of discovery and file our counterclaim.  Dkt. No. 58.

In similar situations, this Court has determined that "reasonable and careful investigation into the merits of [the Government's fraud] counterclaim, after receiving all relevant probative data" does not render a motion to amend untimely, but instead "reflects a calculated search for the true facts which will facilitate a proper decision on the merits." *St. Paul Fire & Marine*, 31 Fed. Cl. at 154 (granting leave to file amended answer and counterclaims); *see also Hanover Ins. Co. v. United States,* No. 13-500C, 2017 U.S. Claims 1113, **14-15 (Ct. Fed. Cl. Sept. 15, 2017) (finding no delay in bringing fraud counterclaims when the motion to amend was filed 223 days after first suspecting the fraud, and nearly five years after the certified claim was filed with the contracting officer).

Nor could LW demonstrate prejudice, although it opposes this motion. Rather, all of the relevant facts necessary to defend against the proposed counterclaims are within LW's control, additional discovery is already scheduled, and no firm trial date is set. *See St. Paul Fire & Marine,* 31 Fed. Cl. at 154 ("Although, in the case at bar, further minuscule time-invoking discovery may appropriately ensue, due to defendant's introduction of two additional witnesses [related to the fraud counterclaim], the aggregate effect of this extension of discovery, particularly in the absence of a firm trial date or a trial date in the distant future, does not rise to the level of undue prejudice"); *Eastern Natural Gas Corp. v. Aluminum Co. of Am.,* 126 F.3d 996, 999-1000 (7th Cir. 1997) (affirming decision to grant defendant leave to file fraud counterclaim three months before trial, despite plaintiffs' assertion of undue prejudice, when plaintiffs "had the additional benefit of having within their control much of the information regarding the alleged fraud"). Furthermore, counsel for LW should have been aware that LW's SDVOSB status was in question no later than March 16, 2017, when it received a discovery request seeking documents related to that status.

The Government's motion thus meets the liberal requirements of amendment under RCFC 15.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court grant defendant leave to file the accompanying amended answer asserting the affirmative defense of common law fraud and a fraud counterclaim pursuant to the FCA.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CHAD R. READLER<br>Acting Assistant Attorney General |
|  | ROBERT E. KIRSCHMAN, JR.<br>Director |
|  | s/ Martin F. Hockey, Jr.<br>MARTIN F. HOCKEY, JR.<br>Deputy Director |
| OF COUNSEL:<br><br>EYVONNE MALLET<br>Attorney<br>Office of General Counsel<br>Department of Veterans Affairs | s/ Erin K. Murdock-Park<br>ERIN K. MURDOCK-PARK<br>Trial Attorney<br>JEFFREY M. LOWRY<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-3753<br>Facsimile: (202) 514-8624<br><br>*Attorneys for Defendant* |

October 13, 2017

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on October 13, 2017, defendants filed through the United States District Court CM/ECF System, "DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER WITH COUNTERCLAIM," causing it to be served by electronic means on all counsel of record.

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
Trial Attorney
United States Department of Justice
