# EXHIBIT A

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LW CONSTRUCTION OF CHARLESTON, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-960 |
| v. | ) | (Horn, J.) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S AMENDED ANSWER TO
## AMENDED COMPLAINT AND AMENDED COUNTERCLAIM

For its answer to the amended complaint, defendant admits, denies, and alleges as follows:

1.      Denies the allegations contained in paragraph 1 for lack of knowledge or information to form a belief as to their truth.

2.      The allegations contained in paragraph 2 constitute conclusions of law to which no answer is required; to the extent they may be deemed allegations of fact, they are denied. Defendant avers that the United States is the defendant in this action.

3.      The allegations contained in paragraph 3 constitute conclusions of law to which no answer is required; to the extent they may be deemed allegations of fact, they are denied. Aver that the contract number is VA101CFM-C-0042.

4.      Admits the allegations contained in paragraph 4 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 4.

5.      Admits the allegations contained in paragraph 5 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 5.

6.      Admits the allegations contained in paragraph 6 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 6.

7.      Admits the allegations contained in paragraph 7 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 7.

8.      Admits the allegations contained in paragraph 8 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 8.

9.      The allegations contained in paragraph 9 constitute conclusions of law to which no answer is required; to the extent they may be deemed allegations of fact, they are denied.

10.     The allegations contained in paragraph 10 constitute conclusions of law to which no answer is required; to the extent they may be deemed allegations of fact, they are denied.

11.     Admits the allegations contained in paragraph 11 to the extent supported by the contract cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 11.

12.     Admits the allegations contained in paragraph 12 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 12.

13.     Admits the allegations contained in paragraph 13 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 13.

14.     Admits the allegations contained in the first and second sentences of paragraph 14 to the extent supported by the document cited, which is the best evidence of its contents.  Admits the third sentence.  Deny the fourth sentence and aver that pursuant to the contracting officer's October 29, 2015 final decision includes consideration for any additional amount owed LW.

15.     Admits the allegations contained in the first and second sentence of paragraph 15 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegations contained in the third and fourth sentences.

16.     Admits the allegations contained in the first, second, and third sentences in paragraph 16 to the extent supported by the document cited, which is the best evidence of its contents.   Denies the fourth sentence and avers that pursuant to the contracting officer's October 29, 2015 final decision includes consideration for any additional amount owed LW.

17.     Admits the allegations contained in paragraph 17 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 17.

18.     Admits the allegations contained in paragraph 18 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 18.

19.      Admits the allegations contained in paragraph 19 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 19.

20.     Denies.

21.     Admits the allegations contained in the first and second sentence of paragraph 21 to the extent supported by the document cited, which is the best evidence of its contents.  Admits the allegations contained in the first part of the second sentence; otherwise denies the allegations contained in paragraph 21 and avers that pursuant to the contracting officer's October 29, 2015 final decision includes consideration for any additional amount owed LW.

22.     Admits the allegations contained in the first, second, and third sentences of paragraph 22 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegations contained in the third sentence.

23.     Admits the allegations contained in the first and second sentences of paragraph 23 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegations contained in the third sentence and avers that pursuant to the contracting officer's October 29, 2015 final decision includes consideration for any additional amount owed LW.

24.     Admits the allegations contained in paragraph 24 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 24.

25.     Admits the allegations contained in paragraph 25 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 25.

26.     Admits the allegations contained in the first, second, and thirds sentences of paragraph 26 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegations contained in the fourth sentence of paragraph 26.

27.    Admits the allegations contained in paragraph 27 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 27.

28.    Denies.

29.    Admits the allegations contained in paragraph 29 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 29.

30.    Admits the allegations contained in the first and second sentences of paragraph 30 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegations contained in the third sentence.

31.    Admits the allegations contained in paragraph 31 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 31.

32.    Denies.

33.    Admits the allegations contained in paragraph 33 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 33.

34.    Denies.

35.    Denies.

36.    Denies.

37.    Admits the allegations contained in paragraph 37 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 37.

38.     Admits the allegations contained in paragraph 38 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 38.

39.     Admits the allegations contained in the first sentence of paragraph 39 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the second sentence.

40.     Admits the allegations contained in paragraph 40 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 40.

41.     Admits that the Department of Veterans Affairs (VA) required LW to relocate irrigation pipes installed under tree root balls, otherwise denies that the trees or the pipes were properly installed.  Denies that the VA first notified LW that it was concerned with the installation on April 19, 2013 for lack of knowledge as to the truth of the matter asserted.

42.      Admits the allegations contained in paragraph 42 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 42.

43.     Admits the allegations contained in paragraph 43 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 43.

44.     Denies.

45.     Admits the allegations contained in paragraph 45 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 45.

46.     Denies.

47.     Denies.

48.     Admits the allegations contained in paragraph 48 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 48.

49.     To the extent paragraph 49 calls for a legal conclusion, denies paragraph 49; admits the allegations contained in paragraph 49 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 49.

50.     Admits that LW requested the VA provide the specific distance for the irrigation pipe to be away from root balls; otherwise denies the allegations contained in paragraph 50.

51.     Admits the allegations contained in paragraph 51 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the second sentence.

52.     Admits the allegations contained in paragraph 52 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the second sentence.

53.     Admits the allegations contained in the first sentence of paragraph 53 to the extent supported by the document cited, which is the best evidence of its contents.  Denies the allegation in the first part of the second sentence that the specification requirement exceeds the recommendations of Clemson University for lack of knowledge as to the truth of the matter asserted.  Denies the allegations in the second part of the second sentence that the specification for 4" of mulch "caused the plants not to grow well."  Denies the third sentence.

54.     Denies.

55.     Denies.

56.    Denies.

57.    Admits the allegations contained in paragraph 57 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 57.

58.    Admits the allegations contained in paragraph 58 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations.

59.    Admits the allegations contained in paragraph 59 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 59.

60.    Admits the allegations contained in the first sentence of paragraph 60 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 60.  Admits the allegation in the second sentence that the VA did not issue a change order; otherwise denies the allegation that there was a change in the contract requirements.

61.    Admits the allegations contained in paragraph 61 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 61.

62.    Denies.

63.    Deny for lack of knowledge as to the truth of the matter asserted.

64.    Admits the allegations contained in paragraph 64 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 64.

65.    Denies.

66.     Admit that the VA rejected the concrete work; otherwise deny characterization that the work was "in place," or any implication that the work was previously accepted.

67.     Denies for lack of knowledge regarding the truth of the matter asserted.

68.     Denies.

69.     Admits that LW requested the VA change its inspection standards; otherwise denies.

70.     Denies.

71.     Denies for lack of knowledge regarding the truth of the matter asserted.

72.     Denies.

73.     Admits the allegations contained in paragraph 73 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 73.

74.     Admits the allegations contained in paragraph 74 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 74.

75.     Admits the allegations contained in paragraph 75 to the extent supported by the documents cited which are the best evidences of their contents; otherwise denies the allegations contained in paragraph 75.

76.     Admits.

77.     Admits the allegations contained in the first sentence of paragraph 77 to the extent supported by the document cited which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 77.  Denies the allegations contained in the second sentence of paragraph 77.

10

78.    Denies.

79.    Admits.

80.    Denies.

81.    Admits.

82.    Defendant incorporates by reference its responses to paragraphs 1-81 of the Complaint, above.

83.    Admits.

84.    Admits the allegations contained in paragraph 84 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 84.

85.    The allegations in paragraph 85 constitute conclusions of law and plaintiff's characterization of its case to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

86.    Denies.

87.    Defendant incorporates by reference its responses to the preceding paragraph of the Complaint, above.

88.    Admits.

89.    The allegations contained in paragraph 89 constitute conclusions of law and plaintiff's characterization of its case to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

90.    Denies.

91.    Defendant incorporates by reference its responses to the preceding paragraph of the Complaint, above.

92.    The allegations contained in paragraph 92 constitute conclusions of law and plaintiff's characterization of its case to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

93.    Denies that plaintiff is entitled to the relief set forth in the prayer for relief immediately following paragraph 93, or to any relief whatsoever.

94.    Denies each and every allegation not previously admitted or otherwise qualified.

### DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSE

1.    These counterclaims arise out of the same subject matter as complained of by plaintiff in the amended complaint as well as the plaintiff's representations and certifications to the VA that it was a Service-Disabled Veteran-Owned Small Business (SDVOSB) eligible to receive an award of $10,273,000 for the subject contract, eligible for payments under that contract, and entitled to $5,586,992.834 in claims.

2.    Jurisdiction is provided by 28 U.S.C. §§ 1503 and 2508, and 41 U.S.C. § 7104.

### FACTUAL BACKGROUND CONCERNING LW'S SDVOSB CERTIFICATION

A.  Overview of Counterclaims

3.    This first group of counterclaims assert claims under the False Claims Act, 31 U.S.C. §§ 3729-3733, and common law, against plaintiff LW Construction of Charleston, LLC (LW) based upon LW's submission of false claims or false statements, or causing the submission of false claims or false statements, regarding LW's eligibility as a Service-Disabled Veteran-Owned Small Business (SDVOSB), which was a requirement to obtain the contract for the construction of Phase 1B of the Fort Jackson National Cemetery, Contract Number VA101CFM-C-0042 (the Fort Jackson Contract) and to obtain payments under that contract.  The second group of counterclaims assert claims related to LW's default.

4.      Although statutory, regulatory, and contractual provisions required that an SDVOSB must be owned and controlled by service-disabled veterans, the evidence discussed below demonstrates that LW was not subject to the day-to-day or long-term operational control of the service-disabled veteran, Louis White.  Instead, and as part of this fraudulent scheme, Sidney and Gary Brantley, who are not service-disabled veterans, retained control over LW's operations, its bid to obtain the Fort Jackson Contract, and the performance of that contract.

5.      Further, although statutory, regulatory, and contractual provisions required that an SDVOSB meet the criteria to be a small business, the evidence discussed below demonstrates that LW did not meet this criteria and was therefore ineligible as an SDVOSB.  Instead, and as part of this fraudulent scheme, LW was financially reliant on Brantley Construction Company (Brantley Construction), and on Sidney and Gary Brantley, and was otherwise under the control of Brantley Construction and its principals so as to be affiliated with Brantley Construction and other companies owned by, or affiliated with, Brantley Construction, and, therefore, LW was not a qualified small business, much less a qualified SDVOSB.

6.      By submitting or causing to submit false claims or false statements regarding LW's SDVOSB status, plaintiff wrongfully obtained the award of the Fort Jackson Contract and payments under that contract in violation of the False Claims Act.  In this regard, plaintiff fraudulently induced the VA to award the contract and expressly and impliedly submitted, or caused to be submitted, false certifications or false statements as to its eligibility for the contract award and payments under that contract.

7.      By submitting false claims or statements regarding LW's SDVOSB status in order to obtain the Fort Jackson Contract and payments under that contract, plaintiff is also liable under a theory of common law fraud.  Further, LW's fraudulent and wrongful conduct in

obtaining the award of the Fort Jackson Contract and payments under that contract resulted in LW's unjust enrichment in an amount to be determined at trial.

     B.   <u>Statutory and Regulatory Requirements for SDVOSB Contracting</u>

          *i.*   *VA Requirements*

    8.     Section 502 of the Veterans Benefits, Health Care, and Information Technology Act of 2006 (Veterans Benefits Act), P.L. 109-461, as codified at 38 U.S.C. § 8127(a)(1)(B), authorizes the VA Secretary to establish a goal that not less than three percent of VA contracts and subcontracts be awarded to an SDVOSB.  The purpose of this goal is to "increase contracting opportunities for small business concerns owned and controlled by . . . veterans with service connected disabilities."  *Id*. § 8127(a)(1).

    9.     The Veterans Benefits Act permits contracts to be set aside for SDVOSB either on a sole-source basis, if certain conditions are met, or through limited competitions in which only veteran-owned firms can submit bids.  38 U.S.C. §§ 8127(c) and (d).  The statute establishes a priority for the award of contracts to small businesses with the highest priority being SDVOSBs.  *Id*. § 8127(i)(1).

    10.     Under the Veterans Benefits Act, firms are only eligible for the SDVOSB contracting program if the VA determines that they are "owned and controlled by . . . a veteran with a service-connected disability."  38 U.S.C. §§ 8127(f)(4); *accord* 38 C.F.R. § 74.2.

    11.     Regulations the VA issued to implement these statutory provisions state that to qualify for a contract that is set aside for SDVOSB, a firm must be at least 51% unconditionally and directly owned by one or more service disabled veterans.  38 C.F.R. § 74.3.  Additionally, VA regulations provide that the service disabled veteran must control "both the strategic policy

setting exercised by boards of directors and the day-to-day management and administration of business operations."  *Id*. § 74.4(b).

12.     Under the VA regulations, although non-veterans may be involved in the management of a firm, the non-veteran may not: (1) exercise actual control or have the power to control the applicant or participant; or (2) receive compensation from the applicant or participant in any form as directors, officers or employees, including dividends, that exceeds the compensation to be received by the highest officer who must be a service-disabled veteran.  38 C.F.R. § 74.4(g).

   *ii.  Federal Acquisition Regulations*

13.     Under the Federal Acquisition Regulations (FAR), at the time that a firm submits an offer on a contract that is set-aside for SDVOSBs, the company "must represent to the contracting officer that it is a . . . Service-disabled veteran-owned small business concern."  48 C.F.R. § 19.1403(b).

14.     Similar to the VA regulations, FAR section 52.212-3, titled Offeror Representations and Certifications, defines a "Service-disabled veteran-owned small business concern" as a small business concern that is 51% owned by one or more service-disabled veterans, "[t]he management and daily business operations of which are controlled by one or more service-disabled veterans."  48 C.F.R. § 52.212-3.

15.     FAR section 52.219-1(c)(7) provides a selection for the following contractor representation for SDVOSB status and eligibility: "The offeror represents as part of its offer that it __ is,  ___ is not a service-disabled veteran-owned small business concern."

16.     Beginning in or about 2005, FAR Subparts 4.11 and 4.12 required all contractors to complete representations and certifications in the Online Representation and Certification

Application (ORCA), including this SDVOSB certification.  FAR part 4 also required

contracting officers to review a contractor's online representations and certifications before

awarding a contract.

     *iii.  Small Business Size Regulations*

     17.     The Small Business Administration (SBA) is empowered through the Small

Business Act to establish criteria to measure whether companies are considered small businesses.

Pursuant to this authority, SBA has issued regulations at 13 C.F.R. § 121.201 to establish

industry-by-industry definitions, based upon industries in the North American Industry

Classification System (NAICS), of small businesses determined by either a company's revenues

or the number of its employees.  *See also* 48 C.F.R. § 19.102.

     18.     The FAR and SBA regulations also provide that if a company is financially reliant

upon, or owned by or controlled by another company, the companies will be considered affiliated

and all of the affiliated companies' revenues or employees, depending upon the applicable size

regulation, will be counted cumulatively when determining whether they meet the small business

size criteria.  48 C.F.R. § 19.101; 13 C.F.R. § 121.103.

     *iv.  Enforcement of SDVOSB Fraud*

     19.     On December 22, 2006, through the passage of the Veterans Benefits and

Information Technology Act of 2006, Congress mandated that the VA restrict contract awards to

SDVOSBs if two or more such businesses would compete for the award and offer a fair and

reasonable price.  *See* 38 U.S.C. § 8127(d).  Businesses that misrepresent their status as eligible

SDVOSBs are subject to debarment from contracting with the VA.  38 U.S.C. § 8127(g).

     20.     The VA Debarment and Suspension Committee has issued supplemental

regulations identifying causes for debarment, in addition to those listed in FAR 9.406-2, so that

the VA Suspension and Debarment Officer may debar contractors that misrepresent their

SDVOSB eligibility.  48 C.F.R. § 809.406-2.

21.    The VA Office of Inspector General (OIG) issues a semi-annual report that

summarizes the VA OIG activities for the preceding six months.  As set forth in these reports,

the VA OIG regularly investigates cases and refers for criminal and civil fraud prosecution, and

the Government routinely prosecutes cases against individuals and companies that engage in

schemes to fraudulently obtain contracts set-aside for eligible SDVOSBs.  *See, e.g.*, VA OIG

Semiannual Report to Congress, Issue 77, Oct. 1, 2016 - March 31, 2017 at pp. 51-52.

C.    The Fraudulent Scheme

i.    *Establishment of LW*

22.    Sidney Brantley and Gary Brantley are brothers who own and operate Brantley

Construction Company (Brantley Construction) as well as a number of other construction and

construction related businesses including Brantley Construction Services, Brantley Management,

and BCC Holdings (collectively the Brantley Companies).  Sidney Brantley started Brantley

Construction in 1977.  Sidney Brantley is a licensed professional engineer with over 40 years of

experience in commercial and industrial construction dealing with military and private contracts.

23.    Sidney Brantley, either in whole or in part, owns approximately 26 companies.

24.    Sidney Brantley is currently the majority owner of LW and holds a 98%

ownership interest.

25.    Sidney Brantley has a general contractor's license and a master's degree in civil

engineering.

26.    In 2009, Sidney Brantley had an adjusted gross income of $770,572, earned from

his various companies.  In 2010, Sidney Brantley earned $859,036.

27.    Sidney Brantley is not a service-disabled veteran.

28.    Gary Brantley is a licensed professional engineer who joined Brantley Construction in 1986 and currently serves as its President.

29.    Gary Brantley has a general contractor's license and a master's degree in civil engineering.

30.    Gary Brantley owns, in whole or in part, at least four companies.

31.    In 2009, Gary Brantley had an adjusted gross income of $309,532 earned from his various companies.  In 2010, Gary Brantley earned $384,194.

32.    Gary Brantley is not a service-disabled veteran.

33.    Louis White is a service-disabled veteran who is currently employed by Brantley Construction, and was employed by Brantley Construction as a project manager from 2001 through 2010.

34.    In 2009, Mr. White received a salary of $80,146 from Brantley Construction. Mr. White received a salary from Brantley Construction through at least 2010.

35.    Mr. White served in the United States Air Force from 1980 until early 2000.  Mr. White received a 20 percent service disability rating.

36.    Mr. White possesses no degrees or professional licenses.

37.    On or before September 11, 2008, Sidney Brantley approached Mr. White with a proposal to set up a new company that would be a separate legal entity from Brantley Construction and for which the Brantley brothers would provide the financial backing.  In exchange for his cooperation in forming this new company, the Brantley brothers would give Mr. White 51% ownership.

38.    In this conversation, or related conversations, Sidney Brantley explained to Mr. White that one of the goals of the company would be to obtain government contracts set aside for veterans, and that Mr. White's status as a service-disabled veteran would be of assistance in obtaining these contracts.

39.    Mr. White agreed to this proposal.

40.    Sidney and Gary Brantley's intent in establishing LW was to allow LW and Brantley Construction and the Brantley Companies to participate in and profit from contracts that would be awarded by the Federal Government on a set-aside basis to SDVOSBs.  As Gary Brantley testified at his deposition, they both helped Mr. White and LW with the hope that "we could – could make some money on it . . . I mean, that's – we're in business to make money."

41.    Effective September 11, 2008, Sidney Brantley, Gary Brantley, and Louis White formed LW.  Ex. 1.  In conjunction with the establishment of LW, Sidney Brantley, Gary Brantley, and Louis White entered into an operating agreement (the LW Agreement).  *Id.*

42.    Under paragraph 1.09 of the LW Agreement, Mr. White received 51% of the "Company Interest" while Sidney and Gary Brantley received 25% and 24% interest, respectively.  Ex. 1 at 3.  According to the LW Agreement, Sidney Brantley contributed $250 into the company while Gary Brantley contributed $240.  Although the LW Agreement indicated that Mr. White contributed $510 for his interest in LW, *see* Ex. 1 at 3, in actuality, he did not contribute any money into the company.  No other capital contributions were made to finance LW.

43.    The LW Agreement contained a general prohibition on the sale or transfer of an ownership interest unless agreed to by all other owners of the company.

44.    The LW Agreement also contained various provisions that prevented Mr. White from exercising control over the day-to-day management and administration of business operations and long-term operational control of LW.  Notably, the LW Agreement required the consent in writing of all members before any member could exercise the functions of day-to-day and long term operations.  Specifically, paragraph 6.02 of the agreement provided that:

> **NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, all members must consent in writing in order that any of the powers set forth below may be exercised.** By way of illustration, but not in limitation of the foregoing, the Members shall have the power and authority, on behalf of the Company, subject to voting requirements as set forth herein:
>
> (a)    To execute all agreements . . . ;
> (b)    To collect and enforce the collection [of money]. . . ;
> (c)    To hire, supervise and terminate on behalf of the Company . . . ;
> (d)    To borrow money and incur other obligations . . . ;
> (e)    To draw, make, accept, endorse, sign and deliver any notes . . . ;
> (f)    To purchase . . . insurance . . . ;
> (g)    To hold and own any . . . properties in the name of the Company;
> (h)    To establish, maintain and draw upon . . . . accounts in the name of the Company . . . ;
> (i)    To compromise any claim or liability due to the Company;
> (j)    To execute . . . and file any [securities related documentation];
> (k)    To make any tax elections to be made by the Company;
> (l)    To invest funds of the Company; . . . .

Ex. 1 at 12.

45.    In 2011, when the VA requested LW to provide information to establish that Mr. White had control over LW, LW did not produce any additional documents establishing that Sidney and Gary Brantley had agreed to cede full control of LW to Mr. White or otherwise waive the requirements of the LW Agreement.  Instead, in 2011, LW rewrote its operating agreement in an attempt to demonstrate that it met the control requirements and backdated the document to be effective as of the date of the original agreement.

46.    Both at the time that LW bid on the Fort Jackson Contract, and during the performance of that contract, Sidney and Gary Brantley exercised considerable control over LW. LW's bank account authorized Gary and Sidney Brantley, as well as Mr. White, to make draws. In addition to Louis White, Gary and Sidney Brantley signed contracts on behalf of LW.

47.    Both at the time that LW bid on the Fort Jackson Contract, and during the performance of that contract, Sidney and Gary Brantley also exercised control over the selection of contracts that LW submitted bids on, the performance of contracts by LW, the employees that were used to perform these contracts, and many other day-to-day and long-term operational functions of LW.

48.    Both at the time that LW bid on the Fort Jackson Contract, and during the performance of that contract, Louis White did not exercise day-to-day or long-term operational control over LW.

ii.    *Award of the Fort Jackson Contract and LW SDVOSB Certifications*

49.    On March 30, 2009, the VA issued solicitation number VA-101-09-RP-0100 for offers to perform the construction of Phase 1B of the Fort Jackson National Cemetery. Ex. 2.

50.    The solicitation restricted competition to SDVOSBs. The solicitation further provided that a "Service-disabled veteran-owned small business concern" was defined as a small business that was "[n]ot less than 51 percent . . . owned by one or more service-disabled veterans . . . and . . . [t]he management and daily business operations of which are controlled by one or more service-disabled veterans . . . and . . . [t]he business is listed in the VetBiz.gov Vendor Information Pages. . . ." Ex. 2 at 20-22.

51.    The solicitation's small business size standard was $33.5 million in average revenues over the preceding three years. Ex. 2 at 23.

52.     The solicitation required offerors to register in the Central Contractor Registration database and complete all of the required representations and certifications prior to award.  Ex. 2 at 5.

53.     Christina McAlhaney, an estimator employed at Brantley Construction, was responsible for identifying bid opportunities for both Brantley Construction and LW, with SDVOSB projects going to LW and other contracts going to Brantley Construction.  Sidney Brantley was ultimately responsible for deciding whether or not either company would bid on a project, as well as the price of the bids.  Along with Sidney Brantley, Ms. McAlhaney would request subcontractor proposals and prepare the bids for both Brantley Construction and LW.

54.     Upon information and belief, Ms. McAlhaney and Sidney Brantley identified the Fort Jackson Contract as a potential opportunity for LW, solicited subcontractor proposals for work on the project, and prepared LW's bid for the project.  Mr. White signed the proposal.

55.     The Online Representations and Certifications Application (ORCA) website was established by the Government as a tool for contractors to certify their eligibility to receive certain contracts, including those set-aside for SDVOSBs.

56.     On or before March 30, 2009, Mr. White, with the assistance of Christina McAlhaney, self-certified in ORCA that LW was an SDVOSB and was owned and controlled by a service-disabled veteran.  *See* Ex. 3.

57.     The VetBiz.gov Vendor Information Pages were established to allow contractors to certify their eligibility for VA-specific SDVOSB set-aside contracts.

58.     On or before May 27, 2009, Mr. White, with the assistance of Christina McAlhaney, registered on the VetBiz.gov Vendor Information Pages and self-certified that LW

was an SDVOSB pursuant to 38 U.S.C. § 8127.  *See* Ex. 4.  The certification statement required

Mr. White to represent that LW was owned and controlled by a service-disabled veteran.

59.    At the time he submitted the certifications in 2009, Mr. White remained a full-

time employee of Brantley Construction.

60.    On April 29, 2009, LW submitted its proposal in response to the Fort Jackson

Contract solicitation.  The proposal included a representation that LW had completed the

required certifications on the ORCA website.

61.    On information and belief, Chris Hilliard, a bookkeeper working for Brantley

Construction, prepared the certification package LW submitted to the VA's Center for Veteran's

Enterprise (CVE) to support LW's claim for verified SDVOSB status.  Mr. White signed the

certification documents.

62.    On May 27, 2009, the VA reviewed whether LW had completed the necessary

certifications, and, based on LW's representations in ORCA and on the Vetbiz.gov website, *see*

Ex. 4, the VA determined that LW was eligible to receive the award for the Fort Jackson

Contract.

63.    The VA, in reliance on LW's misrepresentations, awarded LW the Fort Jackson

Contract (Number VA101CFM-C-0042) on June 2, 2009 for $10,273,000.

*iii.  LW Was Financially and Managerially Reliant on Brantley Construction, The
     Brantley Companies and Sidney and Gary Brantley*

64.    Sidney Brantley, with the assistance of Christina McAlheney, was responsible for

identifying new work for LW and had the final approval over whether or not LW would bid on

contracts.

23

65.     Gary Brantley was responsible for the day-to-day operations of LW including LW's finances and its subcontracts.

66.     Louis White was employed by Brantley Construction until LW began working on the Fort Jackson Contract, and returned to Brantley Construction after the VA terminated LW's participation on the Fort Jackson Contract for default.

67.     Ronald Brantley, a former Vice-President of Brantley Construction and the brother of Sidney and Gary Brantley, was hired as the on-site project superintendent for the Fort Jackson Contract.  He nominally reported to Louis White.  In 2010, he received a salary of $103,006 from LW.

68.     In addition to Ronald Brantley, LW hired Herman "Bert" Bailey, previously employed by Brantley Construction, to serve as the assistant project superintendent at Fort Jackson.  In 2010, he received a salary of $95,599.  In 2012, Mr. Bailey was reassigned by Gary Brantley to work on a project for Brantley Construction.

69.     Louis White nominally served as the "Project Manager" for the Fort Jackson project, allegedly responsible for supervising Ronald Brantley and Bert Bailey.  In 2010, he received a salary of $70,404.

70.     LW relied on Brantley Construction for its healthcare plan.

71.     LW relied on Brantley Construction employees for estimating new work and obtaining subcontractors for existing work.

72.     LW relied on Brantley Construction employees to perform bookkeeping services.

73.     At the time it bid on the Fort Jackson Contract, LW had no employees, no office space, and no assets beyond the $1,000 allegedly contributed to the company per the agreement.

74.     LW relied entirely on Brantley Construction for office space and personnel to prepare contract bids.

75.     Sometime after the award of the Fort Jackson Contract, LW established office space at 8300 Dorchester Road, North Charleston, South Carolina.  LW's office was located next door to the offices of Brantley Construction and were in a building owned by BCC Holdings—one of the companies that is owned by Sidney and Gary Brantley.

76.     With the exception of purchased supplies, LW leased all of its facilities and equipment from companies owned and operated by the Brantley brothers.

77.     LW relied entirely on the financial support of the various Brantley companies to obtain contractually required surety bonds.

78.     The Brantley Companies earned $47,605,296 in 2008.

79.     On information and belief, at the time that LW bid on and performed the Fort Jackson Contract, Brantley Construction was not a small business under a $35.5 million size standard.

80.     On information and belief, at the time that LW bid on and performed the Fort Jackson Contract, the combined revenues of Brantley Construction and the Brantley Companies exceeded $35.5 million.

81.     Mr. White did not have sufficient income or assets to obtain a loan necessary to support the operations of LW during the performance of the Fort Jackson Contract.

82.     Besides any contract payments received, LW relied entirely on the finances of the various Brantley companies to support the operations of LW.

83.     Beyond the alleged $510 paid into the company during its formation, Mr. White did not invest any money into LW.

84.     Sometime after the Fort Jackson Contract was awarded, BCC Holdings issued three loans totaling $500,000 to Louis White, Gary Brantley, and Sidney Brantley.  Mr. White and the Brantley brothers, in turn, loaned $500,000 to LW in order for LW to have operating funds until it received its first contract payments.

85.     On April 14, 2010, LW entered into a subcontract with Brantley Construction in the amount of $1,750,692, or 17% of the contract price for the Fort Jackson Contract, to perform work associated with the construction of the buildings at the Fort Jackson National Cemetery.  Brantley Construction did not perform any of the work in its subcontract.  Instead, it subcontracted all of the work to other companies.  Gary Brantley managed those subcontracts.

86.     LW did not disclose to the VA in any of its progress schedules or payment applications that Brantley Construction was a subcontractor.

87.     Until 2012, LW was entirely financed by the initial $500,000 BBC Holdings loan, progress payments from the Fort Jackson project, and other SDVSOB projects it was awarded.

88.     When LW began experiencing problems with timely and correctly submitting pay applications and progress schedules to the VA, and was required by the VA to address numerous deficiencies in the work it performed, Gary and Sidney Brantley loaned LW over $2,000,000 in additional funds.

89.     When LW failed to complete the project work by the September 4, 2012 contract completion date, Brantley Construction supplemented LW's workforce with its own employees in order to complete corrective work.  Brantley Construction performed this work without a separate contract or modification to its existing contract.

90.     LW never disclosed to the VA that Brantley Construction had effectively taken over the contract as of 2013.

*iv. LW Acted Knowingly When Misrepresenting its SDVOSB Eligibility for the Fort
    Jackson Contract*

91.     As stated in provision 2.10 of the solicitation and, eventually, the Fort Jackson

Contract documents, in order to be eligible for VA SDVOSB set-asides, including the Fort

Jackson National Cemetery Project, LW had to be 51% unconditionally and directly owned by

one or more veterans.  A veteran was also required to exercise both the day-to-day management

and long-term decision making for LW.  A non-veteran part-owner could not exercise actual

control or have the power to control the veteran or be a former employer or a principal of a

former employer of any affiliate business of the veteran, unless it is determined by the CVE that

the relationship does not give the former employer actual control or the potential to control the

veteran.  38 C.F.R. § 74.4(g).

92.     In addition, the solicitation and Fort Jackson Contract documents provided that, to

obtain the award of the Fort Jackson Contract, LW and its affiliates could not exceed the small

business size standard of $33.5 million.  *See also* FAR § 52.212-3.

93.     As alleged above, Louis White did not exercise day-to-day or long-term

operational control over LW.  Therefore, LW was not an eligible SDVOSB, and, accordingly,

was ineligible for the Fort Jackson Contract award.

94.     As alleged above, LW was financially reliant upon or otherwise under the control

of Brantley Construction, the Brantley Companies and/or Sidney and Gary Brantley, and, as

such, was affiliated with Brantley Construction and the Brantley Companies.  Therefore, LW

was not a small business and was not an eligible SDVOSB, and, accordingly, was ineligible for

the Fort Jackson Contract award.

27

95.     LW did not meet the requirements to qualify as an SDVOSB either at the time that it bid on the Fort Jackson Contract or during the time that it performed the work under, submitted invoices for, and received payments under that contract.

96.     Acting through its principals, officers and employees, LW knew, or acted in deliberate ignorance of or with reckless disregard for the truth of, the fact that it did not meet the criteria to be an SDVOSB, but it, nevertheless, represented in ORCA and on the Vetbiz.gov website that it met these criteria.

97.     Acting through its principals, officers and employees, LW knew, or acted in deliberate ignorance of or with reckless disregard for the truth of, the fact that it did not meet the criteria to be an SDVOSB, but it, nevertheless, submitted its bid to obtain, and requested payment under, the Fort Jackson Contract.  By creating the certifications falsely representing that LW was an eligible SDVOSB, and by submitting its bid on the Fort Jackson Contract, LW intended to mislead the VA into believing that it was eligible to receive that contract award.

98.     LW did not provide a copy of, or disclose the terms and conditions of, the LW Agreement to the VA prior to self-certifying SDVOSB status and eligibility on ORCA and Vetbiz.gov.

99.     Prior to the issuance of the solicitation for the Fort Jackson National Cemetery Project, the VA determined that competition for the contract should be limited to only eligible SDVOSBs.  *See* Ex. 5.

100.    By the terms of the solicitation, only SDVOSBs that complied with the requirements of 38 U.S.C. 8127, the implementing regulations, and the solicitation itself, were eligible to be awarded the Fort Jackson Contract.

101.    SDVOSB eligibility was a material requirement to award the contract.  As such, companies that did not meet the criteria to an SDVOSB were not eligible to obtain the Fort Jackson Contract.  Had LW not misrepresented its status as qualified SDVOSB by self-certifying its eligibility on ORCA and Vetbiz.gov, and in submitting the bid for the Fort Jackson Contract, the VA would not have awarded LW the Fort Jackson Contract or paid invoices submitted by LW pursuant to that contract.

*v.    Mr. White Received Limited Financial Benefits from LW*

102.    Mr. White earned a lower salary than the project superintendent at Fort Jackson, Ronald Brantley, who nominally reported to him.

103.    Mr. White earned a lower salary than the assistant project superintendent at Fort Jackson, Bert Bailey, who reported to Ronald Brantley.

104.    On information and belief, Mr. White earned little of LW's profits from 2009 through 2011.

105.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from the Fort Jackson project from 2009 through 2011.

106.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from leasing office space to LW from 2009 through the present.

107.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from leasing equipment to LW from 2009 through 2013.

108.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from subcontracting administrative personnel to LW.

109.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from loan repayments made by LW from 2009 through 2013.

110.    On information and belief, Brantley Construction, Sidney Brantley and/or Gary Brantley obtained financial benefits from the $1,750,000 subcontract LW issued to Brantley Construction.

111.    Sometime after LW was terminated by the VA for default, Sidney Brantley purchased the majority of Mr. White's ownership interest in LW for nominal consideration.  Mr. Brantley now owns 98% of LW.

112.    If LW succeeds in its contract claims, Sidney Brantley and Gary Brantley will obtain financial benefits from amounts owed to Brantley Construction.

113.    Brantley Construction submitted a claim to LW for $750,000 for non-contracted services Brantley Construction provided to manage corrective work at Fort Jackson.  Sidney Brantley and Gary Brantley will obtain financial benefits from the payment of that claim if LW succeeds in its contract claims.

114.    LW's contract claim is seeking $5,370,514.97, including $307,715.88 in profits.  If LW succeeds in its claims, Sidney Brantley will be entitled to 98% of any profits obtained by LW.

115.    If LW succeeds in its contract claims, Mr. White stands to benefit little, if at all, from those claims.

*vi.  VA Center for Veterans' Enterprise Denies LW's Status as an SDVOSB*

116.    In 2011, CVE required LW to submit an application verifying its status as an SDVOSB.

30

117.    On September 28, 2011, investigators from CVE performed a site visit to establish LW's SDVOSB status.

118.    Based on its review of corporate documents, public information, and an interview with Mr. White, CVE concluded that the LW Agreement did not give Mr. White unconditional ownership or the authority to exercise full control of the company.  In particular, the LW operating agreement permitted non-veterans to exercise control over the company and limited Mr. White's ability to divest his ownership interest without the agreement of the non-veterans. Accordingly, CVE notified LW that it was not an eligible SDVOSB.

119.    LW sought reconsideration of this decision, but on March 1, 2012, CVE denied LW's reconsideration request.  LW did not reapply to the program or challenge CVE's determination.

*vii. LW Submitted Claims For Payment*

120.    LW was not eligible for the contract nor was it eligible to request or receive any payments under the contract.

121.    From 2009 through 2012, LW submitted 22 requests for payment under the contract.

122.    On or about February 23, 2012, the VA paid pay application 20.  The VA did not approve or pay any subsequent pay applications.

123.    LW received $10,792,236.20 in contract payments.

124.    On February 17, 2015, LW submitted a signed and certified claim seeking payment for alleged contract changes, delays, and other disputed items.

125.    On September 15, 2015, LW submitted a revised signed and certified claim seeking entitlement to $5,370,514.97.

126.    On September 24, 2015, LW submitted a second signed and certified claim seeking entitlement to $216,477.86, for additional alleged changes to the contract.

127.    The validity of LW's contract was a material condition to the receipt of the claimed amounts.

## FACTUAL BACKGROUND CONCERNING LW'S CONTRACT DEFAULT

128.    The contract required the construction of a columbarium, concrete sidewalks, landscaping, and irrigation.

129.    Through modifications, the contract required completion by September 4, 2012.

130.    On May 18, 2011, the VA issued a letter of concern citing a lack of progress when LW completed only 58% of the contract instead of the scheduled 88%. The VA requested LW provide a plan to address its concerns.

131.    On October 24, 2011, the VA issued a letter of concern regarding issues with LW's failure to use proper erosion control measures required by the contract to ensure the establishment of acceptable grading and turf. The VA requested LW provide a plan to address its concerns. No plan was provided in response to the VA's request.

132.    On February 21, 2012, the VA issued a letter of concern regarding a general lack of progress, a failure to assign a qualified scheduler, failure to submit a revised schedule, and a lack of attendance at an on-site pre-final inspection. The VA requested LW provide a plan to address its concerns. No plan was provided in response to the VA's request.

133.    On February 28, 2012, the VA provided LW with a deficiency list developed after the VA performed a pre-final inspection from February 13-15, 2012. The list contained over 1,000 deficient items that LW was required to correct in order to comply with the contract requirements.

134.    On March 28, 2012, the VA issued a letter of concern regarding a general lack of progress and an apparent lack of onsite manpower.  The VA requested LW provide a plan to address its concerns.  No plan was provided in response to the VA's request.

135.    On March 29, 2012, the VA issued a letter of concern regarding the lack of progress with landscaping and weed overgrowth that was previously brought to the attention of LW and was beginning to affect the public image of the Fort Jackson National Cemetery.  The VA requested LW provide a plan to address the stated issues.  No plan was provided in response to the VA's request.

136.    On May 3, 2012, after an operational test of the irrigation system was performed, the VA discovered that up to 25 percent of lawn irrigation valves were leaking and all of the valves were subject to recall and were required to be replaced.  Accordingly, the VA did not accept the irrigation work.

137.    At a site visit from May 8 through May 9, 2012, the VA informed LW that no further payments would be made or retainage released until LW was able to bring work progress back up to the contract schedule.

138.    On August 28, 2012, the VA advised LW that its concrete work was defective and needed to comply with the contract.  In addition the VA advised LW that its contract completion date was September 4, 2012 and that the VA would begin assessing liquidated damages at the contractual rate of $1,000 per calendar day after that date until the work was accepted.

139.    On September 26, 2012, the VA issued a show cause notice to LW to explain its failures to address the issues raised in the VA's letters of concern, failure to provide the VA with adequate assurances of successful performance through the submission of a plan and schedule to complete the remaining work, failure to provide a monthly project schedule as required by the

contract since January 2012, and failure to address the hundreds of deficiencies identified by the VA and presented to LW in a September 21, 2012 deficiency list.

140.    On October 5, 2012, LW responded to the show cause notice with assurances that LW was committed to contract completion and provided a schedule showing the completion of remaining items by January 1, 2013.

141.    On February 14, 2013, LW advised the VA that the estimated completion date for Phase I was now July 18, 2013 with contract completion estimated by September 27, 2013.  The VA advised LW that this date was unacceptable.

142.    On March 25, 2013, LW requested a final inspection of Phase I of the contract.

143.    On March 26, 2013, the VA advised LW that the final inspection could not be performed until the work was ready for beneficial use and occupancy.  The VA informed LW that until it completed corrective work on a number of items, the work was not acceptable for beneficial use and a final inspection would not be performed.

144.    On May 30, 2013, the VA issued a cure notice advising LW that if it failed to remedy its deficient work, the VA would consider terminating the contract for default.

145.    On August 29, 2013, the VA issued a show cause notice in response to LW's failure to complete the contract.

146.    On September 9, 2013, LW in its response to the show cause notice, provided a schedule of completion for Phase I of the contract indicating completion by October 30, 2013.

147.    On October 16, 2013, the VA advised LW that it had not completed eleven of twelve critical milestones by the dates LW proposed.  In addition, the VA noted that the contract required an operational test of the irrigation system and a two-week burn in period and that LW had to request the permission to start the burn in period one week in advance.  Because LW had

missed eleven of twelve milestones and did not have sufficient time to request and complete the operational test and burn in period before LW's proposed completion date of October 30, 2013, the VA terminated LW's contract for default.

148.    In its October 16, 2013 termination notice, the VA advised LW that it would be held liable for any reprocurement costs.

149.    On May 16, 2014, the VA awarded G&C Fab-Con, LLC a contract to perform the remaining work on LW's contract for the amount of $1,703,393.22.

150.    On June 25, 2015, the VA issued final acceptance of the reprocured work.

151.    On October 29, 2015, the VA issued a final decision to LW demanding payment of $1,703,353.22 for 1,021 days of liquidated damages and the cost of reprocurement minus the amount withheld from LW for work performed.

152.    LW is liable to the VA in the amount of $1,703,353.22.

## COUNT I

### Violations of the False Claims Act: Presentation of False Claims Act
### (31 U.S.C. § 3729(a)(1) (2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A))

153.    The United States incorporates by reference paragraphs 1-152 as if fully set forth in this paragraph.

154.    The United States seeks relief against LW under 31 U.S.C. § 3729(a)(1) (2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act.

155.    In connection with the foregoing schemes, LW knowingly, or with deliberate ignorance or reckless disregard for the truth, submitted or caused to be submitted to the Government false or fraudulent claims for payments.

156.    By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## COUNT II

**Violations of the False Claims Act: Making or Using a False Record or Statement (31 U.S.C. § 3729(a)(2)(2006) and, as amended, 31 U.S.C. § 3729(a)(1)(B))**

157.    The United States incorporates by reference paragraphs 1-156 as if fully set forth in this paragraph.

158.    The United States seeks relief against LW under Section 3729(a)(2), and, as amended, 31 U.S.C. § 3729(a)(1)(B).

159.    In connection with the foregoing schemes, LW knowingly, or with deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be made or used, false records and statements material to false and fraudulent claims that were made to the Government.

160.    Alternatively, to the extent the FCA as it existed prior to its amendment in 2009 applies, as set forth above, in connection with the foregoing schemes, LW knowingly, or with deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be made or used, false records and statements to get false and fraudulent claims paid or approved by the Government.

161.    By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## COUNT III

### Common Law Fraud

162.    The United States incorporates by reference paragraphs 1-161 as if fully set forth in this paragraph.

163.    LW made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in order to obtain a contract with the United States.

164.    LW intended that the United States rely upon the accuracy of the false representations referenced above.

165.    The United States awarded LW a contract based on LW's material misrepresentations and made substantial payments of money in justifiable reliance upon LW's representations.

166.    Absent LW's material misrepresentations of fact, it would not have received a contract with the United States or been entitled to any of the contractual amounts it now seeks.

167.    LW's actions caused the United States to be damaged in a substantial amount to be determined at trial.

## COUNT IV

### Unjust Enrichment

168.    The United States incorporates by reference paragraphs 1-167 as if fully set forth in this paragraph.

169.    By reason of the payments to defendants, LW was unjustly enriched.  The circumstances of LW's receipt of the contracts at issue are such that, in equity and good conscience, LW is liable to account for and pay such amounts, which are to be determined at trial.

## COUNT V

### Liquidated Damages

170.    The United States incorporates by reference paragraphs 1-169 as if fully set forth in this paragraph.

171.    LW failed to complete the contract in the time required.

172.    LW's failure to complete the contract in the time required was not excusable.

173.    Pursuant to the terms of the contract, LW is liable for liquidated damages in the amount of $1,021,000, or to be determined at trial.

## COUNT VI

### Reprocurement Costs

174.    The United States incorporates by reference paragraphs 1-173 as if fully set forth in this paragraph.

175.    LW failed to complete the contract in the time required.

176.    LW's failure to complete the contract in the time required was not excusable.

177.    Pursuant to the terms of the contract, LW is liable for the costs incurred by the United States to complete the contract in the amount of $625,815.14, or to be determined at trial.

## AFFIRMATIVE DEFENSE

178.    The United States incorporates by reference paragraphs 1-177 as if fully set forth in this paragraph.

179.    LW made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in order to obtain a contract with the United States.

180.    LW intended that the United States rely upon the accuracy of the false representations referenced above.

181.    The United States awarded LW a contract based on LW's material misrepresentations, and made substantial payments of money in justifiable reliance upon LW's representations.

182.    Had LW not made material misrepresentations of fact, it would not have received a contract with the United States or been entitled to any of the contractual amounts it now seeks.

183.    Because LW obtained the contract through fraud, it is not entitled to recover any amounts under the contract.

## PRAYER FOR RELIEF

WHEREFORE, defendant requests that the Court dismiss plaintiff's amended complaint, and enter judgment for the United States and against plaintiff upon these counterclaims in an amount to be determined at trial, and grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
Trial Attorney
JEFFREY M. LOWRY
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station

OF COUNSEL:

EYVONNE MALLET

39

Attorney                          Washington, DC 20044
Office of General Counsel         Telephone: (202) 305-3067
Department of Veterans Affairs    Facsimile: (202) 514-8624

                                  *Attorneys for Defendant*

October 13, 2017

# EXHIBIT 1

# LW CONSTRUCTION OF CHARLESTON, LLC
## 829189864

## SECTION 3   MANAGEMENT INFORMATION

### 3.2   OPERATING AGREEMENTS

LIMITED LIABILITY COMPANY AGREEMENT

OF

LW CONSTRUCTION OF CHARLESTON, LLC

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## LW CONSTRUCTION OF CHARLESTON, LLC

**THIS LIMITED LIABILITY COMPANY AGREEMENT** (this "Agreement") is made and entered by and between Louis White, Sidney A. Brantley, and Gary D. Brantley (together hereafter the "Members") effective as of September 11, 2008.

### WITNESSETH:

**IN CONSIDERATION** of the mutual benefits, covenants and conditions herein contained, the parties hereto agree as follows:

### ARTICLE I.
### DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the following meanings (all capitalized terms used in this Agreement that are not defined in this Article I shall have the meanings set forth elsewhere in this Agreement):

**1.01** "**Act**" means the South Carolina Limited Liability Company Act, S.C. Code Ann. § 33-43-101 *et. seq.*, as amended from time to time, and any successor to such statute.

**1.02** "**Adjusted Capital Account Deficit**" means, with respect to a Member, the deficit balance, if any, in such Member's Capital Account as of the end of the applicable Fiscal Year or other relevant date, after giving effect to the following adjustments:

    (a)    Credit to such Capital Account any amounts which such Member is obligated to restore pursuant to any provisions of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations sections 1.704-2(g)(1) and 1.704-2(i)(5); and

    (b)    Debit to such Capital Account the items described in (4), (5) and (6) of Treasury Regulations section 1.704-1(b)(2)(ii)(d).

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Treasury Regulations section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

**1.03** "**Affiliate**" means a Person or Persons directly or indirectly, through one or more intermediaries, controlling, controlled by or under common control with the Person(s) in question. The term "control", as used in the immediately preceding sentence, means, with respect to a Person that is a corporation, the right to the exercise, directly or indirectly, of more than 50% of the voting

rights attributable to the shares of such controlled corporation and, with respect to a Person that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such controlled Person.

      **1.04**    "**Available Cash**" means, with respect to any point in time, all cash of the Company on hand as of such point in time after the payment of all then due debts and liabilities of the Company and after any prepayments of any debts and liabilities of the Company that the Members deem appropriate to cause the Company to make, less any reserves deemed necessary by the Members, consistent with the provisions of this Agreement, for (a) the repayment of any debts or liabilities of the Company, (b) the working capital requirements of the Company, and © any contingent or unforeseen liabilities of the Company.

      **1.05**    "**Capital Account**" of a Member consists of the cash and the fair market value of property contributed by such Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under Code Section 752), plus such Member's share of Net Profits and any items of income or gain that are specially allocated to such Member pursuant to Section 4.02 or 4.03 hereof, less (a) all distributions of cash and the fair market value of property distributed to such Member (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752), and (b) such Member's share of Net Losses and any items of deduction or loss that are specially allocated to such Member pursuant to Section 4.02 or 4.03 hereof. The Capital Accounts of the Members shall be maintained in accordance with Treasury Regulations section 1.704-1(b)(2)(iv) and the provisions of this Agreement shall be interpreted consistently therewith. Upon the transfer of all or part of a Member's Interest, other than a transfer that terminates the Company within the meaning of Code Section 708(b)(1)(B), the Capital Account of the transferor Member that is attributable to the transferred Interest will carry over to the transferee. In the event of a transfer of all or part of an Interest that causes a termination of the Company within the meaning of Code Section 708(b)(1)(B), the Capital Accounts will be adjusted in accordance with Treasury Regulations section 1.704-1(b)(2)(iv)(l).

      **1.06**    "**Certificate**" means the certificate of formation required to be filed by the Act.

      **1.07**    "**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

      **1.08**    "**Company**" means LW Construction of Charleston, LLC.

      **1.09**    "**Company Interest**" or "**Interest**" means the interest in the Company acquired by each Member hereunder. The initial Interests of the Members are as follows:

| | |
|---|---|
| Louis White | 51% |
| Sidney A. Brantley | 25% |
| Gary D. Brantley | 24% |

      **1.10**    "**Family Members**" of an individual mean such individual's spouse, children (including natural, adopted and stepchildren), grandchildren, parents and grandparents, and any trust for the benefit of any such person, and any custodian or legal guardian for any such person.

**1.11** "Fiscal Year" of the Company means the calendar year.

**1.12** "Majority Consent" means, with respect to any matter put to a vote of the Members, the affirmative consent or approval, either in writing or at a meeting of the Members, of Members owning a majority of the Company Interests owned by Members entitled to vote.

**1.13** "Majority in Interest" means a majority of both those Members owning a majority of the capital and also those Members holding a majority of the profits and losses.

**1.14** "Managing Member" means a Member designated as such pursuant to Section 6.01 hereof.

**1.15** "Members" means Louis White, Sidney A. Brantley and Gary D. Brantley and each Person to whom all or any portion of the Interest of any of such Persons is transferred or assigned and who is admitted to the Company as a Member in accordance with the provisions of Section 11.03 hereof.

**1.16** "Net Profits" and "Net Losses" mean the Company's taxable income or loss determined in accordance with Code Section 703(a) for each of its Fiscal Years (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) will be included in taxable income or loss); provided, such Net Profits and Net Losses will be computed as if items of tax-exempt income and nondeductible, noncapital expenditures (under Code Section 705(a)(1)(B) and 705(a)(2)(B)) were included in the computation of taxable income or loss; and provided further, that any items of income, gain, loss or deduction specially allocated pursuant to Section 4.02 or 4.03 hereof shall not be taken into account in computing Net Profits and Net Losses. If any Member contributes property to the Company with an initial book value to the Company different from its adjusted basis for federal income tax purposes to the Company, or if Company property is revalued pursuant to Treasury Regulations section 1.704-1(b)(2)(iv)(f) or as otherwise required by the Regulations, Net Profits and Net Losses will be computed as if the initial adjusted basis for federal income tax purposes to the Company of such contributed or revalued property equaled its initial book value to the Company as of the date of contribution or revaluation. Credits or debits to Capital Accounts due to a revaluation of Company assets in accordance with Treasury Regulations section 1.704-1(b)(2)(iv)(f), or due to a distribution of noncash assets as provided in Section 13.02 hereof, will be taken into account as gain or loss from the disposition of such assets for purposes of Article IV hereof.

**1.17** "Person" means an individual, partnership, joint venture, association, corporation, trust or any other legal entity.

**1.18** "Prime Rate" means the prime rate as quoted by the Wall Street Journal for large U.S. money center banks on loans to corporate borrowers.

## ARTICLE 2.
## FORMATION AND PURPOSES

**2.01    Formation.** The Company was formed on September 11, 2008 by the filing of a Certificate as required by the Act.

**2.02    Name.** The name of the Company is LW Construction of Charleston, LLC.

**2.03    Principal Office.** The principal office of the Company is located 8300 Dorchester Road, Charleston SC 29418. The Company may change its principal office and have additional offices at such other locations as the Members shall determine by Majority Consent.

**2.04    Term.** The term of the Company shall be until dissolved in accordance with the provisions of this Operating Agreement or the Act.

**2.05    Purposes of the Company.** The purposes of the Company are to provide construction and design-build services to the public, pursuant to the requirements of the Federal Government and of the States in which the Company is licensed to operate and perform construction services. The Company shall also engage in such other activities incidental to the foregoing purposes as may be necessary or desirable to carry out such foregoing purposes. The purposes of the Company shall not be changed without the Majority Consent of the Members.

## ARTICLE 3.
## CAPITAL CONTRIBUTIONS AND LOANS

**3.01    Initial Capital Contributions.** Each of the Members shall make an initial capital contribution to the Company in the amount specified in Exhibit "A" hereto, which shall be paid upon the execution of this Agreement.

**3.02    Additional Capital Contributions.** Unless agreed to by all of the Members, no Member shall be required to, make any additional capital contributions to the Company. If any Member who has guaranteed indebtedness of the Company (a "Guaranteeing Member") makes a payment on such guarantee, such payment shall be considered to be a capital contribution to the Company or a loan to the Company, as determined in the sole discretion of the Member who made the payment. If the Members agree to make additional capital contributions then each Member's share thereof shall be based on his or her Company Interest. If a Member is unable to pay its share of a capital contribution or if a Guaranteeing Member makes a payment on a guarantee that is treated as a capital contribution, then the following procedure shall be used to collect the capital contribution of the Members failing to make same. The Member making the contribution shall send written demand to the Member failing to make the capital contribution that payment is due from said Member and in what amount. The Member failing to make the contribution shall have thirty days to make said contribution. If the Member failing to make his or her capital contribution does not pay his or her share of the capital contribution within the thirty (30) day period, then, in that event, the

monies owed shall become a loan from the contributing Member to the non contributing Member for a period of up to ninety (90) days and said sum shall bear interest at the rate of eight (8%) percent until paid. If the non contributing Member does not pay the contribution plus any accrued interest within the ninety (90) days then contributing Member shall have the right to buyout the non-contributing Member for the amount set forth in 14.04 herein less the amount owed by the non-contributing Member.

**3.03    No Interest on Contributions.** No Member shall be entitled to receive interest on his or her capital contributions except as set forth in 3.02 for a Member failing to make his or her capital contribution.

**3.04    Loans.** In the event the Members determine by Majority Consent that the Company does not have sufficient funds to pay the costs incurred or to be incurred by the Company in carrying out the purposes of the Company, the Members are authorized to cause the Company to borrow funds, including from Members and/or their Affiliates, to pay all or part of such costs, provided that the interest rate and other terms of such loans from Members or their Affiliates are no less favorable to the Company than the Company could have secured from third parties. If a Guaranteeing Member makes a payment on a guarantee of indebtedness of the Company that is treated as a loan to the Company, then such loan shall bear interest at an annual rate equal to the prime rate as quoted by the Wall Street Journal for large U.S. money center banks on loans to corporate borrowers, and all such loans from Guaranteeing Members shall be repaid before any other Member loans are repaid and before any subsequent distributions are made to the Members pursuant to Article V or Section 13.01(d) hereof. If any Member, or Affiliate of a Member, lends money to the Company pursuant to this Section 3.04, such Member or Affiliate shall be deemed an unrelated creditor with respect to such loan to the extent allowed by applicable law.

### ARTICLE 4.
### PROFITS AND LOSSES

**4.01    General Allocations.** After giving effect to the special allocations set forth in Section 4.02, Net Profits and Net Losses for each Fiscal Year shall be allocated among the Members in accordance with their respective Company Interests.

**4.02    Special Allocations.** The following special allocations shall be made in the following order:

(a)    **Minimum Gain Chargeback.** Notwithstanding any other provision of this Article IV, if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulations section 1.704-2(b) and (d)) during any Fiscal Year, each Member shall be specially allocated items of income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount and manner sufficient to satisfy the requirements of Treasury Regulations section 1.704-2(f). This Section 4.02(a) is intended to comply with the minimum gain chargeback requirement in such section of the Treasury Regulations and shall

be interpreted consistently therewith.

(b) **Partner Minimum Gain Chargeback.** Notwithstanding any other provision of this Article IV except Section 4.02(a), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain (as defined in Treasury Regulations section 1.704-2(i)) during any Fiscal Year, each Member who has a share of the Partner Nonrecourse Debt Minimum Gain shall be specially allocated items of income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount and manner sufficient to satisfy the requirements of Treasury Regulations section 1.704-2(i). This Section 4.02(b) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations section 1.704-2(i) and shall be interpreted consistently therewith.

© **Qualified Income Offset.** In the event a Member unexpectedly receives any adjustments, allocations or distributions described in (4), (5) or (6) of Treasury Regulations section 1.704-1(b)(2)(ii)(d), then each such Member shall be specially allocated items of Company income and gain in an amount and manner sufficient to eliminate, to the extent required by such Treasury Regulations, the Adjusted Capital Account Deficit of such Member as quickly as possible. This Section 4.02© is intended to constitute a "qualified income offset" under Treasury Regulations section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(d) **Nonrecourse Deductions.** Nonrecourse Deductions (as defined in Treasury Regulations section 1.704-2(b) and ©) for any Fiscal Year or other period shall be allocated to Members in accordance with their respective Interests.

(e) **Partner Nonrecourse Deductions.** Any Partner Nonrecourse Deductions (as defined in Treasury Regulations section 1.704-2(i)) for any Fiscal Year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Partner Nonrecourse Debt (as defined in Treasury Regulations section 1.704-2(b)(4)) to which such Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulations section 1.704-2(i).

(f) **Interest on Member Loans.** Any interest expense of the Company on a loan made to the Company by a Member shall be specially allocated to the Member who made such loan.

(g) **Section 707 Payments.** In the event that any fees, interest or other amounts paid to a Member or Affiliate of a Member pursuant to this Agreement, or any agreement between the Company and the Member or Affiliate providing for the payment of such amounts, and deducted by the Company in reliance upon Code Section 707(a) and/or 707©, are disallowed as deductions to the Company on its federal income tax return for the Fiscal year in or with respect to which such amounts are paid and are treated as Company distributions, then:

(i)    the Net Profits or Net Losses, as the case may be, for the Fiscal Year in or with respect to which such fees, interest or other amounts were paid shall be increased or decreased, as the case may be, by the amount of such fees, interest or other amounts that are so disallowed and treated as Company distributions; and

(ii)    there shall be allocated to the Member who received (or whose Affiliate received) such payments, prior to the allocations pursuant to Section 4.01, an amount of gross income for the Fiscal year in or with respect to which such fees, interest or other amounts were paid equal to the amount of such fees, interest or other amounts that are so disallowed and treated as Company distributions.

**4.03    Facilitation of Economic Arrangement**. Any special allocations pursuant to Section 4.02 shall be taken into account in computing subsequent allocations pursuant to this Article IV, so that the net amount of any items so allocated and the income, gain, loss, deduction and any other item allocated to such Member pursuant to this Article IV shall, to the extent possible, be equal to the net amount that would have been allocated to each such Member pursuant to the provisions of this Article IV if such special allocations had not occurred.

**4.04    Contributed or Revalued Property.** For Federal income tax purposes, any income, gain, loss or deduction with respect to property contributed by a Member to the Company that has a fair market value different from its adjusted basis for Federal income tax purposes, or with respect to any Company property that has been revalued pursuant to Section 6.04 hereof, shall be allocated among the Members in accordance with Code Section 704© and the Treasury Regulations thereunder.

**4.05    Tax Items.** Except as otherwise provided herein, any allocation to a Member of a portion of the Net Profits or Net Losses for a Fiscal Year will be deemed to be an allocation to that Member of the same proportionate part of each item of income, gain, loss, deduction or credit that is earned, realized or available by or to the Company for Federal income tax purposes.

**4.06    Allocation on Transfer.** In the event of any transfer of a Company Interest in accordance with the provisions of this Agreement, the distributive share of Net Profits or Net Losses with respect to the Interest so transferred will be allocated between the transferor and transferee in accordance with the ratio that the number of days in the Fiscal Year of the transfer before and after such transfer bears to the total number of days in that Fiscal Year, or in such other manner, in the discretion of the Members, as is permitted under applicable Treasury Regulations.

## ARTICLE 5.
## RESERVES; DISTRIBUTIONS OF AVAILABLE CASH

**5.01 Reserves.**    Prior to making any distributions to the Members hereunder, the

Company may establish reserves as determined by the Members.

**5.02    Distributions.**  Subject to any applicable restrictions in loan documents with the Company's creditors, from time to time, as determined by the Members, the Company shall distribute Available Cash to the Members pro rata in accordance with their respective Interests. The foregoing notwithstanding, following the occurrence of an event of dissolution as provided in Article XII hereof, cash distributions shall be made in accordance with Article XIII hereof.

**5.03    Tax Distributions.**  Subject to any applicable restrictions in loan documents with the Company's creditors, the Company shall distribute to each Member with respect to each Fiscal year, either during such Fiscal year or within ninety (90) days thereafter, an amount of cash equal to the product determined by multiplying (a) a percentage not to exceed the highest marginal income tax rate (combined state and federal) that any Member may be subject to, as determined by the Members, times (b) the taxable income for federal income tax purposes of the Company allocated to such Member for such Fiscal Year. The preceding sentence is subject to the reasonably required needs of the Company, as determined by the Members, to maintain sufficient funds for working capital and other business purposes so as not to impair the ability of the Company to continue its business operations.

**5.04    Withholding.**  The Company is authorized to withhold from amounts to be distributed to any Member hereunder any amount required to be withheld by any provision of the Code, Treasury Regulations or other applicable law, and to pay such amounts to the Internal Revenue Service ("IRS") or other appropriate taxing authority in accordance with the Code, Treasury Regulations or other applicable law. In addition to such withholding from distributions, the Company is specifically authorized to remit to the IRS or other appropriate taxing authority any amounts due as a result of the allocation of taxable income to any Member and, if the Company has insufficient cash to remit such amounts, each Member agrees to contribute to the Company his portion of such remittance. Any amounts paid over to the IRS or other appropriate taxing authority with respect to a Member pursuant to this Section 5.03 shall be treated for all purposes hereunder as a distribution made to the Member with respect to whom such withholding or remittance was made. Notwithstanding anything herein to the contrary, distributions for a Fiscal Year to be made to a Member pursuant to Sections 5.01 or 5.02 will be reduced by any withholding made pursuant to this Section 5.03 with respect to such Member during or with respect to such Fiscal Year.

**5.05    Liability of Members.**  Upon the determination in good faith to pay and distribute Available Cash in the manner herein provided, the Members shall incur no liability on account of such distribution, even though such distribution may result in the Company retaining insufficient funds for the operation of its business, which insufficiency results in loss to the Company or the borrowing of funds by the Company.

**ARTICLE 6.**
**MANAGEMENT**

Page 9 of 23

6.01    **Management By Members.** The assets, affairs and operations of the Company shall be managed by the Members. All actions to be taken by the Members on behalf of the Company shall be determined by a Majority in Interests of the Members; provided, from time to time the Members may designate one or more Managing Members to be primarily responsible for certain aspects of the Company's business. Each Managing Member so designated shall keep the other Member(s) apprised of his or her actions taken with regard to the Company. A Managing Member may resign as a Managing Member at any time by giving written notice thereof to all of the other Members. A Managing Member may be removed as a Managing Member at any time by Majority Consent of the Members, and shall automatically be removed as a Managing Member upon the occurrence of an Event of Dissociation (as defined in Section 12.01(a)(iii) hereof) to such Managing Member. In the event of the resignation or removal of a Managing Member at a time when he or she is the only Managing Member, the remaining Members shall elect one or more Members by Majority Consent to replace such Managing Member. The Members may elect a Managing Member at any time by Majority Consent of the Members.

6.02    **Powers of Members.** Subject to the limitations set forth in this Agreement, the Members shall have full, exclusive and complete discretion in the management and control of the Company and shall make all decisions affecting its business and affairs. **NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, all members must consent in writing in order that any of the powers set forth below may be exercised.** By way of illustration, but not in limitation of the foregoing, the Members shall have the power and authority, on behalf of the Company, subject to voting requirements as set forth herein:

(a)    To execute all agreements and other documents necessary to implement the purposes of the Company, and to take such actions as may be necessary to consummate the transactions contemplated thereby;

(b)    To collect and enforce the collection of all rentals, leases and other monies due the Company;

©    To hire, supervise and terminate on behalf of the Company all independent contractors and employees, including attorneys, accountants and other professionals, but all such independent contractors and employees shall be independent contractors and employees of the Company and not of the Members;

(d)    To borrow money and incur other obligations, and to mortgage and pledge the assets of the Company as security for such indebtedness;

(e)    To draw, make, accept, endorse, sign and deliver any notes, drafts or other negotiable instruments or commercial paper;

(f)    To purchase liability and other insurance to protect the companies property and business;

(g)    To hold and own any Company real and/or personal properties in the name of the Company;

(h)    To establish, maintain and draw upon checking, savings and other accounts in the name of the Company in such bank or banks as the Members may from time to time select;

(i)    To compromise any claim or liability due to the Company;

(j)    To execute, acknowledge, verify and file any notifications, applications, statements and other filings that the Members consider necessary or desirable to be filed with any state or federal securities administrator or commission;

(k)    To make any tax elections to be made by the Company;

(l)    To invest funds of the Company;

(m)    To execute, acknowledge, verify and deliver any and all instruments that the Members consider necessary or desirable to effectuate any of the foregoing;

(n)    To do any or all of the foregoing, discretionary or otherwise, through agents selected by the Members and compensated or uncompensated by the Company; and

(o)    To do any or all of the foregoing upon such other terms and conditions as the Members determine to be necessary, desirable or appropriate.

6.03    **Related Party Transactions**. The Members may employ and deal with any Member (including themselves) or any Affiliate of any Member for the performance of services or the purchase of goods or property or the leasing of the same provided that such other services, goods or property are reasonably and customary in the business of the Company and that any such other services, goods or property are obtained on terms no less favorable to the Company than those reasonably available from third Persons. Neither the Company nor any Member shall have any rights in or to any income or profits derived by any Member or Affiliate from such other ventures or businesses as a result of entering into this Agreement.

6.04 **Monthly Reports.** The Company shall provide written monthly reports to all Members of the Company. Such reports shall be delivered to all Members not later than the fifteenth day of the month based on the prior month's activities. Such report shall include a copy of the bank statement for the Company's general operating account and a narrative statement of monthly operations.

In addition to such monthly reports, the Company shall provide all financial and tax information relating to the Company to the Tax Matters Partner by January 15 of each year for the

prior year of operations.

## ARTICLE 7.
## OBLIGATIONS AND RIGHTS OF MEMBERS

**7.01    No Liability for Company Obligations**.   No Member, including Managing Members, shall be personally liable for any debts, obligations or liabilities of the Company solely by reason of being a Member or Managing Member, except as provided by law.

**7.02    Right to Distributions.**  No Member shall have any right to demand and receive any property other than cash from the Company and, prior to the dissolution and liquidation of the Company pursuant to Articles XII and XIII hereof, each Member's right to cash shall be limited to the rights set forth in Article V hereof.

## ARTICLE 8.
## INDEMNIFICATION OF MEMBERS

**8.01    Indemnification.**  No Member shall have any liability to the Company or to any Member for any mistakes or errors in judgment or for any act or omission reasonably believed by such Member to be within the scope of the authority conferred upon him or her by this Agreement, but will have liability only for acts or omissions involving his or her intentional misconduct or knowing violation of law, or any transaction in which he or she received a personal benefit in violation or breach of this Agreement.  The Company, to the extent of its assets, shall indemnify, defend and hold each of the Members harmless from, against and in respect of any liabilities, damages, losses, costs or expenses (including attorneys' and accountants' fees) incurred by them as a result of any act or omission with respect to which the Members are protected under the provisions of this Article VIII.  The doing of any act or the failure to do any act by a Member, the effect of which causes loss or damage to the  Company, if done pursuant to advice of independent legal counsel retained by the Company, will be conclusively presumed not to constitute intentional misconduct or a knowing violation of law on the part of such Member, unless such advice was induced by such Member's intentional misconduct or knowing violation of law.

## ARTICLE 9.
## COMPENSATION AND REIMBURSEMENT

**9.01    Member Compensation.** A Managing Member shall not be entitled to compensation for services to the Company.

**9.02    Reimbursement.** All costs and expenses incurred by a Member or Affiliate in connection with the formation and organization of the Company shall be reimbursed or paid by the Company. Other costs and expenses reasonably incurred by a Member on behalf of the Company or otherwise in connection with the Company's business shall be reimbursed or paid by the Company.

## ARTICLE 10.
## ACCOUNTING, BOOKS AND RECORDS

**10.01   Accounting Method.** The Company shall maintain its books and records on such basis of accounting as the Members shall determine.

**10.02   Books and Records.** The Company shall keep, or cause to be kept, at Company expense, full, complete and accurate books of account and other records showing the assets, liabilities, costs, expenditures, receipts and such other matters as are required by Section 33-43-405 of the Act. Such books and records shall be the property of the Company, shall be kept in accordance with sound accounting principles and procedures consistently applied and shall be open to the reasonable inspection and examination by the Members and their duly authorized representatives. Such books of account shall be maintained at the principal office of the Company, or at such other place as the Members may determine by Majority Consent. If a Member or their duly authorized representative is unable to obtain the books of the Company after a reasonable time period, then, in that event, said Member may bring a legal action to obtain said books and any cost of said action incurred by said Member shall be reimbursed to the Member by the Company or the Member refusing to turn over the books.

**10.03   Financial Statements.** As soon as practicable after the end of each Fiscal Year of the Company, the Company shall cause to be prepared and delivered to each Member unaudited financial statements of the Company for such Fiscal Year.

**10.04   Tax Returns.** The Tax Matters Partner shall cause the Company's tax returns and other governmental returns and reports to be prepared and timely filed. The tax return shall be prepared by a Certified Public Accountant to be agreed upon by the Members. The Tax Matters Partner shall deliver copies of Schedule K-1 of Form 1065 (or a comparable schedule) and other necessary tax information for each Fiscal Year to each Member as soon as practicable after the end of each Fiscal Year.

**10.05   Tax Matters Partner.** Sidney A. Brantley is hereby designated the Tax Matters

Partner of the Company, as provided in Treasury Regulations pursuant to Code Section 6231. The provisions on limitations of liability of the Members and indemnification set forth in Section 8.01 hereof shall be fully applicable to the Tax Matters Partner in his or her capacity as such. The Tax Matters Partner may resign at any time by giving written notice to the Company and each of the other Members. Upon the resignation of the Tax Matters Partner, a new Tax Matters Partner shall be elected by Majority Consent of the Members.

## ARTICLE 11.
## TRANSFER AND ASSIGNMENT OF INTERESTS

**11.01  General Prohibition.** Except as provided in Section 11.02, no Member may assign, convey, sell, transfer, liquidate, encumber, or in any way alienate (collectively, a "Transfer"), all or any part of his or her Company Interest without the prior written consent of all the other Members, which consent may be given or withheld in the sole discretion of each Member. If a Member's Interest is Transferred pursuant to the terms of this Agreement, the transferee shall, upon compliance with the provisions of Section 11.03, succeed to the transferred Interest of the transferor Member and all rights, duties and obligations under this Agreement and the Act with respect to such transferred Interest. Any attempted Transfer of all or any portion of a Member's Interest without the necessary consent, or as otherwise permitted hereunder, shall be null and void and shall have no effect whatsoever.

**11.02  Permitted Transfers.** A Member may at any time, without the consent of any other Member, Transfer all or any part of his or her Interest to one or more of his or her Family Members or to another Member (a "Permitted Conveyance"); provided, that following any such Permitted Conveyance such transferee and such conveyed Interest shall continue to be subject to the transfer restrictions set forth in this Article XI, and provided further, a transferee Family Member who is not already a Member shall not become a substituted Member until the provisions of Section 11.03 have been complied with.

**11.03  Conditions of Transfer and Assignment.** No transferee of the Interest of a Member shall become a substituted Member until all the Members consent in writing thereto and the following conditions have been satisfied:

(a)    the transferor Member, his legal representative or authorized agent must have executed a written instrument of transfer of such Interest in form and substance satisfactory to the Company;

(b)    the transferee must have executed a written agreement, in form and substance satisfactory to the Company, to assume all of the duties and obligations of the transferor Member under this Agreement and to be bound by and subject to all of the terms and conditions of this Agreement;

© the transferor Member, his legal representative or authorized agent, and the

transferee must have executed a written agreement, in form and substance satisfactory to the Company, to indemnify and hold the Company and the Members harmless from and against any loss or liability arising out of the transfer;

    (d)    the transferee must have executed such documents and instruments as the Company may deem necessary to effect the admission of the transferee as a Member; and

    (e)    unless waived by the Company, the transferee or the transferor must have paid the expenses incurred by the Company in connection with the admission of the transferee to the Company.

A permitted transferee who does not become a substituted Member shall be an assignee of the transferor and shall be entitled to receive only that portion of the distributions and allocations to which his transferor would otherwise be entitled with respect to the Transferred Interest; such transferee shall not be entitled to vote on any question regarding the Company; and the Transferred Interest shall not be considered to be outstanding for voting purposes; provided, however, if the Transfer is to a Family Member of the transferor and the transferor owns an Interest after the Transfer, then the Transferred Interest shall be considered to be owned by the transferor for voting purposes until the transferee becomes a substituted Member.

    **11.04  Additional Members.** With the consent of all the Members, one or more Persons may be admitted as additional Members by issuance by the Company of Interests on such terms and conditions as all of the other Members agree upon.

## ARTICLE 12.
## DISSOLUTION

    **12.01  Events of Dissolution.**    (a) The Company shall be dissolved upon the first to occur of any of the following events:

    (i)    the expiration of the term of the Company as defined in Section 2.04 hereof; or

    (ii)    the written consent of all the Members; or

    (iii)    the sale of all or substantially all of the Company's assets; or

    (iv)    the death, resignation, expulsion, bankruptcy or dissolution of a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Company (an "Event of Dissociation"), unless the business of the Company is continued by a Majority in Interest of the remaining Members within ninety (90) days following the occurrence of the Event of Dissociation.

(b)     If the business of the Company is continued after the occurrence of an Event of Dissociation pursuant to subsection (a)(iii) of this Section 12.01, any successor-in-interest of the Member to whom the Event of Dissociation occurred shall become an assignee of such Member but shall not be admitted as a substituted Member except in accordance with Section 11.03 hereof.

©     Except as expressly permitted in this Agreement, a Member shall not voluntarily resign or take any other voluntary action which directly causes an Event of Dissociation. Unless otherwise approved by Majority Consent of the Members, a Member who resigns (a "Resigning Member") or who otherwise ceases to be a Member as a result of an Event of Dissociation, regardless of whether such Event of Dissociation was the result of a voluntary act by such Member, shall not be entitled to receive any distributions to which such Member would not have been entitled had such Member remained a Member. Except as otherwise expressly provided herein, a Resigning Member shall not be entitled to participate in the management or affairs of the Company or to vote on any questions regarding the Company, and his or her Interest shall not be considered to be outstanding for voting purposes. Damages for breach of this Section 12.01© shall be monetary damages only (and not specific performance), and such damages may be offset against distributions by the Company to which the Withdrawing Member would otherwise be entitled.

## ARTICLE 13.
## DISTRIBUTIONS UPON DISSOLUTION

13.01   Liquidation. Upon dissolution of the Company for any reason, the Company shall promptly commence to wind-up its affairs. A reasonable period of time shall be allowed for the orderly termination of the Company's business, the discharge of its liabilities and the distribution or liquidation of its remaining assets so as to enable the Company to minimize the normal losses attendant to the liquidation process. A full accounting of the assets and liabilities of the Company as of the date of dissolution shall be taken and a written statement thereof will be furnished to each Member within sixty (60) days after such date. Such accounting and statement shall be prepared under the direction of the Managing Members or, if there are no Managing Members, by a liquidating trustee selected by Majority Consent of the Members. The Company's property and assets and/or the proceeds from the liquidation thereof shall be applied in the following order of priority:

(a)     Payment of the debts and liabilities of the Company, in the order of priority provided by law (excluding any loans by Members or their Affiliates), and payment of the expenses of liquidation;

(b)     Payment of all loans made by Members or their Affiliates to the Company, plus any accrued but unpaid interest thereon; provided, that in the event the Company's funds are insufficient to fully satisfy all such loans, then all loans made by Members or their Affiliates shall be repaid on a pro rata basis;

©     Setting up of such reserves as the Managing Members or liquidating trustee deem

Page 16 of 23

reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company or any obligation or liability not then due and payable; provided, any balance of such reserve, at the expiration of such period as the Managing Members or liquidating trustee shall deem advisable, shall be distributed in the manner herein provided; and

(d)     Distribution to the Members, on a pro rata basis, of the positive balances of their Capital Accounts, adjusted to the date of distribution.

**13.02  Distributions in Kind.** Any noncash asset to be distributed in kind (as a liquidating distribution or otherwise) to one or more Members shall first be valued at its fair market value to determine the gain or loss that would have resulted if such asset was sold for such value, and such gain or loss shall then be allocated among the Members pursuant to Article IV hereof. The Managing Members or liquidating trustee, as the case may be, shall determine the fair market value of such asset.

**13.03  No Action for Dissolution.** The Members acknowledge that irreparable damage would be done to the goodwill and reputation of the Company if any Member should bring an action in court to dissolve the Company. This Agreement has been drawn carefully to provide fair treatment of all parties and equitable payments in liquidation of the Interests of all Members. Accordingly, each Member hereby waives and renounces his right to initiate legal action to seek dissolution, or to seek the appointment of a receiver or trustee to liquidate the Company.

**13.04  No Further Claim.** Upon dissolution, each Member shall look solely to the assets of the Company for the return of his or her investment, and if the Company property remaining after payment or discharge of the debts and liabilities of the Company, including debts and liabilities owed to one or more of the Members, is insufficient to return the aggregate capital contributions of each Member, such Members shall have no recourse against any other Member.

### ARTICLE 14.
### TRANSFERS

**14.01  Prohibition on Transfers.** Except as set forth in Article XI and hereinafter, no Member may give, transfer, assign or convey his interest in the Company to any person or entity without the consent of all the other Members and said Membership interest must be first offered to the remaining Members for the purchase price established in 14.04 of this Agreement..

**14.02  Death of Member.** Upon the death of any Member the surviving Members shall have the option either to purchase the entire Company interest of the deceased Member or to dissolve the Company and to terminate and liquidate its business. If the surviving Members elect to purchase the deceased Member's interest, they shall serve written notice of such election upon said Member's legal representative within two (2) months after the death of said Member and the Purchase Price and terms of payment shall be determined as provided in paragraph 14.04 hereinafter; provided the deceased Member's representative shall not be obligated to sell the deceased Member's interest in

the Company. If such representative elects not to sell the deceased Member's interest in the Company, the representative or assigns of the deceased Member shall be admitted as a substitute Member of the Company or the Company shall terminate and liquidate.

**14.03  Incapacity or Bankruptcy of a Member.** If a Member should be adjudged insane or incompetent or shall have a guardian or committee appointed by a court of competent jurisdiction or upon the voluntary or involuntary filing of bankruptcy by or for a Member or the insolvency of a Member, the other Members shall have the right either to purchase the entire Company interest of the incompetent, bankrupt or insolvent Member or to dissolve the Company and terminate and liquidate its business. If the other Members elect to purchase the interest of the incompetent, bankrupt or insolvent Member, they shall serve written notice of such election upon said Member's legal representative within two (2) months after the determination of incompetency or insolvency or the filing of the bankruptcy and the purchase price and terms of payment shall be as determined as provided in paragraph 14.04 hereinafter.

**14.04  Purchase Price and Terms of Payment.** If pursuant to this Article XIV, certain Members elect to purchase the Company interest of a transferring, retiring, withdrawing, deceased, incompetent, bankrupt, or insolvent Member (the "Selling Member"), the purchase price shall be equal to the actual value of said Member's Company interest as of the date the right to purchase arose, which shall be determined by the decision of two (2) appraisers to be selected within ten (10) days of the election to purchase. The Selling Member or his legal representative shall select one (1) appraiser and the other Members shall select the other appraiser. In the event the two chosen appraisers are unable to agree upon the value of the Selling Member's interest within thirty (30) days after their selection, said appraisers shall select a third appraiser, and the decision of two or more of the appraisers shall be the value of the Selling Member's interest, and it shall be binding upon the Selling Member and the other Members. No allowance shall be made for good-will, trade names, patents or other intangible assets. Each of the other Members shall purchase that portion of the Selling Member's interest in the proportion which his interest in the Company interest bears to the interests of the other Members. The purchase price as so determined shall be paid, 20% down with the balance to be paid together with interest at the applicable federal rate (fixed as of the valuation date) plus two (2%) percent, in five (5) equal annual installments beginning one (1) month after the date of closing. The closing will take place within thirty (30) days after the determination of the purchase price.

As additional consideration the Company shall use its best efforts to obtain releases from all Company creditors as to any personal liability of the selling Member, and the remaining Members agree to indemnify the selling Member, his successors and assigns from any liability of the Company as of the date of such sale.

**14.05  Expenses of Redemption of Interest of Members in Company.** All reasonable costs, charges and expenses including, without limitation, all accounting and legal fees and costs incurred by the Company in connection with or as a result of the determination of the purchase price of a Member's interest in the Company or the redemption of a Member s interest in the Company,

or both, shall be assumed and paid by such Member. If a Member shall fail to pay such costs, expenses and charges when and as the same are incurred, the amount thereof, or so much as shall be unpaid at the closing of the redemption of such Member's interest in the Company, shall be deducted from the purchase price to be paid to such Member or be payable on demand by such Member.

      **14.06  Effect of Redemption of Interest of a Member in Company.** From and after the closing of any redemption of an interest of a Member in the Company:

      (A) neither the transferor nor his legal representative, trustee, guardian or committee shall have any interest in the Company or any assets of the Company, except as provided herein; and

      (B) except as otherwise provided herein, the Company shall indemnify and hold harmless the transferor or transferors, and their legal representatives, from and with respect to any and all liabilities, obligations, debts, claims and expenses of any and every kind, known and unknown, incurred by the Company or by the Member, or any of them on behalf of the Company or to each other from and after the date of the closing of the redemption of the transferor's interest in the Company. The transferor and his legal representative and successors and assigns shall not be indemnified against and shall, to the extent provided in this Agreement, remain liable for and shall not, by reason of the redemption of the transferor's interest, be released from any liabilities, obligations, debts, claims and expenses incurred by the Company or by the Member on behalf of the Company or to each other prior to the date of such closing.

## ARTICLE XV
## MISCELLANEOUS

      **15.01  Amendments.** This Agreement may be amended only by a written instrument signed by Members owning a majority of the Interests.

      **15.02  Additional Documents.** At any time and from time to time after the date of this Agreement, upon the reasonable request of a Member, the other Members shall do and perform, or cause to be done and performed, all such additional acts and deeds, and shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, all such additional instruments and documents, as are required to best effectuate the purposes and intent of this Agreement.

      **15.03  Notices.** Any notices or other communications required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given and delivered when delivered in person or when mailed postage prepaid, by certified or registered mail with return receipt requested, to the recipient at the address set forth below. The Company and any Member may change his, her or its address by giving notice to the Company and the other Members in accordance with this Section 15.03.

**15.04  Applicable Law.**  This Agreement shall be governed by, construed under, and enforced and interpreted in accordance with the laws of the State of South Carolina.

**15.05  Entire Agreement.**  This Agreement constitutes the entire agreement between the parties and supersedes any prior understanding or agreement among them respecting the subject matter hereof. There are no representations, arrangements, understandings or agreements, oral or written, among the parties hereto relating to the subject matter of this Agreement, except those fully expressed herein. No waiver of any provision hereof shall be valid or binding on the parties hereto, unless such waiver is in writing and signed by or on behalf of the parties hereto, and no waiver on one occasion shall be deemed to be a waiver of the same or any other provision hereof in the future.

**15.06  Severability.**  If any term or provision of this Agreement is held illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remainder of this Agreement.

**15.07  Successors.**  Subject to the provisions hereof imposing limitations and conditions upon the transfer, sale or other disposition of Company Interests, of the provisions hereof shall inure to the benefit of and be binding upon the successors, legal representatives and assigns of the parties hereto.

**15.08  Counterparts.**  This Agreement may be executed in counterparts, each of which shall for all purposes be deemed an original, and all of such counterparts will together constitute one and the same agreement.

**15.09  Headings.**  Section and other headings contained in this Agreement are for reference purposes only and are in no way intended to define, interpret, describe or limit the scope, extent or intent of this Agreement or any provision hereof.

**15.10  Company Property.**  The title to all real or personal property (or interests therein) now or hereafter acquired by the Company shall be held by and vested in the Company, and not by or in any Member, individually.

**15.11  Meetings of Members; Voting.**  On any matter described in this Agreement with respect to which any Member is entitled to grant (or deny) his or her consent or cast his or her vote, such Member may accomplish the same by attending any meeting convened for the Members entitled to vote on the matter or he or she may grant to any person a proxy to vote for him or her at such meeting or he or she may grant (or deny) his or her consent in writing. Any Member may waive notice of a meeting, in writing, before, at or after the meeting. The attendance of a Member at a meeting of the Members shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not properly called or convened. Members may participate in a meeting of the Members by means of conference telephone or similar communications equipment through which all persons participating in the meeting can communicate with each other at all times, and such participation in

a meeting shall constitute presence in person at such meeting. The Company shall call a meeting of the Members upon the written request of Members owning at least 10% of the Interests owned by all Members. Written notice of each meeting of the Members shall be given not less than ten (10) days and not more than thirty (30) days prior to the meeting. Any action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by the necessary Members entitled to vote and required to approve such action. If action is taken pursuant to the preceding sentence by less than all of the Members entitled to vote thereon, the Company shall give all Members who did not participate in taking the action written notice of such action.

**15.12  Gender and Number.**  Where the context requires, the use of a pronoun of one gender is to be deemed to include a pronoun of the appropriate gender or the neuter, and singular words are to be deemed to include the plural and vice versa.

**15.13  Securities Representations.**  Each Member hereby represents and warrants to, and agrees with, the other Members and the Company, as follows:

(a)  That he or she is acquiring his or her Company Interest with the intent of holding the same for investment for his or her own account and without the intent or a view to participating directly or indirectly in, or for resale in connection with, any distribution of such Interest within the meaning of the Securities Act of 1933, as amended (the "Federal Act"), or any applicable state securities laws or regulations.

(b)  That he or she acknowledges and agrees that the Company Interests are being issued and sold in reliance upon the exemptions from registration set forth in Section 4(2) of the Federal Act and Section 35-1-20 of the South Carolina Uniform Securities Act and that they cannot and will not be offered for sale, pledged, hypothecated, sold or transferred except in compliance with the terms and conditions of this Agreement and in a transaction which is either exempt from registration under such acts or pursuant to an effective registration statement under such acts.

## ARTICLE XVI
## ALTERNATIVE DISPUTE PROVISIONS

**15.01 .  ALTERNATIVE DISPUTE PROVISIONS.**      If a dispute, controversy or claim (whether based upon contract, tort, statute common law or otherwise)(collectively a "Dispute") arises from or relates directly or indirectly to the subject matter hereof, and if the Dispute cannot be settled through direct discussions, the parties shall first endeavor to resolve the Dispute by participating in a mediation administered by the American Arbitration Association (the "AAA") under its Commercial Mediation Rules before resorting to arbitration. Thereafter, any unresolved Dispute shall be settled by binding arbitration administered by the AAA in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator, after the review rights set forth below have been exhausted, may be entered in any court having jurisdiction. The arbitration

proceedings shall be conducted in Charleston, South Carolina on an expedited basis before a neutral arbitrator who is a member of the Bar of the State of South Carolina, and has been actively engaged in the practice of law for at least 15 years, specializing in commercial transactions with substantial experience in the subject matter of this Agreement. Any attorney who serves as an arbitrator shall be compensated at a rate equal to his or her current regular hourly billing rate unless the AAA is able to arrange with the parties and the arbitrator to agree otherwise. Upon the request of either party, the arbitrator's award shall include findings of fact and conclusions of law provided that such findings may be in summary form. Either party may seek review of the arbitrator's award before an arbitration review panel comprised of three arbitrators qualified in the same manner as the initial arbitrator (as set forth above) by submitting a written request to the AAA. The right of review shall be deemed waived unless requested in writing within 10 days of the delivery of the initial arbitrator's award. The arbitration review panel shall be entitled to review all findings of fact and conclusions of law in whatever manner it deems appropriate and may modify the award of the initial arbitrator in its discretion. Unless otherwise deemed appropriate by the arbitrator(s), the prevailing party shall be entitled to an award of all reasonable out-of-pocket costs and expenses (including attorney's and arbitrator's fees) related to the entire arbitration proceedings (Including review if applicable.)

     **IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and date first above written.

WITNESSES:          MEMBERS:

_____     _____
                       Louis White

_____     _____
                       Sidney A. Brantley

_____     _____
                       Gary D. Brantley

## EXHIBIT A

| MEMBER | CAPITAL CONTRIBUTION | COMPANY INTEREST |
|---|---|---|
| Louis White | $510.00 | 51% |
| Sidney A. Brantley | $250.00 | 25% |
| Gary D. Brantley | $240.00 | 24% |

# **EXHIBIT 2**

# DEPARTMENT OF VETERANS AFFAIRS



## OFFICE OF CONSTRUCTION & FACILITIES MANAGEMENT
## 811 VERMONT AVE, NW
## ROOM 569
## WASHINGTON, DC 20420

### FORT JACKSON NATIONAL CEMETERY, COLUMBIA, SC
### PHASE 1B DEVELOPMENT
### RFP VA-101-09-RP-0100
### PROJECT NO. 930CM2002B

## CONTRACTING OFFICER
**Robert L. Capers**
**Tel: (202) 461-8484**
**Fax: (202) 565-5086**

&

## CONTRACTING OFFICER TECHNICAL REPRESENTATIVE (COTR)
**Edison Carlos, Project Manager**
**Tel: (202) 461-8940**
**Fax: (202) 565-4944**

| ISSUED DATE | PRE-BID CONFERENCE | RFP DUE DATE |
|---|---|---|
| MARCH 30, 2009 | APRIL 6, 2009 | APRIL 29, 2009 |

## TABLE OF CONTENTS

| DIVISION 0 - SPECIAL SECTIONS | | DATE | PAGE(s) |
|---|---|---|---|
| | Solicitation, Offer, and Award (SF 1442) | | 1-3 |
| | Information Regarding Bidding Material, Bid Guarantee and Bonds | | 4 |
| | Instructions, Conditions and Other Statements to Bidders/Offerors | | 5-22 |
| | Representations and Certifications | | 23-26 |
| | General Conditions | | 27-50 |
| | Wage Determinations **SC20080011 and SC20080025** | | 51-57 |
| 00 01 15 | List of Drawing Sheets | 10-07 | 58-61 |

**DIVISION 1-GENERAL REQUIREMENTS**
Section 010000-GENERAL REQUIREMENTS
SECTION 01321613-NETWORK ANALYSIS SCHEDULES
SECTION 013323-SHOP DRAWINGS, PRODUCT DATA, AND SAMPLES
SECTION 014219-REFERENCE STANDARDS
SECTION 014529-TESTING LABORATORY SERVICES
SECTION 015719-TEMPORARY ENVIRONMENTAL CONTROLS
SECTION 015816-TEMPORARY INTERIOR SIGNAGE
SECTION 017419-CONSTRUCTION WASTE MANAGEMENT

**DIVISION 2-EXISTING CONDITIONS**
SECTION 024100-DEMOLITION

**DIVISION 3-CONCRETE**
SECTION 033053-CAST-IN-PLACE CONCRETE
SECTION 034100-PRECAST CONCRETE BURIAL CRYPTS
SECTION 034550-PRECAST CONCRERE COLUMBARIUM UNITS

**DIVISION 4-MASONRY**
SECTION 040513-MASONRY MORTARING
SECTION 040516-MASONRY GROUTING
SECTION 042000-UNIT MASONRY
SECTION 047200-CAST STONE MASONRY

**DIVISION 5-METALS**
SECTION 051200-STRUCTRUAL STEEL FRAMING
SECTION 053100-STEEL DECKING
SECTION 054000-COLD-FORMED METAL FRAMING
SECTION 055000-METAL FABRICATIONS

**DIVISION 6-WOOD AND PLASTICS**
SECTION 061000-ROUGH CARPENTRY
SECTION 061500-WOOD DECKING

**DIVISION 7-THERMAL AND MOISTURE PROTECTION**
SECTION 071113-BITUMINOUS DAMPROOFING
SECTION 072113-THERMAL INSULATION
SECTION 072123-LOOSE-FILL INSULATION
SECTION 072200-ROOF AND DECK INSULATION
SECTION 074000-ROOFING PANELS
SECTION 074600-FIBER CEMENT SIDING AND TRIM
SECTION 076000-FLASHING AND SHEET METAL
SECTION 078400-FIRESTOPPING
SECTION 079200-JOINT SEALANTS

**DIVISION 8-DOORS AND WINDOWS**
SECTION 081113-HOLLOW METAL DOORS AND FRAMES
SECTION 081400-INTERIOR WOOD DOORS
SECTION 083113-ACCESS DOORS AND FRAMES
SECTION 083300-COILING DOORS
SECTION 084113-ALUMINUM-FRAMED ENTRANCES AND STOREFRONTS

SECTION 085113-ALUMINUM WINDOWS
SECTION 087100-DOOR HARDWARE (I-R)
SECTION 088000-GLAZING
SECTION 089000-LOUVERS

**DIVISION 9-FINISHES**
SECTION 092216-NON-STRUCTURAL METAL FRAMING
SECTION 092900-GYPSUM BOARD
SECTION 093013-CERAMIC TILING
SECTION 093900-DIRECT-APPLIED EXTERIOR FINISH
SECTION 095100-ACOUSTICAL CEILINGS
SECTION 096513-RESILIENT BASE AND ACCESSORIES
SECTION 096519-RESILIENT TILE FLOORING
SECTION 096723-RESINOUS FLOORING
SECTION 096800-CARPETING
SECTION 097216-VINYL-COATED FABRIC WALLCOVERINGS
SECTION 099100-PAINTING

**DIVISION 10-SPECIALTIES**
SECTION 101113-MARKERBOARDS
SECTION 101123-TACKBOARDS
SECTION 102113-TOILET COMPARTMENTS
SECTION 102800-TOILET AND BATH ACCESSORIES
SECTION 104413-FIRE EXTINGUISHER CABINETS
SECTION 105013-METAL LOCKERS
SECTION 107500-FLAGPOLES

**DIVISION 11-EQUIPMENT**
SECTION 118000- VEHICLE LIFT SYSTEM

**DIVISION 12-FURNISHINGS**
SECTION 122400-WINDOW SHADES
SECTION 123200-MANUFACTURED WOOD CASEWORK
SECTION 123600-COUNTERTOPS

**DIVISION 13-SPECIAL CONSTRUCTION**
SECTION 130541-SEISMIC RESTRAINT REQUIREMENTS FOR NONSTRUCTURAL COMPONENTS

**DIVISION 14-CONVEYING EQUIPMENT**
NOT USED

**DIVISION 21-FIRE SUPPRESSION**
NOT USED

**DIVISION 22-PLUMBING**
SECTION 220511-COMMON WORK RESULTS FOR PLUMBING
SECION 220512-GENERAL MOTOR REQUIREMENTS FOR PLUMBING EQUIPMENT
SECTION 220523-GENERAL-DUTY VALVES FOR PLUMBING PIPING
SECTION 220533-HEAT TRACING FOR PLUMBING PIPING
SECTION 221100-FACILITY WATER DISTRIBUTUION
SECTION 221123-DONESTIC WATER PUMPS
SECION 223100-FACILITY SANITRAY SEWERAGE
SECTION 221323-SANITARY WASTE INTERCEPTORS
SECTION 221330-DUPLEX SUBMERSIBLE GRINDER PUMP STATION SERVING THE ADMINISTRATION
BUILDING
SECTION 221331-DUBLEX SUBMERSIBLE GRINDER PUMP STATION SERVING THE  MAINTENANCE BUILDING

**DIVISION 23-HEATING, VENTILATIONG, AND AIR CONDITIONING**
SECTION 230511-COMMON WORK RESULTS FOR HVAC AND STEAM GENERATION
SECTION 230512-GENERAL MOTOR REQUIREMENTS FOR HVAC AND STEAM GENERATION EQUIPMENT
SECTION 230541-NOISE AND VIBRATION CONTROL FOR HVAC PIPING AND EQUIPMENT
SECTION 230593-TESTING, ADJUSTING, AND BALANCING FOR HVAC
SECTION 230711-HVAC, PLUMBING, AND BOILER PLANT INSULATION
SECTION 230923-DIRECT DIGITAL CONTROL SYSTEMS FOR HVAC
SECTION 232300-REFRIGERANT PIPING
SECTION 233100-HVAC DUCTS AND CASINGS

SECTION 233400-HVAC FANS
SECTION 233700-AIR OUTLETS AND INLETS
SECTION 23720-AIRTOAIR ENERGY RECOVERY EQUIPMENT
SECTION 237300-INDOOR CENTRAL STATION AIR HANDLING UNIT
SECTION 238100-DECENTRALIZED UNITARY HVAC EQUIPMENT
SECTION 238143-AIRSOURCE UNITARY HEAT PUMPS


**DIVISION 26-ELECTRICAL**
SECTION 260511-REQUIREMENTS FOR ELECTRICAL INSTALLATIONS
SECTION 260521-LOWVOLTAGE ELECTRICAL POWER CONDUCTORS AND CABLES
         (600 VOLTS AND BELOW)
SECTION 260526-GROUNDING AND BONDING FOR ELECTRICAL SYSTEMS
SECTION 260533-RACEWAY AND BOXES FOR ELECTRICAL SYSTEMS
SECTION 260541-UNDERGROUND ELECTRICAL CONSTRUCTION
SECTION 262416-PANELBOARDS
SECTION 262726-WIRING DEVICES
SECTION 262911-LOWVOLTAGE MOTOR STARTERS
SECTION 262921-DISCONNECT SWITCHES
SECTION 263213-ENGINE GENERATORS
SECTION 263623-AUTOMATIC TRANSFER SWITCHES
SECTION 264100-FACILITY LIGHTNING PROTECTION
SECTION 265100-INTERIOR LIGHTING
SECTION 265600-EXTERIOR LIGHTING


**DIVISION 27-COMMUNICATIONS**
NOT USED


**DIVISION 28-ELECTRONIC SAFETY AND SECURITY**
SECTION 280511-REQ. FOR ELECTRONIC SAFETY AND SECURITY INSTALLATION
SECTION 280513-CONDUCTORS AND CALBES FOR ELECTRICAL SAFETY AND     SECURITY
SECTION 280526- GROUNDING AND BONDING FOR ELECTRICAL SAFETY AND SECURITY
SECTION 280533- RACEWAYS AND BOXES FOR ELECTRICAL SAFETY AND SECURITY
SECTION 283100-FIRE DETECTION AND ALARM


**DIVISION 31-EARTHWORK**
SECTION 312000- EARTH MOVING
SECTION 313116- TERMITE CONTROL


**DIVISION 32-EXTERIOR IMPROVEMENTS**
SECTION 320523- CEMENT AND CONCRETE FOR EXTERIOR IMPROVEMENTS
SECTION 321216- ASPHALT PAVING
SECTION 321723- PAVEMENT MARKINGS
SECTION 323112- CHAIN LINK FENCES AND GATES
SECTION 328400- PLANTING IRRIGATION
SECTION 329000- PLANTING


**DIVISION 33-UTILITIES**
SECTION 331000- WATER UTILITIES
SECTION 331010- IRIGATION WELL
SECTION 333000- SANITARY SEWERAGE UTILITIES
SECTION 334000- STORM DRAINAGE UTILITIES
SECTION 334613- FOUNDATION DRAINAGE


**DIVISION 34-TRANSPORTATION**
NOT USED

| SOLICITATION, OFFER, AND AWARD *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. **RFP** VA-101-09-RP-0100 | 2. TYPE OF SOLICITATION ☐ ADVERTISED *(IFB)* ☒ NEGOTIATED *(RFP)* | 3. DATE ISSUED **3/31/09** | PAGE OF PAGES |
|---|---|---|---|---|

**IMPORTANT** — The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST | 6. PROJECT NO. **930CM2002B** |
|---|---|---|

| 7. ISSUED BY                    CODE | ADDRESS OFFER TO |
|---|---|
| **CONTRACTING OFFICER (00CFM3B1) VA OFFICE OF CONSTRUCTION & FACILITIES MANAGEMENT (ROOM 569) 811 VERMONT AVE, NW WASHINGTON, DC 20420** | SAME AS BLOCK 7 |

| 9. FOR INFORMATION CALL: ▶ | A. NAME **ROBERT L. CAPERS** | B. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)* **(202) 461-8484** |
|---|---|---|

## SOLICITATION

NOTE: In advertised solicitations "offer and offeror" mean "bid" and "bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*:

Contractor shall furnish all labor, tools, equipment, materials and supervision to complete all work but not limited to excavation, alterations, roads, grading, drainage, landscaping, irrigation, buildings, mechanical and electrical work and installation of pre-placed crypts for Project No. 930CM2002B, Phase 1B Development at Fort Jackson National Cemetery, Columbia, South Carolina.

This procurement is a Service-Disable Veteran-Owned Small Business (SDVOSB) set-aside.  NAICS: 237990 Size Standard $33.5 Million.

PROPOSAL ITEMS
**CLIN 001: General Construction (including installation of 4,200 crypts in CLIN 002).**

**CLIN 002: Crypts – Manufacture, delivery and off-loading at site 4,200 pre-placed crypts.**

**AWARD POLICY:**  The offerors shall submit a proposal for CLINs 001-002.  The Government intends to award a single contract to the offeror submitting a proposal that determined to be most advantageous to the Government based on best value in accordance FAR Part 15; that award will be made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors.

11. The Contractor shall begin performance within __**10**__ calendar days and complete it within __**540**__ calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory, ☐ negotiable. *(See 52.211-10__.)*

| 12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)* ☒ YES ☐ NO | 12B. CALENDAR DAYS **10** |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and __**3**__ copies to perform the work required are due at the place specified in Item 8 by __**2:00 pm EST**__ *(hour)* local time __**4/29/2009**__ *(date)*. If this is an advertised solicitation, offers will be publicly opened at that time.  Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee ☒ is, ☐ is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than __60__ calendar days for Government acceptance after the date offers are due will be considered nonresponsive and will be rejected.

STANDARD FORM 1442

1

**OFFER** *(Must be fully completed by offeror)*

| 14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)* | 15. TELEPHONE NO. *(Include area code)* |
|---|---|
| | 16. REMITTANCE ADDRESS *(Include only if different than Item 14)* |

**DUNS NUMBER** _____

| CODE | FACILITY CODE |
|---|---|

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government within _____ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS ▶ ***COMPLETE PRICES ON CONTINUATION PAGE 3***

18. The offeror agrees (a) to carry out this offer if the Government accepts it by signing Item 31B within the time specified in Item 13D, and (b) to furnish any required performance and payment bonds.

**19. ACKNOWLEDGMENT OF AMENDMENTS**
*(The offeror acknowledges receipt of amendments to the solicitation — give number and date of each)*

| AMENDMENT NO. | | | | | | | |
|---|---|---|---|---|---|---|---|
| DATE | | | | | | | |

| 20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)* | 20B. SIGNATURE | 20C. OFFER DATE |
|---|---|---|

**AWARD** *(To be completed by Government)*

21 ITEMS ACCEPTED:

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA |
|---|---|

| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ | ITEM | 25. NEGOTIATED PURSUANT TO<br>10 USC 2304(a) (        )        41 USC 252(c) (        ) |
|---|---|---|

| 26. ADMINISTERED BY              CODE | 27. PAYMENT WILL BE MADE BY |
|---|---|

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

| 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return _____ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform work, requisitions identified on this form and any continuation sheets for the consideration slated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications or incorporated by reference in or attached to this contract. | 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary. |
|---|---|

| 30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)* | 31A. NAME OF CONTRACTING OFFICER *(Type or print)* | |
|---|---|---|
| 30B. SIGNATURE | 30C. DATE | 31B. UNITED STATES OF AMERICA<br><br>BY | 31C. AWARD DATE |

In Lieu of STANDARD FORM 1442 (AUTOMATED) CONTINUATION OF BLOCK 17 (INSERT PRICES)

| BID ITEMS | | EXPRESSED AMOUNT ($) | WRITTEN AMOUNT |
|---|---|---|---|
| CLIN 001 | BASE BID | | |
| CLIN 002 | CRYPTS: | | |
| CLIN 003 | DEDUCT ALTERNATE NO. 1 | | |
| CLIN 004 | DEDUCT ALTERNATE NO. 2 | | |
| CLIN 005 | DEDUCT ALTERNATE NO. 3 | | |
| CLIN 006 | DEDUCT ALTERNATE NO. 4 | | |
| CLIN 007 | DEDUCT ALTERNATE NO. 5 | | |
| CLIN 008 | DEDUCT ALTERNATE NO. 6 | | |
| | TOTAL | $ | |

The offerors shall submit a proposal for CLINs 001-008.  The Government intends to award a single contract to the offeror submitting a proposal that determined to be most advantageous to the Government based on best value in accordance FAR Part 15.

If it appears that sufficient funds may not be available for all of the desired construction features, award will be based upon Base Item 001 plus Item 002, less Deduct Alternate No. 1; or less Deduct Alternate 1 & 2; or 1, 2, & 3; or 1, 2, 3, & 4; or 1, 2, 3, 4 & 5; or 1, 2, 3, 4, 5, & 6.  Deduct Alternate items will be taken in descending order, which may be necessary to stay within the funds available at the time of award.

## INFORMATION REGARDING BIDDING MATERIAL, OFFER GUARANTEE AND BONDS

(a) This procurement is a Service-Disable Veteran-Owned Small Business (SDVOSB) set-aside.  All procurement materials consisting of drawings, specifications and contract forms may be obtained by qualified General (Prime) Contractors interested in submitting a proposal to the Department of Veterans Affairs.  Prospective Offerors must obtain copies of solicitation documents from FedBizOpps, which will be available on or about December 1, 2008.  By registering at FedBizOpps (http://www.fedbizopps.gov) the Offerors will have access to downloading plans, specifications and amendments, which will be available only in Adobe PDF electronic format.  The SDVOSB must be registered in the Central Contractor Registration (CCR) database at http://www.ccr.gov prior to award and must also be registered as a SDVOSB firm at the VetBiz Vendor Information Pages at http://www.vip.vetbiz.gov.  By registering for the Register to Receive Notification list at http://www.fedbizopps.gov, you will be notified by e-mail of any new amendments that have been issued and posted.  No other notification of amendments will be provided.  Potential Offerors are advised that they are responsible for obtaining and acknowledging any amendments to the solicitation.  There will be no public opening of the proposals received as a results of this solicitation.

(b) One set of drawings and specifications may be obtained by Builders Exchanges, Chambers of Commerce, Quantity Surveyors, trade and microfilming organizations.

(c) A bid guarantee is required in an amount not less than 20 percent of the offer price but shall not exceed $3,000,000.  Failure to furnish the required bid guarantee in the proper form and amount, by the time set for this solicitation, will require rejection of the proposal in all cases except those listed in FAR 28.101-4, and may be cause for rejection even then.

(d) If the contract will exceed $100,000 (see FAR 28.102-1 for lesser amount), the offer to whom award is made will be required to furnish two bonds, a Payment Bond, SF 25A, and a Performance Bond, SF 25, each in the penal sum as noted in the General Conditions of the Specification. Copies of SFs 25 and 25A may be obtained upon application to the issuing office.

(e) Cost Range: Between $10,000,000.00 and $20,000,000.00

(f) Offerors are advised that the Government may make award without discussions, clarifications or any contact concerning the proposals received.  Therefore, proposal should be submitted initially on the most favorable terms.  Do not assume that offerors will be contacted or afforded an opportunity to clarify, discuss, or revise their proposals.

END OF SECTION

---

## INSTRUCTION, CONDITIONS AND OTHER STATEMENTS TO BIDDERS/OFFERORS

### A.      PART I - GENERAL

**A1.** Gender:  Whenever the masculine gender is used in this solicitation and contract documents, it shall be considered to include feminine.

**A2**. The Government makes no guarantee as to the accuracy of the electronic copies of drawings. The hard copy drawing of the Project Manager shall take precedence over electronic drawings.

**A3.** Federal Acquisition Regulations require that federal contractors register in the Central Contractor Registration (CCR) database at http://www.ccr.gov and enter all mandatory information into the system.  **Award cannot be made until the contractor has registered**. Offerors are encouraged to ensure that they are registered in CCR prior to submitting their proposal.  In addition, Offerors shall complete electronic annual representations and certifications at http://orca.bpn.gov in conjunction with required registration in the Central Contractor Registration (CCR) database.

**A4.** Mailing List: Offerors are encouraged to enter their information in the FedBizOpps website at www.fedbizopps.gov.

**A5.** Amendments:   Amendments to Solicitation No. VA-101-09-RP-0100 will be posted at http://www.fedbizopps.gov.  Paper copies of the amendments will NOT be individually mailed. By registering to Receive Notification list at http://www.fedbizopps.gov, you will be notified by e-mail of any new amendments that have been issued and posted.  No other notification of amendments will be provided.  Potential Offerors are advised that they are responsible for obtaining and acknowledging any amendments to the solicitation.  Failure to acknowledge an amendment may result in your proposal being considered non-responsive.

**A6.** A public bid opening will not occur under this RFP solicitation.

**A7.** **Pre-Proposal Conference**:  A Pre-Proposal Conference will be held on April 13, 2009, at 10:00am Eastern Time at the Fort Jackson National Cemetery, 4170 Percival Road, Columbia, South Carolina.  A site visit will be conducted immediately following the pre-proposal conference.

**A.8.** **Joint Venture and Teaming Arrangements** for Service-Disabled Veteran-Owned Small Businesses (See Attachment IL 049-06-4).

(a).  A joint venture is defined as two or more businesses joining together under a contractual agreement to conduct a specific business enterprise with both parties sharing profits and losses. The joint venture is generally for one specific contract only, rather than for a continuing business relationship, such as a strategic alliance or partnership. A joint venture is a separate legal entity, must have a separate DUNS number, and must be separately registered in the Central Contract Registration (CCR). A teaming arrangement that does not constitute a partnership or a joint venture does not create a separate legal entity. A contractor team that consists of a prime contractor and

subcontractors must submit a bid or offer in the name of the SDVOSB as the prime contractor to qualify for award under an SDVOSB set-aside, and the SDVOSB prime contractor must perform at least the minimum amount of work required by the FAR clause at 52.219-27.

(b). To qualify as a joint venture under the SDVOSB program, each party to the joint venture must be a small business and one of the parties, the managing participant, must be an SDVOSB. Further determination of whether or not the joint venture, as an entity, qualifies as a small business depends on the dollar value of the proposed contract.

## A9. PARTNERING

(a) In order to most effectively accomplish this contract, the Government proposes to form a cohesive partnership with the Contractor and its subcontractors.  This partnership would strive to draw on the strengths of each organization in an effort to achieve a quality project, done right the first time, within the budget and on schedule.

(b) This partnership will be totally voluntary.  The focus of partnering is to build cooperative relationships with the private sector and avoid or minimize disputes and to nurture a more collaborative ethic characterized by trust, cooperation and teamwork.  Partnering is defined as the creation of a relationship between the owner and contractor that promotes mutual and beneficial goals.  It is a non-contractual, but formally structured agreement between the parties.  The ultimate goal is the elimination of the "us" versus "them" thinking, and formation of a "we" mentality for the benefit of the project.

(c) Any cost associated with effectuating this partnership will be agreed to by both parties and will be shared equally with no change in contract price.

## A10. <u>VETS 100:</u>  Title 38, USC Section 4212(d) and Public Law 105-339, requires that federal contractors report, at least annually, the number and category of veterans who are within their workforce.  Submission of the VETS 100 reporting information can be done electronically at: <http://vets100.cudenver.edu>.  **For procurement awards in excess of $25,000, this report must be completed and accepted prior to any Federal contract award.**  Therefore, all potential contractors are encouraged to file every year.

## A11.  Required registration with contractor performance system (CPS)

(a)  As prescribed in Federal Acquisition Regulation (FAR) Part 42.15, the Department of Veterans Affairs (VA) evaluations contractor past performance on all contracts that exceed $100,000, and shares those evaluations with other Federal Government contract specialists and procurement officials.  The FAR requires that the contractor be provided an opportunity to comment on past performance evaluations prior to each report closing.  To fulfill this requirement VA uses an online database, the Contractor performance System (CPS) which is maintained by the National Institutes of Health (NIH).  The CPS database information is shared with the Past Performance Information Retrieval System (PPIRS) database, which is available to all Federal agencies.

(b)   Each contractor whose contract award is estimated to exceed $100,000 is required to register with the NIH CPS database at the following web address: **https://cpscontractor.nih.gov**.  Help in registering can be obtained by contacting CPS Support E-mail (**cps-support-l@list.nih.gov**) or by calling (301) 451-2771.  Registration should occur no later than thirty days after contract award, and must be kept current should there be any change to the contractor's registered representative.

(c)   For contracts with a period of one year or less, the contracting officer will perform a single evaluation when the contract is complete.  For contracts exceeding one year, the contracting officer will evaluate the contractor's performance annually.  Interim reports will be filed each year until the last year of the contract, when the final report will be completed.  The report shall be assigned in CPS to the contractor's designated representative for comment.  The contractor representative will have thirty days to submit any comments and reassign the report to the VA contracting officer.

(d)   Failure to have a current registration with the NIH CPS database, or to reassign the report to the VA contracting officer within those thirty days, will result in the Government's evaluation being placed on file in the database with a statement that the contractor failed to respond.


## A12. 52.236-27 SITE VISIT (CONSTRUCTION) (FEB 1995)

(a) The clauses at 52.236-2, Differing Site Conditions, and 52.236-3, Site Investigations and Conditions Affecting the Work, will be included in any contract awarded as a result of this solicitation. Accordingly, offerors or quoters are urged and expected to inspect the site where the work will be performed.

(b) Site visits may be arranged during normal duty hours by contacting:

Name:        Mr. Edison Carlos or by e-mail ed.carlos@va.gov

Address:    Office of Construction & Facilities Management
                 811 Vermont Ave., NW
                 Washington, DC 20005

Telephone:  202-461-8940

(End of Provision)

**A13.  Proposal Submission:**

a. **Documents required**: The proposals shall be submitted to the Contracting Officer by the due date and time as specified on the SF 1442 at the address as indicated below.  The proposals shall be **spiral bound** into volumes (Volume I – Technical and Volume II – Cost) with a cover sheet displaying the RFP number, contractor name, and an index of the sections of each volume. The volumes shall be submitted in response to this solicitation.  **Volume I** shall consist of the Technical Proposal and **Volume II** shall consist of the signed SF-1442, Price (continuation price page 3) acknowledgment of amendments, Representation and Certifications, and bid guarantee. *As a courtesy e-mail a copy of the Volume I and II to Robert.capers2@va.gov and the subject line should read "Fort Jackson – (insert company name)."*

b. All transmittal envelopes or other packaging shall be clearly marked with the solicitation number, offeror(s) name and return address.

c. All proposals should be mailed by fastest traceable means (ie FedEx, UPS, Airborne Express, etc) to avoid delays by USPS package irradiation treatment procedure in Washington, DC.

d. The offeror shall submit one (1) sealed original offers, three (3) copies of their proposal to the office of Mr. Robert L. Capers, Contracting Officer, Department of Veterans Affairs, Office of Construction & Facilities Management by the date and time shown on the SF 1442.

| Postal Address: | Courier (FedEx)/Hand Carried Address: |
|---|---|
| Department of Veterans Affairs<br>Office Construction & Facilities Mgt<br>Attn: Robert Capers<br>810 Vermont Avenue, NW (00CFM3B1)<br>Washington, DC 20420 | Department of Veterans Affairs<br>Office Construction & Facilities Mgt<br>Attn: Robert Capers (Room 569)<br>811 Vermont Avenue NW (00CFM3B1)<br>Suite 569, Lafayette<br>Washington, DC 20005 |

## A14. Selection Criteria and weightings

Proposals will be evaluated and the Government intends to award a single contract to the offeror submitting a proposal that determined to be most advantageous to the Government based on best value in accordance FAR Part 15; award will be made on the basis of the lowest evaluated price proposal (basis on its realism and acceptability to the Government) for meeting or exceeding the acceptability standards for non-cost factors.

    1.   All technical factors are of equal importance, evaluations will be based on construction management, past performance, schedule and Cost.  To be determined technically acceptable, the offeror must be technically acceptable in each of the areas identified.  Responsibility determination will be made in accordance with FAR Part 9.1.

    2.   Technical Evaluation - All technical factors and sub-factors are of equal importance and after a proposal has been determined technically acceptable, price becomes the most important factor.  .

        **A. Construction Management:**  This factor will be evaluated on the basis of personnel experience and technical/management approach where both of these sub-factors are relatively equal in importance.  Concise, organized submissions that demonstrate a clear project understanding; an effective approach; propose a highly qualified team whose experience, qualifications, roles and responsibilities are clearly and concisely documented and consistent with project scope and effectively coordinated with other aspects of the proposal; and which clearly demonstrate the offeror's superior capability to perform; with well-thought and effective phasing, site use, quality control, and safety plans will be rated higher than disjointed, disorganized, and lengthy proposals with unclear, generic, or ineffective plans and information.

9

**B. Past Performance:** This factor will be evaluated on the basis of corporate project experience where all of these sub-factors are of equal in importance. Offeror's Corporate Project Experience will be evaluated on the basis of the answers to a series of questions directed to the references that are to be provided by the Offeror as part of the Technical Proposal requirement. Based upon those responses, the Offeror's past performance will be ranked using the following ratings:

| Rating | | |
|---|---|---|
| O | Outstanding | Performance greatly exceeded the contract requirements |
| A | Above Average | Performance exceeded the contract requirements |
| S | Satisfactory | Performance met the contract requirements |
| M | Marginal | Performance met the minimum contract requirements but some material aspects of the contractor's performance were less than satisfactory. |
| U | Unacceptable | Performance was poor and/or did not satisfy contract requirements |
| Note: If responses to any of the questions are Marginal or Unacceptable, the reference will be asked to elaborate on the reason for the less than satisfactory rating. | | |

The following is the list of questions that shall be asked:

a.    How would you rate the offeror's compliance with the contract requirements?

b.    How would you rate the effectiveness of the offeror's on-site management?

c.    How would you rate the offeror's use of appropriate personnel for contract requirements?

d.    How would you rate the offeror's timeliness in submission of schedule? Reports? Submittals?

e.    How would you rate the offeror's adherence to the construction schedule?

f.    How would you rate the offeror's responsiveness towards safety issues?

g.    How would you rate the offeror's ability to effectively deal with the customer and other Government personnel?

h.    How would you rate the offeror's cooperativeness in solving problems and negotiating changes?

i.    How would you rate the offeror's abilities to address any financial difficulties (i.e., payment of subcontractors and/or vendors, labor disputes, etc.)?

j.    How would you rate the offeror's responsiveness to cure notices, show cause letters, suspension of payment, or termination notices?

k.    As the end user/customer, how would you rate your satisfaction with the end product?

l.    How would you rate the offeror's overall performance on this project?

**C. Proposed Schedule:**  This factor will be evaluated on the basis of how reasonably and realistically it captures and addresses key elements and project phasing with respect to conditions and requirements.

**D. Cost/Price l** - After a proposal has been determined technically acceptable, price becomes the most important factor.  But cost will be evaluated on the basis of its realism and acceptability to the Government.

## B.    PART II - PROPOSAL REQUIREMENTS

**B1.** The offeror shall submit one (1) sealed original offers, three (3) copies of their proposal to the office of Mr. Robert Capers, Contracting Officer, Department of Veterans Affairs, Office of Construction & Facilities Management by the date and time shown on the SF 1442.

| **Postal Address:** | **Courier (FedEx)/Hand Carried Address**: |
|---|---|
| Department of Veterans Affairs<br>Office Construction & Facilities Mgt<br>Attn: Robert Capers<br>810 Vermont Avenue, NW (00CFM3B1)<br>Washington, DC 20420 | Department of Veterans Affairs<br>Office Construction & Facilities Mgt<br>Attn: Robert Capers (Room 569)<br>811 Vermont Avenue NW (00CFM3B1)<br>Suite 569, Lafayette<br>Washington, DC 20005 |

**B2**. Technical and Cost sections of the Offers proposals will be evaluated independently. Offeror shall separately bind each section. Each section must therefore be labeled with the Offeror's organization, business address, and VA Project Number. Offerors shall affix their names and return addresses on their envelope/packaging.

a) **Volume I** shall consist of the Technical proposal
b) **Volume II, Cost,** shall consist of the signed SF-1442, Price (continuation price page 3) acknowledgment of  amendments, Representations and Certification and bid guarantee
c) **As a courtesy** e-mail a copy of the Volume I and II to Robert.capers2@va.gov and the subject line should read "Fort Jackson – (insert company name)."

## B3. TECHNICAL PROPOSAL REQUIRMENTS

The Technical Proposal will be divided into three sections: (1) Construction Management; (2) Past Performance; and (3) Proposed Schedule.

**1 Construction Management:**

The offeror shall set forth its management approach to performing the work that is the subject of this Request for Proposal.

a    Project Personnel Experience (Specialized experience and technical competence). The Offeror shall demonstrate the relevant experience of key project personnel through a biographical narrative.  At a minimum, the Offeror shall provide information on their proposed project manager, construction manager, and construction superintendent.  Information shall include:

- Name of individual.
- Company employed by.
- Company position title.
- Years with the company.
- Describe work experience with projects that were cemeteries, golf courses or similar projects and the company (by name) they worked for when involved in the project.
- An indication of which (if any) projects submitted under Corporate Experience (above) the individual participated in and what the individuals responsibility was for that project.
- An indication of which other individuals submitted under Project Personnel Experience this individual has worked with and the project they worked on together, noting if that project has been submitted under Corporate Experience (above).
- Position that the individual will hold in regard to this contract/project team, description of duties and what percentage of the individual's time would be committed to the project during the construction phases.
- Describe job related educational experience including degrees, certificates etc and granting institutions.

b. <u>Technical/Management Approach</u> - The Offeror shall demonstrate the following, relevant to the subject procurement.

- Project Delivery Philosophy - Include expectation statements concerning elements for Successful Partnering: Communication, Commitment and Conflict Resolution.
- Quality Assurance/Quality Control Plan
- Project Organizational Chart and Narrative - Include team members submitted under Project Personnel Experience above. Clearly describe the prime responsible firm and individuals as well as the roles and responsibilities of individuals proposed as consultants and sub contractors.  Provide a brief narrative all consultants and all proposed major subcontractors, including phone numbers, addresses, name of contacts, years of experience, size and scope of relevant projects, and other pertinent information as the Offeror sees fit. The general contractor and subcontractors shall meet or exceed the following minimum requirements:
  - o The general contractor shall have at least 5 years experience as a general contractor and at least 5 years experience building golf courses or similar earthwork projects;
  - o Preferably, the landscape contractor and the irrigation contractor are one and the same and have at least 5 years experience on landscaping projects with at least 50 acres in size;
  - o The irrigation contractor has at least 5 years irrigation experience and has completed at least 5 projects that exceeded 50 irrigated acres each;
  - o The earthwork contractor has at least 5 years experience in road building;
  - o The paving contractor has at least 5 years experience in road paving;

- Capability to Perform – The Offeror shall provide a statement of their company's total bonding capacity, current available bonding capacity and expected available capacity for 2009.  The Offeror shall also provide a statement of their company's current workload and availability of staff and resources to adequately manage and execute the project. Include project schedules for current and pending projects, as well as the anticipated impact of this project on those schedules, staffing plans, and resources.

## 2.      Past Performance

Corporate Project Experience - The Offeror shall demonstrate corporate experience with no less than three and no more than four projects completed within the last five years of contracts similar in size and scope to this project.  In describing project experience, provide the following information:

- Project title, location, summarized project scope, and contracting method (design-build, design bid construct, CM at risk etc).

- Project owner and name and telephone number of owner's contact person.

- Project design Architect and Engineers (consultants if utilized) and name and telephone number of contact person(s).

- Project Statistics including start and completion dates (original vs. actual); cost (bid vs. final with brief explanation of what is included in the cost); square footage; foundation type; number of levels; and any awards (prizes) received.

VA-101-09-RP-0100                  Fort Jackson              Phase 1B Development

## GENERAL CONTRACTOR REFERENCE FORM

OFFEROR:_____

SOLICITATION NO._____

CONTRACT NO._____ PROJECT NO._____

PROJECT TITLE:_____

LOCATION:_____

CONTRACTING OFFICER/POC:_____

       PHONE NO:_____

       EMAIL ADDRESS:_____

OWNERS PROJECT MANAGER/POC_____

       PHONE NO:_____

       EMAIL ADDRESS:_____

TYPE OF CONTRACT (Negotiated, Design/Build, Design/Bid/Build)

       _____

AWARD AMOUNT:_____ FINAL AMOUNT:_____

ORIGINAL SCHEDULED COMPLETION DATE:_____

ACTUAL COMPLETION DATE:_____

OSHA CITATIONS (If Applicable )_____

LIST ALL MAJOR SUBCONTRACTORS (W/POC & Phone Numbers)

_____

_____

_____

_____

_____

_____

DESCRIPTION OF PROJECT

_____

_____

_____

_____

_____

_____

VA-101-09-RP-0100                Fort Jackson            Phase 1B Development

**3. Proposed Schedule:**

The Offeror shall submit a proposed project schedule in the format of a time-scaled bar (Gantt) chart. The schedule's time frame shall be from Notice to Proceed through Final Acceptance in accordance with the performance period specified in the SF 1442.  The schedule shall be broken down by trade or major division of work showing start and completion dates. The major work divisions shall be further broken down into detailed tasks and critical milestones with linkages between tasks.  The Offeror shall specify allowances for bad weather, days of the week and hours of operation during each phase of the work, and the percentage of contract completion that will be achieved at the end of each month of the contract period based upon the Offeror's cost proposal.

END OF SECTION

---

**INSTRUCTIONS, CONDITIONS AND OTHER STATEMENTS TO
BIDDERS/OFFERORS - CONTINUED**

---

**2.1  52.216-1  TYPE OF CONTRACT  (APR 1984)**

The Government contemplates award of a (Firm Fixed Price) contract resulting from this solicitation.

(End of Provision)

**2.2  52.222-23  NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE EQUAL EMPLOYMENT OPPORTUNITY FOR CONSTRUCTION (FEB 1999)**

(a) The offeror's attention is called to the Equal Opportunity clause and the Affirmative Action Compliance Requirements for Construction clause of this solicitation.

(b) The goals for minority and female participation, expressed in percentage terms for the Contractor's aggregate workforce in each trade on all construction work in the covered area, are as follows:

| Goals for minority participation for each trade | Goals for female participation for each trade |
|---|---|
| 23.4% | 6.9% |

These goals are applicable to all the Contractor's construction work performed in the covered area.  If the Contractor performs construction work in a geographical area located outside of the covered area, the Contractor shall apply the goals established for the geographical area where the work is actually performed.  Goals are published periodically in the Federal Register in notice form, and these notices may be obtained from any Office of Federal Contract Compliance Programs office.

(c) The Contractor's compliance with Executive Order 11246, as amended, and the regulations in 41 CFR 60-4 shall be based on (1) its implementation of the Equal Opportunity clause, (2) specific affirmative action obligations required by the clause entitled "Affirmative Action Compliance Requirements for Construction," and (3) its efforts to meet the goals.  The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade.  The Contractor shall make a good faith effort to employ minorities and women evenly on each of its projects.  The transfer of minority or female employees or trainees from Contractor to Contractor, or from project to project, for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, Executive Order 11246, as amended, and the regulations in 41 CFR 60-4.  Compliance with the goals will be measured against the total work hours performed.

(d)  The Contractor shall provide written notification to the Deputy Assistant Secretary for Federal Contract Compliance, U.S. Department of Labor, within 10 working days following award of any construction subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the--

(1) Name, address, and telephone number of the subcontractor;

(2) Employer's identification number of the subcontractor;

(3) Estimated dollar amount of the subcontract;

(4) Estimated starting and completion dates of the subcontract; and

(5) Geographical area in which the subcontract is to be performed.

(e) As used in this Notice, and in any contract resulting from this solicitation, the "covered area" is

(End of Provision)

## 2.3  52.225-10  NOTICE OF BUY AMERICAN ACT REQUIREMENT -- CONSTRUCTION MATERIALS (MAY 2002)

(a) Definitions. Construction material, domestic construction material, and foreign construction material, as used in this provision, are defined in the clause of this solicitation entitled "Buy American Act--Construction Materials" (Federal Acquisition Regulation (FAR) clause 52.225-9).

(b) Requests for determinations of inapplicability. An offeror requesting a determination regarding the inapplicability of the Buy American Act should submit the request to the Contracting Officer in time to allow a determination before submission of offers. The offeror shall include the information and applicable supporting data required by paragraphs (c) and (d) of the clause at FAR 52.225-9 in the request. If an offeror has not requested a determination regarding the inapplicability of the Buy American Act before submitting its offer, or has not received a response to a previous request, the offeror shall include the information and supporting data in the offer.

(c) Evaluation of offers. (1) The Government will evaluate an offer requesting exception to the requirements of the Buy American Act, based on claimed unreasonable cost of domestic construction material, by adding to the offered price the appropriate percentage of the cost of such foreign construction material, as specified in paragraph (b)(3)(i) of the clause at FAR 52.225-9.

(2) If evaluation results in a tie between an offeror that requested the substitution of foreign construction material based on unreasonable cost and an offeror that did not request an exception, the Contracting Officer will award to the offeror that did not request an exception based on unreasonable cost.

(d) Alternate offers. (1) When an offer includes foreign construction material not listed by the Government in this solicitation in paragraph (b)(2) of the clause at FAR 52.225-9, the offeror also may submit an alternate offer based on use of equivalent domestic construction material.

(2) If an alternate offer is submitted, the offeror shall submit a separate Standard Form 1442 for the alternate offer, and a separate price comparison table prepared in accordance with paragraphs (c) and (d) of the clause at FAR 52.225-9 for the offer that is based on the use of any foreign construction material for which the Government has not yet determined an exception applies.

(3) If the Government determines that a particular exception requested in accordance with paragraph (c) of the clause at FAR 52.225-9 does not apply, the Government will evaluate only those offers based on use of the equivalent domestic construction material, and the offeror shall be required to furnish such domestic construction material. An offer based on use of the foreign construction material for which an exception was requested--

(i) Will be rejected as nonresponsive if this acquisition is conducted by sealed bidding; or

(ii) May be accepted if revised during negotiations.

End of Provision)

## 2.4  52.228-1  BID GUARANTEE  (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.-

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000 whichever is less.-

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

(End of Clause)

**2.5  52.233-2  SERVICE OF PROTEST  (SEP 2006)**

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

Hand-Carried Address:

Department of Veterans Affairs
Office of Construction and
Facilities Management (00CFM3B1)
811 Vermont AVE, NW
Washington DC  20420

Mailing Address:

Department of Veterans Affairs
Office of Construction and
Facilities Management (00CFM3B1)
811 Vermont AVE, NW
Washington DC  20420

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

**2.6  852.211-72  TECHNICAL INDUSTRY STANDARDS (JAN 2008)**

The supplies or equipment required by this invitation for bid or request for proposal must conform to the standards of the solicitation. The successful bidder or offeror will be required to submit proof that the item(s) he/she furnishes conforms to this requirement. This proof may be in the form of a label or seal affixed to the equipment or supplies, warranting that they have been tested in accordance with and conform to the specified standards. Proof may also be furnished in the form of a certificate from one of the above listed organizations certifying that the item(s) furnished have been tested in accordance with and conform to the specified standards.
(End of Provision)

**2.7  VAAR 852.233-70  PROTEST CONTENT/ALTERNATIVE DISPUTE RESOLUTION (JAN 2008)**

(a) Any protest filed by an interested party shall:

(1) Include the name, address, fax number, and telephone number of the protester;

(2) Identify the solicitation and/or contract number;

(3) Include an original signed by the protester or the protester's representative and at least one copy;

(4) Set forth a detailed statement of the legal and factual grounds of the protest, including a description of resulting prejudice to the protester, and provide copies of relevant documents;

(5) Specifically request a ruling of the individual upon whom the protest is served;

(6) State the form of relief requested; and

(7) Provide all information establishing the timeliness of the protest.

(b) Failure to comply with the above may result in dismissal of the protest without further consideration.

(c) Bidders/offerors and contracting officers are encouraged to use alternative dispute resolution (ADR) procedures to resolve protests at any stage in the protest process. If ADR is used, the Department of Veterans Affairs will not furnish any documentation in an ADR proceeding beyond what is allowed by the Federal Acquisition Regulation.

(End of Provision)

## 2.8  VAAR 852.233-71  ALTERNATE PROTEST PROCEDURE (JAN 1998)

As an alternative to filing a protest with the contracting officer, an interested party may file a protest with the Deputy Assistant Secretary for Acquisition and Materiel Management, Acquisition Administration Team, Department of Veterans Affairs, 810 Vermont Avenue, NW., Washington, DC 20420, or for solicitations issued by the Office of Construction and Facilities Management, the Director, Office of Construction and Facilities Management, 810 Vermont Avenue, NW., Washington, DC 20420. The protest will not be considered if the interested party has a protest on the same or similar issues pending with the contracting officer.

(End of Provision)

## 2.9  VAAR 852.270-1  REPRESENTATIVES OF CONTRACTING OFFICERS (JAN 2008)

The contracting officer reserves the right to designate representatives to act for him/her in furnishing technical guidance and advice or generally monitor the work to be performed under this contract. Such designation will be in writing and will define the scope and limitation of the designee's authority. A copy of the designation shall be furnished to the contractor.

(End of Provision)

## 2.10  VA NOTICE OF TOTAL SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS SET-ASIDE (JUNE 2007)

(a) Definition. In accordance with 38 U.S.C. 8127, for the Department of Veterans Affairs, "Service-disabled veteran-owned small business concern"-

(1) Means a small business concern-

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans (or eligible surviving spouses) (38 U.S.C. 8127(h) and (k)(2)(A)(i)); and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veteran (or eligible surviving spouse) or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran (38 U.S.C. 8127(h) and (k)(2)(A)(ii)); and

(iii) The business meets federal small business size standards for the applicable North American Industry Classification System (NAICS) code identified in the solicitation document (38 U.S.C. 8127(k)(1)); and

(iv) The business is listed in the VetBiz.gov Vendor Information Pages, (http://www.VetBiz.gov).

(2) "Service-disabled veteran" means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

(3) "Surviving Spouse" is an individual as defined in 38 U.S.C. 101(3).

(b) General.

(1) Offers are solicited only from service-disabled veteran-owned small business concerns. Offers received from concerns that are not service-disabled veteran-owned small business concerns shall not be considered.

(2) Any award resulting from this solicitation will be made to a service-disabled veteran-owned small business concern.

(c) Agreement. A service-disabled veteran-owned small business concern agrees that, in the performance of the contract, in the case of a contract for-

(1) Services (except construction), at least 50 percent of the cost of personnel for contract performance will be spent for employees of the concern or employees of other service-disabled veteran-owned small business concerns;

(2) Supplies (other than acquisition from a nonmanufacturer of the supplies), at least 50 percent of the cost of manufacturing, excluding the cost of materials, will be performed by the concern or other service-disabled veteran-owned small business concerns;

(3) General construction, at least 15 percent of the cost of the contract performance incurred for personnel will be spent on the concern's employees or the employees of other service-disabled veteran-owned small business concerns; or

(4) Construction by special trade contractors, at least 25 percent of the cost of the contract performance incurred for personnel will be spent on the concern's employees or the employees of other service-disabled veteran-owned small business concerns.

(d) A joint venture may be considered a service-disabled veteran owned small business concern if-

(1) At least one member of the joint venture is a service-disabled veteran-owned small business concern and makes the following representations: That it is a service-disabled veteran-owned small business concern, and that it is a small business concern under the North American Industry Classification Systems (NAICS) code assigned to the procurement;

(2) Each other concern is small under the size standard corresponding to the NAICS code assigned to the procurement;

(3) The joint venture meets the requirements of paragraph 7 of the explanation of Affiliates in 19.101 of the Federal Acquisition Regulation; and

(4) The joint venture meets the requirements of 13 CFR 125.15(b).

(e) Any service-disabled veteran-owned small business concern (nonmanufacturer) must meet the requirements in 19.102(f) of the Federal Acquisition Regulation to receive a benefit under this program.

## 2.11  52.252-1  SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of those provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a solicitation provision may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html
http://www.va.gov/oamm/oa/ars/policyreg/vaar/index.cfm
                              (End of Provision)

| 52.215-1 | INSTRUCTIONS TO OFFERORS--COMPETITIVE ACQUISITION | JAN 2004 |
| 52.236-28 | PREPARATION OF PROPOSALS--CONSTRUCTION | OCT 1997 |

## REPRESENTATIONS AND CERTIFICATIONS

## 3.1  52.204-8  ANNUAL REPRESENTATIONS AND CERTIFICATIONS (FEB 2009)

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is 237990.

(2) The small business size standard is $33.5 Million.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b)(1) If the clause at 52.204-7, Central Contractor Registration, is included in this solicitation, paragraph (d) of this provision applies.

(2) If the clause at 52.204-7 is not included in this solicitation, and the offeror is currently registered in CCR, and has completed the ORCA electronically, the offeror may choose to use paragraph (d) of this provision instead of completing the corresponding individual representations and certifications in the solicitation. The offeror shall indicate which option applies by checking one of the following boxes:

[  ] (i) Paragraph (d) applies.
[  ] (ii) Paragraph (d) does not apply and the offeror has completed the individual representations and certifications in the solicitation.

(c)(1) The following representations or certifications in ORCA are applicable to this solicitation as indicated:

(i) 52.203-2, Certificate of Independent Price Determination. This provision applies to solicitations when a firm-fixed-price contract or fixed-price contract with economic price adjustment is contemplated, unless--

(A) The acquisition is to be made under the simplified acquisition procedures in Part 13;

(B) The solicitation is a request for technical proposals under two-step sealed bidding procedures; or

(C) The solicitation is for utility services for which rates are set by law or regulation.

(ii) 52.203-11, Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions. This provision applies to solicitations expected to exceed $100,000.

(iii) 52.204-3, Taxpayer Identification. This provision applies to solicitations that do not include the clause at 52.204-7, Central Contractor Registration.

(iv) 52.204-5, Women-Owned Business (Other Than Small Business). This provision applies to solicitations that--

(A) Are not set aside for small business concerns;

(B) Exceed the simplified acquisition threshold; and

(C) Are for contracts that will be performed in the United States or its outlying areas.

(v) 52.209-5, Certification Regarding Responsibility Matters. This provision applies to solicitations where the contract value is expected to exceed the simplified acquisition threshold.

(vi) 52.214-14, Place of Performance--Sealed Bidding. This provision applies to invitations for bids except those in which the place of performance is specified by the Government.

(vii) 52.215-6, Place of Performance. This provision applies to solicitations unless the place of performance is specified by the Government.

(viii) 52.219-1, Small Business Program Representations (Basic & Alternate I). This provision applies to solicitations when the contract will be performed in the United States or its outlying areas.

(A) The basic provision applies when the solicitations are issued by other than DoD, NASA, and the Coast Guard.

(B) The provision with its Alternate I applies to solicitations issued by DoD, NASA, or the Coast Guard.

(ix) 52.219-2, Equal Low Bids. This provision applies to solicitations when contracting by sealed bidding and the contract will be performed in the United States or its outlying areas.

(x) 52.222-22, Previous Contracts and Compliance Reports. This provision applies to solicitations that include the clause at 52.222-26, Equal Opportunity.

(xi) 52.222-25, Affirmative Action Compliance. This provision applies to solicitations, other than those for construction, when the solicitation includes the clause at 52.222-26, Equal Opportunity.

(xii) 52.222-38, Compliance with Veterans' Employment Reporting Requirements. This provision applies to solicitations when it is anticipated the contract award will exceed the simplified acquisition threshold and the contract is not for acquisition of commercial items.

(xiii) 52.223-1, Biobased Product Certification. This provision applies to solicitations that require the delivery or specify the use of USDA-designated items; or include the clause at 52.223-2, Affirmative Procurement of Biobased Products Under Service and Construction

Contracts.

(xiv) 52.223-4, Recovered Material Certification. This provision applies to solicitations that are for, or specify the use of, EPA- designated items.

(xv) 52.225-2, Buy American Act Certificate. This provision applies to solicitations containing the clause at 52.225-1.

(xvi) 52.225-4, Buy American Act--Free Trade Agreements--Israeli Trade Act Certificate. (Basic, Alternate I, and Alternate II) This provision applies to solicitations containing the clause at 52.225-3.

(A) If the acquisition value is less than $25,000, the basic provision applies.

(B) If the acquisition value is $25,000 or more but is less than $50,000, the provision with its Alternate I applies.

(C) If the acquisition value is $50,000 or more but is less than $67,826, the provision with its Alternate II applies.

(xvii) 52.225-6, Trade Agreements Certificate. This provision applies to solicitations containing the clause at 52.225-5.

(xviii) 52.225-20, Prohibition on Conducting Restricted Business Operations in Sudan--Certification.

(xix) 52.226-2, Historically Black College or University and Minority Institution Representation. This provision applies to--

(A) Solicitations for research, studies, supplies, or services of the type normally acquired from higher educational institutions; and

(B) For DoD, NASA, and Coast Guard acquisitions, solicitations that contain the clause at 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns.

(2) The following certifications are applicable as indicated by the Contracting Officer:

[ ](i) 52.219-19, Small Business Concern Representation for the Small Business Competitiveness Demonstration Program.

[ ](ii) 52.219-21, Small Business Size Representation for Targeted Industry Categories Under the Small Business Competitiveness Demonstration Program.

[ ](iii) 52.219-22, Small Disadvantaged Business Status.

[ ](A) Basic.

[  ](B) Alternate I.

[  ](iv) 52.222-18, Certification Regarding Knowledge of Child Labor for Listed End Products.

[  ](v) 52.222-48, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment Certification.

[  ](vi) 52.222-52 Exemption from Application of the Service Contract Act to Contracts for Certain Services--Certification.

[  ](vii) 52.223-9, with its Alternate I, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (Alternate I only).

[  ](viii) 52.223-13, Certification of Toxic Chemical Release Reporting.

[  ](ix) 52.227-6, Royalty Information.

[  ](A) Basic.

[  ](B) Alternate I.

[  ](x) 52.227-15, Representation of Limited Rights Data and Restricted Computer Software.

(d) The offeror has completed the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov. After reviewing the ORCA database information, the offeror verifies by submission of the offer that the representations and certifications currently posted electronically that apply to this solicitation as indicated in paragraph (c) of this provision have been entered or updated within the last 12 months, are current, accurate, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this offer and are incorporated in this offer by reference (see FAR 4.1201); except for the changes identified below [offeror to insert changes, identifying change by clause number, title, date]. These amended representation(s) and/or certification(s) are also incorporated in this offer and are current, accurate, and complete as of the date of this offer.

| FAR Clause # | Title | Date | Change |
|---|---|---|---|
| ------ | ---------- | ------ | ------ |

Any changes provided by the offeror are applicable to this solicitation only, and do not result in an update to the representations and certifications posted on ORCA.

(End of Provision)

## GENERAL CONDITIONS

**4.1  52.211-10  COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)  ALTERNATE I  (APR 1984)**

The Contractor shall be required to (a) commence work under this contract within 10 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than 540 calendar days.  The time stated for completion shall include final cleanup of the premises.

The completion date is based on the assumption that the successful offeror will receive the notice to proceed. The completion date will be extended by the number of calendar days after the above date that the Contractor receives the notice to proceed, except to the extent that the delay in issuance of the notice to proceed results from the failure of the Contractor to execute the contract and give the required performance and payment bonds within the time specified in the offer.

(End of Clause)

**4.2  52.211-12  LIQUIDATED DAMAGES--CONSTRUCTION  (SEPT 2000)**

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $1,000 for each calendar day of delay until the work is completed or accepted.

(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

(End of Clause)

**4.3  52.219-28  POST-AWARD SMALL BUSINESS PROGRAM REPRESENTATION (JUNE 2007)**

(a) Definitions. As used in this clause-

Long-term contract means a contract of more than five years in duration, including options. However, the term does not include contracts that exceed five years in duration because the period of performance has been extended for a cumulative period not to exceed six months under the clause at 52.217-8, Option to Extend Services, or other appropriate authority.

Small business concern means a concern, including its affiliates that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and the size standard in paragraph (c) of this clause.

(b) If the Contractor represented that it was a small business concern prior to award of this contract, the Contractor shall rerepresent its size status according to paragraph (e) of this clause or, if applicable, paragraph (g) of this clause, upon the occurrence of any of the following:

(1) Within 30 days after execution of a novation agreement or within 30 days after modification of the contract to include this clause, if the novation agreement was executed prior to inclusion of this clause in the contract.

(2) Within 30 days after a merger or acquisition that does not require a novation or within 30 days after modification of the contract to include this clause, if the merger or acquisition occurred prior to inclusion of this clause in the contract.

(3) For long-term contracts-

(i) Within 60 to 120 days prior to the end of the fifth year of the contract; and

(ii) Within 60 to 120 days prior to the exercise date specified in the contract for any option thereafter.

(c) The Contractor shall re-represent its size status in accordance with the size standard in effect at the time of this re-representation that corresponds to the North American Industry Classification System (NAICS) code assigned to this contract. The small business size standard corresponding to this NAICS code can be found at http://www.sba.gov/services/contractingopportunities/sizestandardstopics/.

(d) The small business size standard for a Contractor providing a product which it does not manufacture itself, for a contract other than a construction or service contract, is 500 employees.

(e) Except as provided in paragraph (g) of this clause, the Contractor shall make the re-representation required by paragraph (b) of this clause by validating or updating all its representations in the Online Representations and Certifications Application and its data in the Central Contractor Registration, as necessary, to ensure they reflect current status.  The Contractor shall notify the contracting office by e-mail, or otherwise in writing, that the data have been validated or updated, and provide the date of the validation or update.

(f) If the Contractor represented that it was other than a small business concern prior to award of this contract, the Contractor may, but is not required to, take the actions required by paragraphs (e) or (g) of this clause.

(g) If the Contractor does not have representations and certifications in ORCA, or does not have a representation in ORCA for the NAICS code applicable to this contract, the Contractor is required to complete the following re-representation and submit it to the contracting office, along with the contract number and the date on which the re-representation was completed:

The Contractor represents that it [ ] is, [ ] is not a small business concern under NAICS Code assigned to contract number .

[Contractor to sign and date and insert authorized signer's name and title].

_____(sign) _____(date)_____(name and title)
(End of Clause)

28

## 4.4 52.222-39 NOTIFICATION OF EMPLOYEE RIGHTS CONCERNING PAYMENT OF UNION DUES OR FEES (DEC 2004)

(a) Definition. As used in this clause--

"United States" means the 50 States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, and Wake Island.

(b) Except as provided in paragraph (e) of this clause, during the term of this contract, the Contractor shall post a notice, in the form of a poster, informing employees of their rights concerning union membership and payment of union dues and fees, in conspicuous places in and about all its plants and offices, including all places where notices to employees are customarily posted. The notice shall include the following information (except that the information pertaining to National Labor Relations Board shall not be included in notices posted in the plants or offices of carriers subject to the Railway Labor Act, as amended (45 U.S.C. 151-188)).

Notice to Employees

Under Federal law, employees cannot be required to join a union or maintain membership in a union in order to retain their jobs. Under certain conditions, the law permits a union and an employer to enter into a union-security agreement requiring employees to pay uniform periodic dues and initiation fees. However, employees who are not union members can object to the use of their payments for certain purposes and can only be required to pay their share of union costs relating to collective bargaining, contract administration, and grievance adjustment.

If you do not want to pay that portion of dues or fees used to support activities not related to collective bargaining, contract administration, or grievance adjustment, you are entitled to an appropriate reduction in your payment. If you believe that you have been required to pay dues or fees used in part to support activities not related to collective bargaining, contract administration, or grievance adjustment, you may be entitled to a refund and to an appropriate reduction in future payments.

For further information concerning your rights, you may wish to contact the National Labor Relations Board (NLRB) either at one of its Regional offices or at the following address or toll free number:

National Labor Relations Board
Division of Information
1099 14th Street, N.W.
Washington, DC 20570
1-866-667-6572
1-866-316-6572 (TTY)

To locate the nearest NLRB office, see NLRB's website at http://www.nlrb.gov.

(c) The Contractor shall comply with all provisions of Executive Order 13201 of February 17, 2001, and related implementing regulations at 29 CFR Part 470, and orders of the Secretary of Labor.

(d) In the event that the Contractor does not comply with any of the requirements set forth in paragraphs (b), (c), or (g), the Secretary may direct that this contract be cancelled, terminated, or suspended in whole or in part, and declare the Contractor ineligible for further Government contracts in accordance with procedures at 29 CFR Part 470, Subpart B--Compliance Evaluations, Complaint Investigations and Enforcement Procedures. Such other sanctions or remedies may be imposed as are provided by 29 CFR Part 470, which implements Executive Order 13201, or as are otherwise provided by law.

(e) The requirement to post the employee notice in paragraph (b) does not apply to--

(1) Contractors and subcontractors that employ fewer than 15 persons;

(2) Contractor establishments or construction work sites where no union has been formally recognized by the Contractor or certified as the exclusive bargaining representative of the Contractor's employees;

(3) Contractor establishments or construction work sites located in a jurisdiction named in the definition of the United States in which the law of that jurisdiction forbids enforcement of union-security agreements;

(4) Contractor facilities where upon the written request of the Contractor, the Department of Labor Deputy Assistant Secretary for Labor-Management Programs has waived the posting requirements with respect to any of the Contractor's facilities if the Deputy Assistant Secretary finds that the Contractor has demonstrated that--

(i) The facility is in all respects separate and distinct from activities of the Contractor related to the performance of a contract; and

(ii) Such a waiver will not interfere with or impede the effectuation of the Executive order; or

(5) Work outside the United States that does not involve the recruitment or employment of workers within the United States.

(f) The Department of Labor publishes the official employee notice in two variations; one for contractors covered by the Railway Labor Act and a second for all other contractors. The Contractor shall--

(1) Obtain the required employee notice poster from the Division of Interpretations and Standards, Office of Labor-Management Standards, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5605, Washington, DC 20210, or from any field office of the Department's Office of Labor-Management Standards or Office of Federal Contract Compliance Programs;

(2) Download a copy of the poster from the Office of Labor- Management Standards website at http://www.olms.dol.gov; or

(3) Reproduce and use exact duplicate copies of the Department of Labor's official poster.

(g) The Contractor shall include the substance of this clause in every subcontract or purchase order that exceeds the simplified acquisition threshold, entered into in connection with this contract, unless exempted by the Department of Labor Deputy Assistant Secretary for Labor-Management Programs on account of special circumstances in the national interest under authority of 29 CFR 470.3(c). For indefinite quantity subcontracts, the Contractor shall include the substance of this clause if the value of orders in any calendar year of the subcontract is expected to exceed the simplified acquisition threshold. Pursuant to 29 CFR Part 470, Subpart B--Compliance Evaluations, Complaint Investigations and Enforcement Procedures, the Secretary of Labor may direct the Contractor to take such action in the enforcement of these regulations, including the imposition of sanctions for noncompliance with respect to any such subcontract or purchase order. If the Contractor becomes involved in litigation with a subcontractor or vendor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States, through the Secretary of Labor, to enter into such litigation to protect the interests of the United States.

(End of Clause)

## 4.5  52.225-9  BUY AMERICAN ACT--CONSTRUCTION MATERIALS (JAN 2005)

(a) Definitions. As used in this clause--

"Component" means any article, material, or supply incorporated directly into construction material.

"Construction material" means an article, material, or supply brought to the construction site by the Contractor or a subcontractor for incorporation into the building or work. The term also includes an item brought to the site preassembled from articles, materials, or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, that are discrete systems incorporated into a public building or work and that are produced as complete systems, are evaluated as a single and distinct construction material regardless of when or how the individual parts or components of those systems are delivered to the construction site. Materials purchased directly by the Government are supplies, not construction material.

"Cost of components" means--

(1) For components purchased by the Contractor, the acquisition cost, including transportation costs to the place of incorporation into the end product (whether or not such costs are paid to a domestic firm), and any applicable duty (whether or not a duty-free entry certificate is issued); or

(2) For components manufactured by the Contractor, all costs associated with the manufacture of the component, including transportation costs as described in paragraph (1) of this definition, plus allocable overhead costs, but excluding profit. Cost of components does not include any costs associated with the manufacture of the construction material.

"Domestic construction material" means--

(1) An unmanufactured construction material mined or produced in the United States; or

(2) A construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of the same class or kind for which nonavailability determinations have been made are treated as domestic.

"Foreign construction material" means a construction material other than a domestic construction material.

"United States" means the 50 States, the District of Columbia, and outlying areas.

(b) Domestic preference.

(1) This clause implements the Buy American Act (41 U.S.C. 10a-10d) by providing a preference for domestic construction material. The Contractor shall use only domestic construction material in performing this contract, except as provided in paragraphs (b)(2) and (b)(3) of this clause.

(2) This requirement does not apply to the construction material or components listed by the Government as follows:

_____NONE_____

_____

_____

(3) The Contracting Officer may add other foreign construction material to the list in paragraph (b)(2) of this clause if the Government determines that--

(i) The cost of domestic construction material would be unreasonable. The cost of a particular domestic construction material subject to the requirements of the Buy American Act is unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent;

(ii) The application of the restriction of the Buy American Act to a particular construction material would be impracticable or inconsistent with the public interest; or

(iii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities of a satisfactory quality.

(c) Request for determination of inapplicability of the Buy American Act.

(1)(i) Any Contractor request to use foreign construction material in accordance with paragraph (b)(3) of this clause shall include adequate information for Government evaluation of the request, including--

(A) A description of the foreign and domestic construction materials;

(B) Unit of measure;

(C) Quantity;

(D) Price;

(E) Time of delivery or availability;

(F) Location of the construction project;

(G) Name and address of the proposed supplier; and

(H) A detailed justification of the reason for use of foreign construction materials cited in accordance with paragraph (b)(3) of this clause.

(ii) A request based on unreasonable cost shall include a reasonable survey of the market and a completed price comparison table in the format in paragraph (d) of this clause.

(iii) The price of construction material shall include all delivery costs to the construction site and any applicable duty (whether or not a duty-free certificate may be issued).

(iv) Any Contractor request for a determination submitted after contract award shall explain why the Contractor could not reasonably foresee the need for such determination and could not have requested the determination before contract award. If the Contractor does not submit a satisfactory explanation, the Contracting Officer need not make a determination.

(2) If the Government determines after contract award that an exception to the Buy American Act applies and the Contracting Officer and the Contractor negotiate adequate consideration, the Contracting Officer will modify the contract to allow use of the foreign construction material. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration is not less than the differential established in paragraph (b)(3)(i) of this clause.

(3) Unless the Government determines that an exception to the Buy American Act applies, use of foreign construction material is noncompliant with the Buy American Act.

(d) Data. To permit evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the Contractor shall include the following information and any applicable supporting data based on the survey of suppliers:

FOREIGN AND DOMESTIC CONSTRUCTION MATERIALS PRICE COMPARISON

| Construction material description | Unit of Measure | Unit of Quantity | Price (dollars)* |
|---|---|---|---|
| Item 1: | | | |
| Foreign construction material | .............. | ............ | ............. |
| Domestic construction material | .............. | ............ | ............. |

VA-101-09-RP-0100                 Fort Jackson          Phase 1B Development

Item 2:

| Foreign construction material | .............. | ............ | ............. |
| Domestic construction material | .............. | ............ | ............. |

-----------------------------------------------------------------------------------------------------------------------

[List name, address, telephone number, and contact for suppliers surveyed Attach copy of response; if oral, attach summary.]

[Include other applicable supporting information.]

[*Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued).]

(End of Clause)

## 4.6  52.228-5  INSURANCE - WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(b) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective--

(1) For such period as the laws of the State in which this contract is to be performed prescribe; or

(2) Until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(c) The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that require work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract. The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the Contracting Officer upon request.

(End of Clause)

## 4.7  SUPPLEMENTAL INSURANCE REQUIREMENTS

In accordance with FAR 28.307-2 and FAR 52.228-5, the following minimum coverage shall apply to this contract:

(a)  Workers' compensation and employers liability:  Contractors are required to comply with applicable Federal and State workers' compensation and occupational disease statutes.  If occupational diseases are not compensable under those statutes, they shall be covered under the employer's liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage.  Employer's liability coverage of at least $100,000 is required, except in States with

exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers.

(b)  General Liability: $500,000.00 per occurrences.

(c)  Automobile liability: $200,000.00 per person; $500,000.00 per occurrence and $20,000.00 property damage.

(d)  The successful bidder must present to the Contracting Officer, prior to award, evidence of general liability insurance without any exclusionary clauses for asbestos that would void the general liability coverage.

(End of Clause)

### 4.8  VAAR 852.203-70 COMMERCIAL ADVERTISING (JAN 2008)

The bidder or offeror agrees that if a contract is awarded to him/her, as a result of this solicitation, he/she will not advertise the award of the contract in his/her commercial advertising in such a manner as to state or imply that the Department of Veterans Affairs endorses a product, project or commercial line of endeavor.

(End of Clause)

### 4.9  VAAR 852.203-71  DISPLAY OF DEPARTMENT OF VETERAN AFFAIRS HOTLINE POSTER (DEC 1992)

(a) Except as provided in paragraph (c) below, the Contractor shall display prominently, in common work areas within business segments performing work under VA contracts, Department of Veterans Affairs Hotline posters prepared by the VA Office of Inspector General.

(b) Department of Veterans Affairs Hotline posters may be obtained from the VA Office of Inspector General (53E), P.O. Box 34647, Washington, DC 20043-4647.

(c) The Contractor need not comply with paragraph (a) above if the Contractor has established a mechanism, such as a hotline, by which employees may report suspected instances of improper conduct, and instructions that encourage employees to make such reports.

(End of Clause)

### 4.10  VAAR 852.211-73  BRAND NAME OR EQUAL (JAN 2008)

(Note: as used in this clause, the term "brand name" includes identification of products by make and model.)

(a) If items called for by this invitation for bids have been identified in the schedule by a "brand name or equal" description, such identification is intended to be descriptive, but not restrictive, and is to indicate the quality and characteristics of products that will be satisfactory. Bids offering "equal" products (including products of the brand name manufacturer other than the one described by brand name) will be considered for award if such products are clearly identified in the bids and are determined by the Government to meet fully the salient characteristics requirements listed in the invitation.

(b) Unless the bidder clearly indicates in the bid that the bidder is offering an "equal" product, the bid shall be considered as offering a brand name product referenced in the invitation for bids.

(c)(1) If the bidder proposes to furnish an "equal" product, the brand name, if any, of the product to be furnished shall be inserted in the space provided in the invitation for bids, or such product shall be otherwise clearly identified in the bid. The evaluation of bids and the determination as to equality of the product offered shall be the responsibility of the Government and will be based on information furnished by the bidder or identified in his/her bid as well as other information reasonably available to the purchasing activity. CAUTION TO BIDDERS. The purchasing activity is not responsible for locating or securing any information that is not identified in the bid and reasonably available to the purchasing activity. Accordingly, to insure that sufficient information is available, the bidder must furnish as a part of his/her bid all descriptive material (such as cuts, illustrations, drawings or other information) necessary for the purchasing activity to:

(i) Determine whether the product offered meets the salient characteristics requirement of the Invitation for Bids, and

(ii) Establish exactly what the bidder proposes to furnish and what the Government would be binding itself to purchase by making an award. The information furnished may include specific references to information previously furnished or to information otherwise available to the purchasing activity.

(2) If the bidder proposes to modify a product so as to make it conform to the requirements of the Invitation for Bids, he/she shall:

(i) Include in his/her bid a clear description of such proposed modifications, and

(ii) Clearly mark any descriptive material to show the proposed modifications.

(3) Modifications proposed after bid opening to make a product conform to a brand name product referenced in the Invitation for Bids will not be considered.

(End of Clause)

## 4.11  VAAR 852.211-74  LIQUIDATED DAMAGES (JAN 2008)

If any unit of the work contracted for is accepted in advance of the whole, the rate of liquidated damages assessed will be in the ratio that the value of the unaccepted work bears to the total amount of the contract. If a separate price for unaccepted work has not been stated in the contractor's bid, determination of the value thereof will be made from schedules of costs furnished by the contractor and approved by the contracting officer, as specified elsewhere in the contract.

(End of Clause)

## 4.12  VAAR 852.228-70  BOND PREMIUM ADJUSTMENT (JAN 2008)

When net changes in original contract price affect the premium of a Corporate Surety Bond by $5 or more, the Government, in determining the basis for final settlement, will provide for bond premium adjustment computed at the rate shown in the bond.

(End of Clause)

### 4.13  VAAR 852.236-71  SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (JUL 2002)

The clause entitled "Specifications and Drawings for Construction" in FAR 52.236-21 is supplemented as follows:

(a) The contracting officer's interpretation of the drawings and specifications will be final, subject to the disputes clause.

(b) Large scale drawings supersede small scale drawings.

(c) Dimensions govern in all cases. Scaling of drawings may be done only for general location and general size of items.

(d) Dimensions shown of existing work and all dimensions required for work that is to connect with existing work shall be verified by the contractor by actual measurement of the existing work. Any work at variance with that specified or shown in the drawings shall not be performed by the contractor until approved in writing by the contracting officer.
(End of Clause)

### 4.14  VAAR 852.236-74  INSPECTION OF CONSTRUCTION (JUL 2002)

The clause entitled "Inspection of Construction" in FAR 52.246-12 is supplemented as follows:

(a) Inspection of materials and articles furnished under this contract will be made at the site by the resident engineer, unless otherwise provided for in the specifications.

(b) Final inspection will not be made until the contract work is ready for beneficial use or occupancy. The contractor shall notify the contracting officer, through the resident engineer, fifteen (15) days prior to the date on which the work will be ready for final inspection.
(End of Clause)

### 4.15  VAAR 852.236-76  CORRESPONDENCE (APR 1984)

All correspondence relative to this contract shall bear Specification Number, Project Number, Department of Veterans Affairs Contract Number, title of project and name of facility.
(End of Clause)

### 4.16 VAAR 852.236-77 REFERENCE TO "STANDARDS" (JUL 2002)

Any materials, equipment, or workmanship specified by references to number, symbol, or title of any specific Federal, Industry or Government Agency Standard Specification shall comply with all applicable provisions of such standard specifications, except as limited to type, class or grade, or modified in contract specifications. Reference to "Standards" referred to in the contract specifications, except as modified, shall have full force and effect as though printed in detail in specifications.
(End of Clause)

## 4.17  VAAR 852.236-78 GOVERNMENT SUPERVISION (APR 1984)

(a) The work will be under the direction of the Department of Veterans Affairs contracting officer, who may designate another VA employee to act as resident engineer at the construction site.

(b) Except as provided below, the resident engineer's directions will not conflict with or change contract requirements.

(c) Within the limits of any specific authority delegated by the contracting officer, the resident engineer may, by written direction, make changes in the work. The contractor shall be advised of the extent of such authority prior to execution of any work under the contract.

(End of Clause)

## 4.18  VAAR 852.236-79 DAILY REPORT OF WORKERS AND MATERIAL (APR 1984)

The contractor shall furnish to the resident engineer each day a consolidated report for the preceding work day in which is shown the number of laborers, mechanics, foremen/forewomen and pieces of heavy equipment used or employed by the contractor and subcontractors. The report shall bear the name of the firm, the branch of work which they perform such as concrete, plastering, masonry, plumbing, sheet metal work, etc. The report shall give a breakdown of employees by crafts, location where employed, and work performed. The report shall also list materials delivered to the site on the date covered by the report.

(End of Clause)

## 4.19  VAAR 852.236-80 SUBCONTRACTS AND WORK COORDINATION (APR 1984) ALTERNATE I (JUL 2002)

(a) Nothing contained in this contract shall be construed as creating any contractual relationship between any subcontractor and the Government. Divisions or sections of specifications are not intended to control the contractor in dividing work among subcontractors, or to limit work performed by any trade.

(b) The contractor shall be responsible to the Government for acts and omissions of his/her own employees, and subcontractors and their employees.  The contractor shall also be responsible for coordination of the work of the trades, subcontractors, and material suppliers.  The contractor shall, in advance of the work, prepare coordination drawings showing the location of openings through slabs, the pipe sleeves and hanger inserts, as well as the location and elevation of utility lines, including, but not limited to, conveyor systems, pneumatic tubes, ducts, and conduits and pipes 2 inches and larger in diameter.  These drawings, including plans, elevations, and sections as appropriate shall clearly show the manner in which the utilities fit into the available space and relate to each other and to existing building elements.  Drawings shall be of appropriate scale to satisfy the previously stated purposes, but not smaller than 3/8-inch scale.  Drawings may be composite (with distinctive colors for the various trades) or may be separate but fully coordinated drawings (such as sepias or photographic paper reproducibles) of the same scale.  Separate drawings shall depict identical building areas or sections and shall be capable of being overlaid in any combination. The submitted drawings for a given area of the project shall show the work of all trades which will be involved in that particular area. Six complete composite drawings or six complete sets of separate reproducible drawings shall be received by the Government not less than 20 days prior to the

scheduled start of the work in the area illustrated by the drawings, for the purpose of showing the contractor's planned methods of installation. The objectives of such drawings are to promote carefully planned work sequence and proper trade coordination, in order to assure the expeditious solutions of problems and the installation of lines and equipment as contemplated by the contract documents while avoiding or minimizing additional costs to the contractor and to the Government. In the event the contractor, in coordinating the various installations and in planning the method of installation, finds a conflict in location or elevation of any of the utilities with themselves, with structural items or with other construction items, he/she shall bring this conflict to the attention of the contracting officer immediately. In doing so, the contractor shall explain the proposedmethod of solving the problem or shall request instructions as to how toproceed if adjustments beyond those of usual trades coordination are necessary. Utilities installation work will not proceed in any area prior to the submission and completion of the Government review of the coordinated drawings for that area, nor in any area in which conflicts are disclosed by the coordination drawings until the conflicts have been corrected to the satisfaction of the contracting officer. It is the responsibility of the contractor to submit the required drawings in a timely manner consistent with the requirements to complete the work covered by this contract within the prescribed contract time.

   (c) The Government or its representatives will not undertake to settle any differences between the contractor and subcontractors or between subcontractors.

   (d) The Government reserves the right to refuse to permit employment on the work or require dismissal from the work of any subcontractor who, by reason of previous unsatisfactory work on Department of Veterans Affairs projects or for any other reason, is considered by the contracting officer to be incompetent or otherwise objectionable.

(End of Clause)

## 4.20  VAAR 852.236-83 PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (INCLUDING NAS) (JUL 2002)

   The clause entitled "Payments under Fixed-Price Construction Contracts" in FAR 52.232-5 is implemented as follows:

 (a) Retainage:

  (1) The contracting officer may retain funds:

   (i) Where the performance under the contract has been determined to be deficient or the contractor has performed in an unsatisfactory manner in the past; or

   (ii) As the contract nears completion, to ensure that deficiencies will be corrected and that completion is timely.

   (2) Examples of deficient performance justifying a retention of funds include, but are not restricted to, the following:

   (i)  Unsatisfactory progress as determined by the contracting officer;

   (ii) Failure either to meet schedules in Section Network Analysis System (NAS), or to process

the Interim Arrow Diagram/Complete Project Arrow Diagram;

   (iii) Failure to present submittals in a timely manner; or

   (iv) Failure to comply in good faith with approved subcontracting plans, certifications or contract requirements.

   (3) Any level of retention shall not exceed 10 percent either where there is determined to be unsatisfactory performance, or when the retainage is to ensure satisfactory completion. Retained amounts shall be paid promptly upon completion of all contract requirements, but nothing contained in this subparagraph shall be construed as limiting the contracting officer's right to withhold funds under other provisions of the contract or in accordance with the general law and regulations regarding the administration of Government contracts.

   (b) The contractor shall submit a schedule of costs in accordance with the requirements of Section Network Analysis System (NAS) to the contracting officer for approval within 90 calendar days after date of receipt of notice to proceed. The approved cost schedule will be one of the bases for determining progress payments to the contractor for work completed.

   (1) Costs as shown on this schedule must be true costs and, should the resident engineer so desire, he/she may require the contractor to submit his/her original estimate sheets or other information to substantiate the detailed makeup of the cost schedule.

   (2) The total costs of all activities shall equal the contract price.

   (3) Insurance and similar items shall be prorated and included in each activity cost of the critical path method (CPM) network.

   (4) The CPM network shall include a separate cost loaded activity for adjusting and testing of the systems listed below. The percentages listed below will be used to determine the cost of adjust and test activities and identify, for payment purposes, the value of the work to adjust, correct and test systems after the material has been installed.

   (5) Payment for adjust and test activities will be made only after the contractor has demonstrated that each of the systems is substantially complete and operates as required by the contract.

VALUE OF ADJUSTING, CORRECTING, AND TESTING SYSTEM

| System | Percent |
|---|---|
| Pneumatic tube system......................................... | 10 |
| Incinerators (medical waste and trash)....................... | 5 |
| Sewage treatment plant equipment............................. | 5 |
| Water treatment plant equipment.............................. | 5 |
| Washers (dish, cage, glass, etc.)............................ | 5 |
| Sterilizing equipment........................................ | 5 |
| Water distilling equipment................................... | 5 |
| Prefab temperature rooms (cold, constant temperature)........ | 5 |
| Entire air-conditioning system (Specified under 600 Sections) | 5 |
| Entire boiler plant system (specified under 700 Sections) .... | 5 |
| General supply conveyors ..................................... | 10 |
| Food service conveyors ....................................... | 10 |
| Pneumatic soiled linen and trash system ..................... | 10 |
| Elevators and dumbwaiters .................................... | 10 |
| Materials transport system .................................. | 10 |
| Engine-generator system ...................................... | 5 |
| Primary switchgear ........................................... | 5 |
| Secondary switchgear ......................................... | 5 |
| Fire alarm system ............................................ | 5 |
| Nurse call system ............................................ | 5 |
| Intercom system .............................................. | 5 |
| Radio system ................................................. | 5 |
| TV (entertainment) system .................................... | 5 |

(c) In addition to this cost schedule, the contractor shall submit such unit costs as may be specifically requested. The unit costs shall be those used by the contractor in preparing his/her bid and will not be binding as pertaining to any contract changes.

(d) The contracting officer will consider for monthly progress payments material and/or equipment procured by the contractor and stored on the construction site as space is available, or at a local approved location off the site, under such terms and conditions as such officer approves, including but not limited to the following:

(1) The material or equipment is in accordance with the contract requirements and/or approved samples and shop drawings.

(2) Only those materials and/or equipment as are approved by the resident engineer for storage will be included.

(3) Such materials and/or equipment will be protected against weather, theft and other hazards and will not be subjected to deterioration.

(5) All of the other terms, provisions, conditions and covenants contained in the contract shall be and remain in full force and effect as therein provided.

(6) A supplemental agreement will be executed between the Government and the contractor with the consent of the contractor's surety for off-site storage.

(e) The contractor, prior to receiving a progress or final payment under this contract, shall submit to the contracting officer a certification that the contractor has made payment from proceeds of prior payments, or that timely payment will be made from the proceeds of the progress or final payment then due, to subcontractors and suppliers in accordance with the contractual arrangements with them.

(f) The Government reserves the right to withhold payment until samples, shop drawings, engineer's certificates, additional bonds, payrolls, weekly statements of compliance, proof of title, nondiscrimination compliance reports, or any other things required by this contract, have been submitted to the satisfaction of the contracting officer.

(End of Clause)

## 4.21  VAAR 852.236-85 SUPPLEMENTARY LABOR STANDARDS PROVISIONS (APR 1984)

(a) The wage determination decision of the Secretary of Labor is set forth in section GR, General Requirements, of this contract. It is the result of a study of wage conditions in the locality and establishes the minimum hourly rates of wages and fringe benefits for the described classes of labor in accordance with applicable law. No increase in the contract price will be allowed or authorized because of payment of wage rates in excess of those listed.

(b) The contractor shall submit the required copies of payrolls to the contracting officer through the resident engineer or engineer officer, when acting in that capacity. Department of Labor Form WH- 347, Payroll, available from the Superintendent of Documents, Government Printing Office,

Washington, DC 20402, may be used for this purpose. If, however, the contractor or subcontractor elects to use an individually composed payroll form, it shall contain the same information shown on Form WH-347, and in addition be accompanied by Department of Labor Form WH-348, Statement of Compliance, or any other form containing the exact wording of this form.

(End of Clause)

## 4.22  VAAR 852.236-86 WORKER'S COMPENSATION (JAN 2008)

Public Law 107-217 (40 U.S.C. 3172) authorizes the constituted authority of States to apply their workers compensation laws to all lands and premises owned or held by the United States.

(End of Clause)

## 4.23  VAAR 852.236-87  ACCIDENT PREVENTION (SEP 1993)

The Resident Engineer on all assigned construction projects, or other Department of Veterans Affairs employee if designated in writing by the Contracting Officer, shall serve as Safety Officer and as such has authority, on behalf of the Contracting Officer, to monitor and enforce Contractor compliance with FAR 52.236-13, Accident Prevention. However, only the Contracting Officer may issue an order to stop all or part of the work while requiring satisfactory or corrective action to be taken by the Contractor.

(End of Clause)

## 4.23  VAAR 852.236-88   CONTRACT CHANGES--SUPPLEMENT (JUL 2002)

(a) Paragraphs (a)(1) through (a)(4) apply to proposed contract changes costing over $500,000.

(1) When requested by the contracting officer, the contractor shall submit proposals for changes in work to the resident engineer. Proposals, to be submitted as expeditiously as possible but within 30 calendar days after receipt of request, shall be in legible form, original and two copies, with an itemized breakdown that will include material, quantities, unit prices, labor costs (separated into trades), construction equipment, etc. (Labor costs are to be identified with specific material placed or operation performed.) The contractor must obtain and furnish with a proposal an itemized breakdown as described above, signed by each subcontractor participating in the change regardless of tier. When certified cost or pricing data are required under FAR Subpart 15.403, the cost or pricing data shall be submitted in accordance with FAR 15.403-5.

(2) When the necessity to proceed with a change does not allow sufficient time to negotiate a modification or because of failure to reach an agreement, the contracting officer may issue a change order instructing the contractor to proceed on the basis of a tentative price based on the best estimate available at the time, with the firm price to be determined later. Furthermore, when the change order is issued, the contractor shall submit a proposal, which includes the information required by paragraph (a)(1), for cost of changes in work within 30 calendar days.

(3) The contracting officer will consider issuing a settlement by determination to the contract if the contractor's proposal required by paragraphs (a)(1) or (a)(2) of this clause is not received within 30 calendar days or if agreement has not been reached.

(4) Bond premium adjustment, consequent upon changes ordered, will be made as elsewhere specified at the time of final settlement under the contract and will not be included in the individual

change.

(b) Paragraphs (b)(1) through (b)(11) apply to proposed contract changes costing $500,000 or less:

(1) When requested by the contracting officer, the contractor shall submit proposals for changes in work to the resident engineer. Proposals, to be submitted as expeditiously as possible but within 30 calendar days after receipt of request, shall be in legible form, original and two copies, with an itemized breakdown that will include material, quantities, unit prices, labor costs (separated into trades), construction equipment, etc. (Labor costs are to be identified with specific material placed or operation performed.) The contractor must obtain and furnish with a proposal an itemized breakdown as described above, signed by each subcontractor participating in the change regardless of tier. When certified cost or pricing data or information other than cost or pricing data are required under FAR 15.403, the data shall be submitted in accordance with FAR 15.403-5. No itemized breakdown will be required for proposals amounting to less than $1,000.

(2) When the necessity to proceed with a change does not allow sufficient time to negotiate a modification or because of failure to reach an agreement, the contracting officer may issue a change order instructing the contractor to proceed on the basis of a tentative price based on the best estimate available at the time, with the firm price to be determined later. Furthermore, when the change order is issued, the contractor shall submit within 30 calendar days, a proposal that includes the information required by paragraph (b)(1) for the cost of the changes in work.

(3) The contracting officer will consider issuing a settlement by determination to the contract if the contractor's proposal required by paragraphs (b)(1) or (b)(2) of this clause is not received within 30 calendar days, or if agreement has not been reached.

(4) Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based on the value of labor, material, and use of construction equipment required to accomplish the change. As the value of the change increases, a declining scale will be used in negotiating the percentage of overhead and profit. Allowable percentages on changes will not exceed the following: 10 percent overhead and 10 percent profit on the first $20,000; 7-1/2 percent overhead and 7-1/2 percent profit on the next $30,000; 5 percent overhead and 5 percent profit on balance over $50,000. Profit shall be computed by multiplying the profit percentage by the sum of the direct costs and computed overhead costs.

(5) The prime contractor's or upper-tier subcontractor's fee on work performed by lower-tier subcontractors will be based on the net increased cost to the prime contractor or upper-tier subcontractor, as applicable. Allowable fee on changes will not exceed the following: 10 percent fee on the first $20,000; 7-1/2 percent fee on the next $30,000; and 5 percent fee on balance over $50,000.

(6) Not more than four percentages, none of which exceed the percentages shown above, will be allowed regardless of the number of tiers of subcontractors.

(7) Where the contractor's or subcontractor's portion of a change involves credit items, such items must be deducted prior to adding overhead and profit for the party performing the work. The contractor's fee is limited to the net increase to contractor of subcontractors' portions cost computed in accordance herewith.

(8) Where a change involves credit items only, a proper measure of the amount of downward adjustment in the contract price is the reasonable cost to the contractor if he/she had performed the deleted work. A reasonable allowance for overhead and profit are properly includable as part of the downward adjustment for a deductive change. The amount of such allowance is subject to negotiation.

(9) Cost of Federal Old Age Benefit (Social Security) tax and of Worker's Compensation and Public Liability insurance appertaining to changes are allowable. While no percentage will be allowed thereon for overhead or profit, prime contractor's fee will be allowed on such items in subcontractors' proposals.

(10) Overhead and contractor's fee percentages shall be considered to include insurance other than mentioned herein, field and office supervisors and assistants, security police, use of small tools, incidental job burdens, and general home office expenses and no separate allowance will be made therefore. Assistants to office supervisors include all clerical, stenographic and general office help. Incidental job burdens include, but are not necessarily limited to, office equipment and supplies, temporary toilets, telephone and conformance to OSHA requirements. Items such as, but not necessarily limited to, review and coordination, estimating and expediting relative to contract changes are associated with field and office supervision and are considered to be included in the contractor's overhead and/or fee percentage.

(11) Bond premium adjustment, consequent upon changes ordered, will be made as elsewhere specified at the time of final settlement under the contract and will not be included in the individual change.

(End of Clause)

## 4.24  VAAR 852.236-89 BUY AMERICAN ACT (JAN 2008)

(a) Reference is made to the clause entitled "Buy American Act--Construction Materials," FAR 52.225-9.

(b) Notwithstanding a bidder's right to offer identifiable foreign construction material in its bid pursuant to FAR 52.225-9, VA does not anticipate accepting an offer that includes foreign construction material.

(c) If a bidder chooses to submit a bid that includes foreign construction material, that bidder must provide a listing of the specific foreign construction material he/she intends to use and a price for said material. Bidders must include bid prices for comparable domestic construction material. If VA determines not to accept foreign construction material and no comparable domestic construction material is provided, the entire bid will be rejected.

(d) Any foreign construction material proposed after award will be rejected unless the bidder proves to VA's satisfaction: (1) it was impossible to request the exemption prior to award, and (2) said domestic construction material is no longer available, or (3) where the price has escalated so dramatically after the contract has been awarded that it would be unconscionable to require performance at that price. The determinations required by (1), (2), and (3) of this paragraph shall be made in accordance with Subpart 825.2 and FAR 25.2.

(e) By signing this bid, the bidder declares that all articles, materials and supplies for use on the project shall be domestic unless specifically set forth on the Bid Form or addendum thereto.

(End of Clause)

## 4.25  VAAR 852.236-91  SPECIAL NOTES (JUL 2002)

(a) Signing of the bid shall be deemed to be a representation by the bidder that:

(1) Bidder is a construction contractor who owns, operates, or maintains a place of business, regularly engaged in construction, alteration, or repair of buildings, structures, and communications facilities, or other engineering projects, including furnishing and installing of necessary equipment; or

(2) If newly entering into a construction activity, bidder has made all necessary arrangements for personnel, construction equipment, and required licenses to perform construction work; and

(3) Upon request, prior to award, bidder will promptly furnish to the Government a statement of facts in detail as to bidder's previous experience (including recent and current contracts), organization (including company officers), technical qualifications, financial resources and facilities available to perform the contemplated work.

(b) Unless otherwise provided in this contract, where the use of optional materials or construction is permitted, the same standard of workmanship, fabrication and installation shall be required irrespective of which option is selected. The contractor shall make any change or adjustment in connecting work or otherwise necessitated by the use of such optional material or construction, without additional cost to the Government.

(c) When approval is given for a system component having functional or physical characteristics different from those indicated or specified, it is the responsibility of the contractor to furnish and install related components with characteristics and capacities compatible with the approved substitute component as required for systems to function as noted on drawings and specifications. There shall be no additional cost to the Government.

(d) In some instances it may have been impracticable to detail all items in specifications or on drawings because of variances in manufacturers' methods of achieving specified results. In such instances the contractor will be required to furnish all labor, materials, drawings, services and connections necessary to produce systems or equipment which are completely installed, functional, and ready for operation by facility personnel in accordance with their intended use.

(e) Claims by the contractor for delay attributed to unusually severe weather must be supported by climatological data covering the period and the same period for the 10 preceding years. When the weather in question exceeds in intensity or frequency the 10-year average, the excess experienced shall be considered "unusually severe." Comparison shall be on a monthly basis. Whether or not unusually severe weather in fact delays the work will depend upon the effect of weather on the branches of work being performed during the time under consideration.

(End of Clause)

## 4.26  VAAR 852.246-74  SPECIAL WARRANTIES (JAN 2008)

The clause entitled "Warranty of Construction" in FAR 52.246-21 is supplemented as follows:

Any special warranties that may be required under the contract shall be subject to the elections set forth in the FAR clause at 52.246-21, Warranty of Construction, unless otherwise provided for in such special warranties.

(End of Clause)

## 4.27  VAAR 852.273-75 SECURITY REQUIREMENTS FOR UNCLASSIFIED INFORMATION TECHNOLOGY RESOURCES (Interim - October 2008)

(a) The contractor and their personnel shall be subject to the same Federal laws, regulations, standards and VA policies as VA personnel, regarding information and information system security. These include, but are not limited to Federal Information Security Management Act (FISMA), Appendix III of OMB Circular A-130, and guidance and standards, available from the Department of Commerce's National Institute of Standards and Technology (NIST).  This also includes the use of common security configurations available from NIST's Web site at:

http://checklists.nist.gov

(b) To ensure that appropriate security controls are in place, Contractors must follow the procedures set forth in "VA Information and Information System Security/Privacy Requirements for IT Contracts" located at the following Web site:

http://www.iprm.oit.va.gov

(End of Clause)

## 4.28  VAAR 852.273-76 ELECTRONIC INVOICE SUBMISSION (Interim - October 2008)

(a) To improve the timeliness of payments and lower overall administrative costs, VA strongly encourages contractors to submit invoices using its electronic invoicing system.  At present, electronic submission is voluntary and any nominal registration fees will be the responsibility of the contractor. VA intends to mandate electronic invoice submission, subject to completion of the federal rulemaking process.  At present, VA is using a 3rd party agent to contact contractors regarding this service.  During the voluntary period, contractors interested in registering for the electronic system should contact the VA's Financial Services Center at http://www.fsc.va.gov/einvoice.asp.

## 4.29  MANDATORY WRITTEN DISCLOSURES

Mandatory written disclosures required by FAR clause 52.203-13 to the Department of Veterans Affairs, Office of Inspector General (OIG) must be made electronically through the VA OIG Hotline at http://www.va.gov/oig/contacts/hotline.asp and clicking on "FAR clause 52.203-13 Reporting." If you experience difficulty accessing the website, call the Hotline at 1-800-488-8244 for further instructions.

VA-101-09-RP-0100                Fort Jackson            Phase 1B Development

**4.30  52.252-2  CLAUSES INCORPORATED BY REFERENCE  (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html
http://www.va.gov/oamm/oa/ars/policyreg/vaar/index.cfm

| | | |
|---|---|---|
| 52.202-1 | DEFINITIONS | JUL 2004 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | APR 1984 |
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | SEP 2006 |
| 52.203-7 | ANTI-KICKBACK PROCEDURES | JUL 1995 |
| 52.203-8 | CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY | JAN 1997 |
| 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | JAN 1997 |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | SEP 2007 |
| 52.203-13 | CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT | DEC 2007 |
| 52.204-4 | PRINTED OR COPIED DOUBLE-SIDED ON RECYCLED PAPER | AUG 2000 |
| 52.204-7 | CENTRAL CONTRACTOR REGISTRATION | APR 2008 |
| 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | SEP 2006 |
| 52.211-6 | BRAND NAME OR EQUAL | AUG 1999 |
| 52.215-2 | AUDIT AND RECORDS--NEGOTIATION | JUN 1999 |
| 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS | MAY 2004 |
| 52.219-25 | SMALL DISADVANTAGED BUSINESS PARTICIPATION PROGRAM--DISADVANTAGED STATUS AND REPORTING | APR 2008 |
| 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES | FEB 1997 |
| 52.222-3 | CONVICT LABOR | JUN 2003 |
| 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT-OVERTIME COMPENSATION | JUL 2005 |
| 52.222-5 | DAVIS-BACON ACT-SECONDARY SITE OF THE WORK | JUL 2005 |
| 52.222-6 | DAVIS-BACON ACT | JUL 2005 |
| 52.222-7 | WITHHOLDING OF FUNDS | FEB 1988 |
| 52.222-8 | PAYROLLS AND BASIC RECORDS | FEB 1988 |
| 52.222-9 | APPRENTICES AND TRAINEES | JUL 2005 |
| 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS | FEB 1988 |
| 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) | JUL 2005 |
| 52.222-12 | CONTRACT TERMINATION - DEBARMENT | FEB 1988 |
| 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS | FEB 1988 |

| | | |
|---|---|---|
| 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS | FEB 1988 |
| 52.222-15 | CERTIFICATION OF ELIGIBILITY | FEB 1988 |
| 52.222-21 | PROHIBITION OF SEGREGATED FACILITIES | FEB 1999 |
| 52.222-26 | EQUAL OPPORTUNITY | MAR 2007 |
| 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION | FEB 1999 |
| 52.222-35 | EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS | SEP 2006 |
| 52.222-36 | AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES | JUN 1998 |
| 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS | SEP 2006 |
| 52.222-50 | COMBATING TRAFFICKING IN PERSONS | FEB 2009 |
| 52.223-5 | POLLUTION PREVENTION AND RIGHT-TO-KNOW INFORMATION | AUG 2003 |
| 52.223-6 | DRUG-FREE WORKPLACE | MAY 2001 |
| 52.223-14 | TOXIC CHEMICAL RELEASE REPORTING | AUG 2003 |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | JUN 2008 |
| 52.227-1 | AUTHORIZATION AND CONSENT | DEC 2007 |
| 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT | DEC 2007 |
| 52.227-4 | PATENT INDEMNITY--CONSTRUCTION CONTRACTS | DEC 2007 |
| 52.228-2 | ADDITIONAL BOND SECURITY | OCT 1997 |
| 52.228-11 | PLEDGES OF ASSETS | FEB 1992 |
| 52.228-12 | PROSPECTIVE SUBCONTRACTOR REQUESTS FOR BONDS | OCT 1995 |
| 52.228-14 | IRREVOCABLE LETTER OF CREDIT | DEC 1999 |
| 52.228-15 | PERFORMANCE AND PAYMENT BONDS-- CONSTRUCTION | NOV 2006 |
| 52.229-3 | FEDERAL, STATE, AND LOCAL TAXES | APR 2003 |
| 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS | SEP 2002 |
| 52.232-17 | INTEREST | OCT 2008 |
| 52.232-23 | ASSIGNMENT OF CLAIMS | JAN 1986 |
| 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS | OCT 2008 |
| 52.232-34 | PAYMENT BY ELECTRONIC FUNDS TRANSFER-- OTHER THAN CENTRAL CONTRACTOR REGISTRATION | MAY 1999 |
| 52.232-38 | SUBMISSION OF ELECTRONIC FUNDS TRANSFER INFORMATION WITH OFFER | MAY 1999 |
| 52.233-1 | DISPUTES ALTERNATE I (DEC 1991) | JUL 2002 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| 52.233-4 | APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM | OCT 2004 |
| 52.236-2 | DIFFERING SITE CONDITIONS | APR 1984 |
| 52.236-3 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK | APR 1984 |
| 52.236-5 | MATERIAL AND WORKMANSHIP | APR 1984 |
| 52.236-6 | SUPERINTENDENCE BY THE CONTRACTOR | APR 1984 |

VA-101-09-RP-0100                    Fort Jackson                Phase 1B Development

| | | |
|---|---|---|
| 52.236-7 | PERMITS AND RESPONSIBILITIES | NOV 1991 |
| 52.236-8 | OTHER CONTRACTS | APR 1984 |
| 52.236-9 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS | APR 1984 |
| 52.236-10 | OPERATIONS AND STORAGE AREAS | APR 1984 |
| 52.236-11 | USE AND POSSESSION PRIOR TO COMPLETION | APR 1984 |
| 52.236-12 | CLEANING UP | APR 1984 |
| 52.236-14 | AVAILABILITY AND USE OF UTILITY SERVICES | APR 1984 |
| 52.236-17 | LAYOUT OF WORK | APR 1984 |
| 52.236-26 | PRECONSTRUCTION CONFERENCE | FEB 1995 |
| 52.242-13 | BANKRUPTCY | JUL 1995 |
| 52.242-14 | SUSPENSION OF WORK | APR 1984 |
| 52.243-4 | CHANGES | JUN 2007 |
| 52.244-5 | COMPETITION IN SUBCONTRACTING | DEC 1996 |
| 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS | FEB 2009 |
| 52.246-12 | INSPECTION OF CONSTRUCTION | AUG 1996 |
| 52.246-21 | WARRANTY OF CONSTRUCTION ALTERNATE I (APR 1984) | MAR 1994 |
| 52.248-3 | VALUE ENGINEERING--CONSTRUCTION | SEP 2006 |
| 52.249-2 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) ALTERNATE I (SEPT 1996) | MAY 2004 |
| 52.249-10 | DEFAULT (FIXED-PRICE CONSTRUCTION) | APR 1984 |
| 52.253-1 | COMPUTER GENERATED FORMS | JAN 1991 |

# EXHIBIT 3

 ORCA Banner

**Representations and certifications provided by vendors through ORCA may be supplemented by information submitted to the Government in response to a specific solicitation.**

Company Name: LW CONSTRUCTION OF CHARLESTON, LLC
DUNS: 829189864
Certification Validity:
From: 05/22/2009 03:36:23 PM (EST)
To: 05/22/2010 03:36:23 PM (EST)

By submitting this certification, I, **Louis White**, am attesting to the accuracy of the representations and certifications contained herein. I understand that I may be subject to penalties if I misrepresent **LW CONSTRUCTION OF CHARLESTON, LLC** in any of the above representations or certifications to the Government.

| Provision | |
|---|---|
| 52.203-2 | Certificate of Independent Price Determination |
| 52.203-11 | Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions |
| 52.204-3 | Taxpayer Identification |
| 52.204-5 | Women-Owned Business (Other Than Small Business) |
| 52.209-5 | Certification Regarding Responsibility Matters |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Alternate 1 & 2) |
| 52.214-14 | Place of Performance - Sealed Bidding |
| 52.215-6 | Place of Performance |
| 52.219-1 | Small Business Program Representations (Alternate 1) |
| 52.219-2 | Equal Low Bids |
| 52.219-19 | Small Business Concern Representation for the Small Business Competitiveness Demonstration Program |
| 52.219-21 | Small Business Size Representation for Targeted Industry Categories Under the Small Business Competitiveness Demonstration Program |
| 52.219-22 | Small Disadvantaged Business Status (Alternate 1) |
| 52.222-18 | Certification Regarding Knowledge of Child Labor for Listed End Products |
| 52.222-22 | Previous Contracts and Compliance Reports |
| 52.222-25 | Affirmative Action Compliance |
| 52.222-38 | Compliance with Veterans' Employment Reporting Requirements |
| 52.222-48 | Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment Certification |
| 52.222-52 | Exemption from Application of the Service Contract Act to Contracts for Certain Servicesâ€" Certification |
| 52.223-1 | Biobased Product Certification |
| 52.223-4 | Recovered Material Certification |
| 52.223-9 | Estimate of Percentage of Recovered Material Content for EPA-Designated Items (Alternate 1 only) |
| 52.223-13 | Certification of Toxic Chemical Release Reporting |
| 52.225-2 | Buy American Act Certificate |
| 52.225-4 | Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate |
| 52.225-6 | Trade Agreements Certificate |
| 52.225-18 | Place of Manufacture |

| 52.225-20 | Prohibition on Conducting Restricted Business Operations in Sudanâ€"Certification |
| 52.226-2 | Historically Black College or University and Minority Institution Representation |
| 52.227-6 | Royalty Information (Alternate 1) |
| 52.227-15 | Representation of Limited Rights Data and Restricted Computer Software |

**READ ONLY**

☒   **Vendor will provide information with specific offers to the Government.**

☒   **I certify that I have read and understand the provision.**

**52.203-11 Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions (Sept 2007)**

(a) Definitions. As used in this provisionâ€"â€œLobbying contactâ€ has the meaning provided at 2 U.S.C. 1602(8). The terms â€œagency,â€ â€œinfluencing or attempting to influence,â€ â€œofficer or employee of an agency,â€ â€œperson,â€ â€œreasonable compensation,â€ and â€œregularly employedâ€ are defined in the FAR clause of this solicitation entitled â€œLimitation on Payments to Influence Certain Federal Transactionsâ€(52.203-12).

(b) Prohibition. The prohibition and exceptions contained in the FAR clause of this solicitation entitled â€œLimitation on Payments to Influence Certain Federal Transactionsâ€ (52.203-12) are hereby incorporated by reference in this provision.

(c) Certification. The offeror, by signing its offer, hereby certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on its behalf in connection with the awarding of this contract.

(d) Disclosure. If any registrants under the Lobbying Disclosure Act of 1995 have made a lobbying contact on behalf of the offeror with respect to this contract, the offeror shall complete and submit, with its offer, OMB Standard Form LLL, Disclosure of Lobbying Activities, to provide the name of the registrants. The offeror need not report regularly employed officers or employees of the offeror to whom payments of reasonable compensation were made.

(e) Penalty. Submission of this certification and disclosure is a prerequisite for making or entering into this contract imposed by 31 U.S.C. 1352. Any person who makes an expenditure prohibited under this provision or who fails to file or amend the disclosure required to be filed or amended by this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

**(End of Provision)   Back to Top**

**READ ONLY**

☒   **Vendor will provide information with specific offers to the Government.**

☒   **I certify that I have read and understand the provision.**

**52.222-38 Compliance with Veterans' Employment Reporting Requirements (Dec 2001)**

By submission of its offer, the offeror represents that, if it is subject to the reporting requirements of 38 U.S.C. 4212 (d) (i.e., if it has any contract containing Federal Acquisition Regulation clause 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans), it has submitted the most recent VETS-100 Report required by that clause.

**(End of Provision)**  **Back to Top**

READ ONLY

☒  **Vendor will provide information with specific offers to the Government.**

☒  **I certify that I have read and understand the provision.**

**52.223-1 Biobased Product Certification (Dec 2007)**

(a) As required by the Farm Security and Rural Investment Act of 2002 and the Energy Policy Act of 2005 (7 U.S.C. 8102(c)(3)), the offeror certifies, by signing this offer, that biobased products (within categories of products listed by the United States Department of Agriculture in 7 CFR part 2902, subpart B) to be used or delivered in the performance of the contract, other than biobased products that are not purchased by the offeror as a direct result of this contract, will comply with the applicable specifications or other contractual requirements.

**(End of Provision)**  **Back to Top**

READ ONLY

☒  **Vendor will provide information with specific offers to the Government.**

☒  **I certify that I have read and understand the provision.**

**52.225-20 Prohibition on Conducting Restricted Business Operations in Sudanâ€"Certification (Jun 2008)**

(a) *Definitions.* As used in this provisionâ€"

â€œBusiness operationsâ€ means engaging in commerce in any form, including by acquiring, developing, maintaining, owning, selling, possessing, leasing, or operating equipment, facilities, personnel, products, services, personal property, real property, or any other apparatus of business or commerce.

â€œMarginalized populations of Sudanâ€ meansâ€"

(1) Adversely affected groups in regions authorized to receive assistance under section 8(c) of the Darfur Peace and Accountability Act (Pub. L. 109-344) (50 U.S.C. 1701 note); and

(2) Marginalized areas in Northern Sudan described in section 4(9) of such Act.

â€œPersonâ€ meansâ€"

(1) A natural person, corporation, company, business association, partnership, society, trust, any other nongovernmental entity, organization, or group;

(2) Any governmental entity or instrumentality of a government, including a multilateral development institution (as defined in section 1701(c)(3) of the International Financial Institutions Act (22 U.S.C. 262r(c)(3)); and

(3) Any successor, subunit, parent company or subsidiary of any entity described in paragraphs (1) or (2) of this definition.

â€œRestricted business operationsâ€ means business operations in Sudan that include power production activities, mineral extraction activities, oil-related activities, or the production of military equipment, as those terms are defined in the Sudan Accountability and Divestment Act of 2007 (Pub. L. 110-174). Restricted business operations do not include business operations that the person conducting the business can demonstrateâ€"

(1) Are conducted under contract directly and exclusively with the regional government of southern Sudan;

(2) Are conducted pursuant to specific authorization from the Office of Foreign Assets Control in the Department of the Treasury, or are expressly exempted under Federal law from the requirement to be conducted under such authorization;

(3) Consist of providing goods or services to marginalized populations of Sudan;

(4) Consist of providing goods or services to an internationally recognized peacekeeping force or humanitarian organization;

(5) Consist of providing goods or services that are used only to promote health or education; or

(6) Have been voluntarily suspended

(b) *Certification.* By submission of its offer, the offeror certifies that it does not conduct any restricted business operations in Sudan.

**(End of Provision)    Back to Top**


**READ ONLY**

☒  **Vendor will provide information with specific offers to the Government.**

☒  **I certify that I have read and understand the provision.**


**52.227-6 Royalty Information (Apr 1984)**

(a) Cost or charges for royalties. When the response to this solicitation contains costs or charges for royalties totaling more than $250, the following information shall be included in the response relating to each separate item of royalty or license fee:

(1)    Name and address of licensor.

(2)    Date of license agreement.

(3)    Patent numbers, patent application serial numbers, or other basis on which the royalty is payable.

(4)    Brief description, including any part or model numbers of each contract item or component on which the royalty is payable.

(5)    Percentage or dollar rate of royalty per unit.

(6)    Unit price of contract item.

(7)    Number of units.

(8)    Total dollar amount of royalties.

(b) Copies of current licenses. In addition, if specifically requested by the Contracting Officer before execution of the contract, the offeror shall furnish a copy of the current license agreement and an identification of applicable claims of specific patents.

**Alternate I (Apr 1984)**

Substitute the following for the introductory portion of paragraph (a) of the basic clause: When the response to this solicitation covers charges for special construction or special assembly that contain costs or charges for royalties totaling more than $250, the following information shall be included in the response relating to each separate item of royalty or license fee:

**(End of Provision)    Back to Top**

**52.203-2 Certificate of Independent Price Determination (Apr 1985)**

(a) The offeror certifies that-

(1) The prices in this offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to-

(i)  Those Prices

(ii)  The intention to submit an offer;, or

(iii) The methods or factors used to calculate the prices offered.

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

(b) Each signature on the offer is considered to be a certification by the signatory that the signatory-

(1) Is the person in the offeror's organization responsible for determining the prices being offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to paragraphs (a)(1) through (a)(3) of this provision; or

(2) (i)    Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to paragraphs (a)(1) through (a) (3) of this provision **Louis White, President; Sidney Brantley, Member**

(ii)    As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) of this provision have not participated, and will not participate, in any action contrary to paragraphs (a)(1) through (a)(3) of this provision; and

(iii)    As an agent, has not personally participated, and will not participate, in any action contrary to paragraphs (a)(1) through (a)(3) of this provision.

(c) If the offeror deletes or modifies paragraph (a)(2) of this provision, the offeror must furnish with its offer a signed statement setting forth in detail the circumstances of the disclosure.

**(End of Provision)    Back to Top**

**52.204-3 Taxpayer Identification (Oct 1998)**

(a) Definitions

"Common parent," as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

"Taxpayer Identification Number (TIN)," as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the IRS. If the resulting contract is subject to the payment reporting requirements described in Federal Acquisition Regulation (FAR) 4.904, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) Taxpayer Identification Number (TIN).

- ☒ TIN on file with CCR.

- ☒ TIN has been applied for.

- TIN is not required because:

- ☒ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States; ,

- ☒ Offeror is an agency or instrumentality of a foreign government; ,

- ☒ Offeror is an agency or instrumentality of the Federal Government.

(e) Type of organization.

- ☒ sole proprietorship;

- ☒ Partnership;

- ☒ Corporate entity (not tax-exempt);

- ☒ Corporate entity (tax-exempt);

- ☒ Government entity (Federal, State, or local);

- ☒ Foreign government;

- ☒ International organization per 26 CFR 1.6049-4;

- ☒ **Limited Liability Company**

(f) Common parent.

- ☒ Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

- ☒ Name: N/A
  TIN: **TIN not on File with ORCA**

**(End of Provision)    Back to Top**

**52.204-5 Women-Owned Business (Other Than Small Business) (May 1999)**

(a) Definition. "Women-owned business concern," as used in this provision, means a concern that is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

(b) Representation. [Complete only if the offeror is a women-owned business concern and has not represented itself as a small business concern in paragraph (b)(1) of FAR 52.219-1, Small Business Program Representations, of this solicitation.] The offeror represents that it ☒ is a women-owned business concern.

**(End of Provision)    Back to Top**

**52.209-5 Certification Regarding Responsibility Matters (Dec 2008)**

(a) (1) The Offeror certifies, to the best of its knowledge and belief, that-

    (i) The Offeror and/or any of its Principals-

        (A) Are ☒ Are not ☒ presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

        (B) Have ☒ Have not ☒ , within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, violating Federal criminal tax laws, or receiving stolen property; and

        (C)

  Are ☒ Are not ☒ presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in paragraph (a)(1)(i)(B) of this provision.

(D)   Have ☒, Have not ☒, within a three-year period preceding this offer, been notified of any delinquent Federal Taxes in an amount that exceeds $3,000 for which the liability remains unsatisfied.

   (1) Federal taxes are considered delinquent if both of the following criteria apply:

     (i) The tax liability is finally determined. The liability is finally determined if it has been assessed. A liability is not finally determined if there is a pending administrative or judicial challenge. In the case of a judicial challenge to the liability, the liability is not finally determined until all judicial appeal rights have been exhausted.

     (ii) The taxpayer is delinquent in making payment. A taxpayer is delinquent if the taxpayer has failed to pay the tax liability when full payment was due and required. A taxpayer is not delinquent in cases where enforced collection action is precluded.

   (2) Examples:

     (i) The taxpayer has received a statutory notice of deficiency, under I.R.C. §6212, which entitles the taxpayer to seek Tax Court review of a proposed tax deficiency. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek Tax Court review, this will not be a final tax liability until the taxpayer has exercised all judicial appeal rights.

     (ii) The IRS has filed a notice of Federal tax lien with respect to an assessed tax liability, and the taxpayer has been issued a notice under I.R.C. §6320 entitling the taxpayer to request a hearing with the IRS Office of Appeals contesting the lien filing, and to further appeal to the Tax Court if the IRS determines to sustain the lien filing. In the course of the hearing, the taxpayer is entitled to contest the underlying tax liability because the taxpayer has had no prior opportunity to contest the liability. This is not a delinquent tax because it is not a final tax liability because the taxpayer has had no prior opportunity to contest the underlying tax liability because the taxpayer has had no prior opportunity to contest the liability. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek tax court review, this will not be a final tax liability until the taxpayer has exercised all judicial appeal rights.

     (iii) The taxpayer has entered into an installment agreement pursuant to I.R.C. §6159. The taxpayer is making timely payments and is in full compliance with the agreement terms. The taxpayer is not delinquent because the taxpayer is not currently required to make full payment.

     (iv) The taxpayer has filed for bankruptcy protection. The taxpayer is not delinquent because enforced collection action is stayed under 11 U.S.C 362 (the Bankruptcy Code).

(ii)   The Offeror has ☒ has not ☒, within a three-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

  (2)   "Principals," for the purposes of this certification, means an officer, director, owner, partner, or a person having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment; and similar positions).

    This Certification Concerns a Matter Within the Jurisdiction of an Agency of the United States and the Making of a False, Fictitious, or Fraudulent Certification May Render the Maker Subject to Prosecution Under Section 1001, Title 18, United States Code.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information

of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

**(End of Provision)**   <span style="color:red">**Back to Top**</span>

**52.212-3 Offeror Representations and Certifications â€"Commercial Items (Alternate 1 & 2) (Feb 2009)**

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov. If an offeror has not completed the annual representations and certifications electronically at the ORCA website, the offeror shall complete only paragraphs (c) through (m) of this provision.

(a)   Definitions. As used in this provision:

"Emerging small business" means a small business concern whose size is no greater than 50 percent of the numerical size standard for the NAICS code designated.

"Forced or indentured child labor" means all work or service-

(1)   Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or

(2)   Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished by process or penalties.

â€œManufactured end productâ€ means any end product in Federal Supply Classes (FSC) 1000-9999, exceptâ€"

(1)   FSC 5510, Lumber and Related Basic Wood Materials;

(2)   Federal Supply Group (FSG) 87, Agricultural Supplies;

(3)   FSG 88, Live Animals;

(4)   FSG 89, Food and Related Consumables;

(5)   FSC 9410, Crude Grades of Plant Materials;

(6)   FSC 9430, Miscellaneous Crude Animal Products, Inedible;

(7)   FSC 9440, Miscellaneous Crude Agricultural and Forestry Products;

(8)   FSC 9610, Ores;

(9)   FSC 9620, Minerals, Natural and Synthetic; and

(10)   FSC 9630, Additive Metal Materials.

â€œPlace of manufactureâ€ means the place where an end product is assembled out of components, or otherwise made or processed from raw materials into the finished product that is to be provided to the Government. If a product is disassembled and reassembled, the place of reassembly is not the place of manufacture.

â€œRestricted business operationsâ€ means business operations in Sudan that include power production activities, mineral extraction activities, oil-related activities, or the production of military equipment, as those terms are defined in the Sudan Accountability and Divestment Act of 2007 (Pub. L. 110-174). Restricted business operations do not include business operations that the person conducting the business can demonstrateâ€"

(1)   Are conducted under contract directly and exclusively with the regional government of southern Sudan;

(2)   Are conducted pursuant to specific authorization from the Office of Foreign Assets Control in the Department of the Treasury, or are expressly exempted under Federal law from the requirement to be conducted under such authorization;

(3)   Consist of providing goods or services to marginalized populations of Sudan;

(4)   Consist of providing goods or services to an internationally recognized peacekeeping force or humanitarian organization;

(5)   Consist of providing goods or services that are used only to promote health or education; or

(6)   Have been voluntarily suspended.

"Service - disabled veteran - owned small business concern"-

(1)   Means a small business concern-

       (i)   Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

       (ii)  The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2)    Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and size standards in this solicitation.

"Veteran owned small business concern" means a small business concern-

(1)    Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2)    The management and daily business operations of which are controlled by one or more veterans.

"Women-owned business concern" means a concern which is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

"Women-owned small business concern" means a small business concern-

(1)    That is at least 51 percent owned by one or more women; or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2)    Whose management and daily business operations are controlled by one or more women.

(b)

    (1)   *Annual Representations and Certifications*. Any changes provided by the offeror in paragraph (b)(2) of this provision do not automatically change the representations and certifications posted on the Online Representations and Certifications Application (ORCA) website.

    (2)   The offeror has completed the annual representations and certifications electronically via the ORCA website at http://orca.bpn.gov. After reviewing the ORCA database information, the offeror verifies by submission of this offer that the representations and certifications currently posted electronically at FAR 52.212-3, Offeror Representations and Certifications—Commercial Items, have been entered or updated in the last 12 months, are current, accurate, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this offer and are incorporated in this offer by reference (see FAR 4.1201), except for paragraphs

_____.

*Offeror to identify the applicable paragraphs at (c) through (m) of this provision that the offeror has completed for the purposes of this solicitation only, if any.*

*These amended representation(s) and/or certification(s) are also incorporated in this offer and are current, accurate, and complete as of the date of this offer.*

*Any changes provided by the offeror are applicable to this solicitation only, and do not result in an update to the representations and certifications posted on ORCA.]*

(c)    Offerors must complete the following representations when the resulting contract is to be performed inside the United States or its outlying areas. Check all that apply.

    (1)*

       Small business concern. The offeror represents as part of its offer that it ☒ is, ☒ is not a small business concern. (See below)

| NAICS: | Description: | Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

    (2)*

Veteran-owned small business concern. The offeror represents as part of its offer that it ☒ is, ☒ is not a veteran-owned small business concern. (See Below)

| NAICS: | Description: | Veteran-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(3)* Service-disabled veteran-owned small business concern.The offeror represents as part of its offer that it ☒ is, ☒ is not a service-disabled veteran-owned small business concern. (See Below)

| NAICS: | Description: | Service-Disabled Veteran-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(4) Small disadvantaged business concern. The offeror represents, for general statistical purposes, that it ☒ is, ☒ is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(5)* Women-owned small business concern. The offeror represents that it ☒ is, ☒ is not a women-owned small business concern. (See Below)

| NAICS: | Description: | Women-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | No |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | No |

*Small business concern, Veteran-owned small business concern, Service-disabled veteran-owned small business concern, and Women-owned small business concern status was calculated based on the NAICS codes, Number of Employees, and Average Annual Gross Revenues listed in the CCR Registration for â€œCompany Nameâ€ along with the Small Business Administration size standard for each NAICS code.

**Note:** Complete paragraphs (c)(6) and (c)(7) only if this solicitation is expected to exceed the simplified acquisition threshold.

(6) Women-owned business concern (other than small business concern). [Complete only if the offeror is a women-owned business concern and did not represent itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents that it ☒ is a women-owned business concern.

(7) Tie bid priority for labor surplus area concerns. If this is an invitation for bid, small business offerors may identify the labor surplus areas in which costs to be incurred on account of manufacturing or production (by offeror or first-tier subcontractors) amount to more than 50 percent of the contract price:

| State | Eligible Labor Surplus: | Civil Jurisdictions Included: |
|---|---|---|

(8)

Small Business Size for the Small Business Competitiveness Demonstration Program and for the Targeted Industry Categories under the Small Business Competitiveness Demonstration Program.

(i)  The offeror represents as part of its offer that it ☒ is ☒ is not an emerging small business. (See below)

| NAICS: | Description: | Emerging Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(ii)  Offeror represents as follows:

(A) Offeror's number of employees for the past 12 months (check the Employees column if size standard stated in the solicitation is expressed in terms of number of employees); or

(B) Offeror's average annual gross revenue for the last 3 fiscal years (check the Average Annual Gross Number of Revenues column if size standard stated in the solicitation is expressed in terms of annual receipts).(Check one of the following):

Number of Employees Average Annual Gross Revenues

☒ __ 50 or fewer          ☒ __ $1 million or less

☒ __ 51-100               ☒ __ $1,000,001-$2 million

☒ __ 101-250              ☒ __ $2,000,001-$3.5 million

☒ __ 251-500              ☒ __ $3,500,001-$5 million

☒ __ 501-750              ☒ __ $5,000,001-$10 million

☒ __ 751-1,000            ☒ __ $10,000,001-$17 million

☒ __ Over 1,000           ☒ __ Over $17 million

(9) (i)  General. The offeror represents that either-

(A) ☒ is ☒ is not certified by the Small Business Administration as a small disadvantaged business concern and identified, on the date of this representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration (PRO-Net), and that no material change in disadvantaged ownership and control has occurred since its certification, and, where the concern is owned by one or more individuals claiming disadvantaged status, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); or

(B) It ☒ has ☒ has not submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(ii)  ☒ Joint Ventures under the Price Evaluation Adjustment for Small Disadvantaged Business Concerns. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements in 13 CFR 124.1002(f) and that the representation in paragraph (c)(9)(i) of this provision is accurate for the small disadvantaged business concern that is participating in the joint

venture [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: ].

(10) HUBZone small business concern. The offeror represents, as part of its offer, that-

    (i) It ☒ is It ☒ is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and

    (ii) It ☒ is It ☒ is not a joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (c)(10)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. [The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture: .] Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(d) Representations required to implement provisions of Executive Order 11246-

  (1) Previous contracts and compliance. The offeror represents that-

    (i) It ☒ has It ☒ has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation; and

    (ii) It ☒ has It ☒ has not filed all required compliance reports.

  (2) Affirmative Action Compliance. The offeror represents that-

    (i) It ☒ has developed and has on file, It ☒ has not developed and does not have on file, at each establishment, affirmative action programs required by rules and regulations of the Secretary of Labor (41 cfr parts 60-1 and 60-2), or

    (ii) It ☒ has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(e) Certification Regarding Payments to Influence Federal Transactions (31 U.S.C. 1352).(Applies only if the contract is expected to exceed $100,000.) By submission of its offer, the offeror certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress or an employee of a Member of Congress on his or her behalf in connection with the award of any resultant contract. If any registrants under the Lobbying Disclosure Act of 1995 have made a lobbying contact on behalf of the offeror with respect to this contract, the offeror shall complete and submit, with its offer, OMB Standard Form LLL, Disclosure of Lobbying Activities, to provide the name of the registrants. The offeror need not report regularly employed officers or employees of the offeror to whom payments of reasonable compensation were made.

(f) Buy American Act Certificate. (Applies only if the clause at Federal Acquisition Regulation (FAR) 52.225-1, Buy American Act-Supplies, is included in this solicitation.)

  (1) The offeror certifies that each end product, except those listed in paragraph (f)(2) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The offeror shall list as foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of "domestic end product." The terms "commercially available off-the-shelf (COTS) item" "component," "domestic end product," "end product," "foreign end product," and "United States" are defined in the clause of this solicitation entitled "Buy American Act"Supplies."

  (2) Foreign End Products:

| Description: | Country of Origin: |
| --- | --- |

  (3) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(g) (1) Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate. (Applies only if the clause at FAR 52.225-3, Buy American Act- Free Trade Agreements-Israeli Trade Act, is included in this solicitation.)

  (i) The offeror certifies that each end product, except those listed in paragraph (g)(1)(ii) or (g)(1)(iii) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The terms â€œBahrainian or Moroccan end product,â€ â€œcommercially available off-the-shelf (COTS) item,â€ â€œcomponent,â€ â€œdomestic end product,â€ â€œend product,â€ â€œforeign end product,â€ â€œFree Trade Agreement country,â€ â€œFree Trade Agreement country end product,â€ â€œIsraeli end product,â€ and â€œUnited Statesâ€ are defined in the clause of this solicitation entitled â€œBuy American Actâ€"Free Trade Agreements-Israeli Trade Act.â€

  (ii) The offeror certifies that the following supplies are Free Trade Agreement country end products (other than Bahrainian or Moroccan end products) or Israeli end products as defined in the clause of this solicitation entitled â€œBuy American Actâ€" Free Trade Agreementsâ€"Israeli Trade Actâ€: Free Trade Agreement Country End Products (Other than Bahrainian or Moroccan End Products) or Israeli End Products:

| Description: | Country of Origin: |
|---|---|

  (iii) The offeror shall list those supplies that are foreign end products (other than those listed in paragraph (g)(1)(ii) of this provision) as defined in the clause of this solicitation entitled â€œBuy American Actâ€"Free Trade Agreementsâ€"Israeli Trade Act.â€ The offeror shall list as other foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of â€œdomestic end product.â€
  Other Foreign End Products:

| Description: | Country of Origin: |
|---|---|

  (iv) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(2) Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate, Alternate I. If Alternate I to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

  (g)(1)(ii) The offeror certifies that the following supplies are Canadian end products as defined in the clause of this solicitation entitled "Buy American Act- Free Trade Agreements-Israeli Trade Act": Canadian End Products:

| Description: | Country of Origin: |
|---|---|

(3) Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate, Alternate II. If Alternate II to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

  (g)(1)(ii) The offeror certifies that the following supplies are Canadian end products or Israeli end products as defined in the clause of this solicitation entitled "Buy American Act-Free Trade Agreements-Israeli Trade Act": Canadian or Israeli End Products:

| Description: | Country of Origin: |
|---|---|

(4) Trade Agreements Certificate. (Applies only if the clause at FAR 52.225-5, Trade Agreements, is included in this solicitation.)

  (i) The offeror certifies that each end product, except those listed in paragraph (g)(4)(ii) of this provision, is a U.S.-made, or designated country, end product, as defined in the clause of this solicitation entitled "Trade Agreements."

  (ii) The offeror shall list as other end products those end products that are not U.S.-made, or designated country, end products.
  Other End Products:

| Description: | Country of Origin: |
|---|---|

  (iii) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25. For line items covered by the WTO GPA, the Government will evaluate offers of U.S.-made, or designated country, end products without regard to the restrictions of the Buy American Act. The Government will consider for award only offers of U.S.-made, or designated country, end products

unless the Contracting Officer determines that there are no offers for such products or that the offers for such products are insufficient to fulfill the requirements of the solicitation.

(h)  Certification Regarding Responsibility Matters (Executive Order 12689).(Applies only if the contract value is expected to exceed the simplified acquisition threshold.) The offeror certifies, to the best of its knowledge and belief, that the offeror and/or any of its principals-

(1)  ☒ Are, ☒ Are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency; and

(2)  ☒ Have, ☒ Have not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a Federal, state or local government contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, violating Federal criminal tax laws,or receiving stolen property; and

(3)  ☒ Are, ☒ Are not presently indicted for, or otherwise criminally or civilly charged by a Government entity with, commission of any of these offenses (h)(2) of this clause.

(4)  ☒ Have, ☒ Have not within a three-year period preceding this offer, been notified of any delinquent Federal taxes in an amount that exceeds $3,000 for which the liability remains unsatisfied.

(i)  Taxes are considered delinquent if both of the following criteria apply:

(A)  The tax liability is finally determined. The liability is finally determined if it has been assessed. A liability is not finally determined if there is a pending administrative or judicial challenge. In the case of a judicial challenge to the liability, the liability is not finally determined until all judicial appeal rights have been exhausted.

(B)  The taxpayer is delinquent in making payment. A taxpayer is delinquent if the taxpayer has failed to pay the tax liability when full payment was due and required. A taxpayer is not delinquent in cases where enforced collection action is precluded.

(ii)  Examples:

(A)  The taxpayer has received a statutory notice of deficiency, under I.R.C. §§ 6212, which entitles the taxpayer to seek Tax Court review of a proposed tax deficiency. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek Tax Court Review, this will not be a final tax liability under the taxpayer has exercised all judicial appeal rights.

(B)  The IRS has filed a notice of Federal tax lien with respect to an assessed tax liability, and the taxpayer has been issued a notice under I.R.C. §§ 6320 entitling the taxpayer to request a hearing with the IRS Office of Appeals contesting the lien filing, and to further appeal to the Tax Court if the IRS determines to sustain the lien filing. In the course of the hearing, the taxpayer is entitled to contest the underlying tax liability because the taxpayer has had no prior opportunity to contest the liability. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek tax court review, this will not be a final tax liability until the tax payer has exercised all judicial appeal rights.

(C)  The taxpayer has entered into an installment agreement pursuant to I.R.C. §§ 6159. The taxpayer is making timely payments and is in full compliance with the agreement terms. The taxpayer is not delinquent because the taxpayer is not currently required to make full payment.

(D)  The taxpayer has filed for bankruptcy protection. The taxpayer is not delinquent because enforced collection action is stayed under II U. S. C 362 (the Bankruptcy Code).

(i)  Certification Regarding Knowledge of Child Labor for Listed End Products (Executive Order 13126). [The Contracting Officer must list in paragraph (i)(1) any end products being acquired under this solicitation that are included in the List of Products Requiring Contractor Certification as to Forced or Indentured Child Labor, unless excluded at 22.1503(b).]

(1)  Listed end products.

**Listed End Products    Listed Country of Origin**

| | |
|---|---|
| Bamboo | Burma |
| Beans (including yellow, soya, and green beans) | Burma |
| Bricks (hand-made) | Burma, Pakistan |
| Chilies | Burma |
| Corn | Burma |
| Pineapples | Burma |
| Rice | Burma |
| Rubber | Burma |
| Shrimp (acquaculture) | Burma |
| Sugarcane | Burma |
| Teak | Burma |

(2) Certification. [If the Contracting Officer has identified end products and countries of origin in paragraph (i)(1) of this provision, then the offeror must certify to either (i)(2)(i) or (i)(2)(ii) by checking the appropriate block.]

☒ (i) The offeror will not supply any end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product.

☒ (ii) The offeror may supply an end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that it has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture any such end product furnished under this contract. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

(j) *Place of Manufacture*(Does not apply unless the solicitation is predominantly for the acquisition of manufactured end products.) For statistical purposes only, the offeror shall indicate whether the place of manufacture of the end products it expects to provide in response to this solicitation is predominantlyâ€"

(1) ☒ In the United States (Check this box if the total anticipated price of offered end products manufactured in the United States exceeds the total anticipated price of offered end products manufactured outside the United States); or

(2) ☒ Outside the United States.

| FSC Code: | Place of Manufacture: |
|---|---|

(k) *Certificates regarding exemptions from the application of the Service Contract Act.*(Certification by the offeror as to its compliance with respect to the contract also constitutes its certification as to compliance by its subcontractor if it subcontracts out the exempt services.)[*The contracting officer is to check a box to indicate if paragraph (k)(1) or (k)(2) applies.*]

(1) ☒ Maintenance, calibration, or repair of certain equipment as described in FAR 22.1003-4(c)(1). The offeror ☒ does, ☒ does not certify that __

(i) The items of equipment to be serviced under this contract are used regularly for other than Governmental purposes and are sold or traded by the offeror (or subcontractor in the case of an exempt subcontract) in substantial quantities to the general public in the course of normal business operations;

(ii) The services will be furnished at prices which are, or are based on, established catalog or market prices (see FAR 22.1003-4(c)(2)(ii)) for the maintenance, calibration, or repair of such equipment; and

(iii) The compensation (wage and fringe benefits) plan for all service employees performing work under the contract will be the same as that used for these employees and equivalent employees servicing the same equipment of commercial customers.

(2) ☒ Certain services as described in FAR 22.1003-4(d)(1). The offeror ☒ does, ☒ does not certify that __

(i) The services under the contract are offered and sold regularly to non-Governmental customers, and are provided by the offeror (or subcontractor in the case of an exempt subcontract) to the general public in substantial quantities in the course of normal business operations;

(ii) The contract services will be furnished at prices that are, or are based on, established catalog or market prices (see FAR 22.1003-4(d)(2)(iii));

(iii) Each service employee who will perform the services under the contract will spend only a small portion of his or her time (a monthly average of less than 20 percent of the available hours on an annualized basis, or less than 20 percent of available hours during the contract period if the contract period is less than a month) servicing the Government contract; and

(iv) The compensation (wage and fringe benefits) plan for all service employees performing work under the contract is the same as that used for these employees and equivalent employees servicing commercial customers.

(3) If paragraph (k)(1) or (k)(2) of this clause applies ___

(i) If the offeror does not certify to the conditions in paragraph (k)(1) or (k)(2) and the Contracting Officer did not attach a Service Contract Act wage determination to the solicitation, the offeror shall notify the Contracting Officer as soon as possible; and

(ii) The Contracting Officer may not make an award to the offeror if the offeror fails to execute the certification in paragraph (k)(1) or (k)(2) of this clause or to contact the Contracting Officer as required in paragraph (k)(3)(i) of this clause.

(l) *Taxpayer Identification Number (TIN)* (26 U.S.C. 6109, 31 U.S.C. 7701). (Not applicable if the offeror is required to provide this information to a central contractor registration database to be eligible for award.)

(1) All offerors must submit the information required in paragraphs (l)(3) through (l)(5) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the Internal Revenue Service (IRS).

(2) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(3) *Taxpayer Identification Number (TIN).*

- ☒ <u>TIN on file with CCR.</u>

- ☒ TIN has been applied for.

- TIN is not required because:

- ☒ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States; ,

- ☒ Offeror is an agency or instrumentality of a foreign government; ,

- ☒ Offeror is an agency or instrumentality of the Federal Government.

(4) *Type of organization.*

- ☒ sole proprietorship;

- ☒ Partnership;

- ☒ Corporate entity (not tax-exempt);

- ☒ Corporate entity (tax-exempt);

- ☒ Government entity (Federal, State, or local);

- ☒ Foreign government;

- ☒ International organization per 26 CFR 1.6049-4;

- ☒ **Limited Liability Company**

(5) *Common parent.*

- ☒ Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

- ☒ Name: N/A
   TIN: **TIN not on File with ORCA**

(m)  *Restricted business operations in Sudan.* By submission of its offer, the offeror certifies that it does not conduct any restricted business operations in Sudan.

Alternate I (Apr 2002)

As prescribed in 12.301(b)(2), add the following paragraph (c)(11) to the basic provision:

(11) (Complete if the offeror has represented itself as disadvantaged in paragraph (c)(4) or (c)(9) of this provision.) [The offeror shall check the category in which its ownership falls]:

☒ Black American.

☒ Hispanic American.

☒ Native American (American Indians, Eskimos, Aleuts, or Native Hawaiians).

☒ Asian-Pacific American (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China, Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru).

☒ Subcontinent Asian (Asian-Indian) American (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands, or Nepal).

☒ Individual/concern, other than one of the preceding.

Alternate II (Oct 2000)

As prescribed in 12.301(b)(2), add the following paragraph (c)(9)(iii) to the basic provision:

(iii)  Address. The offeror represents that its address ☒ is, ☒ is not in a region for which a small disadvantaged business procurement mechanism is authorized and its address has not changed since its certification as a small disadvantaged business concern or submission of its application for certification. The list of authorized small disadvantaged business procurement mechanisms and regions is posted at http://www.arnet.gov/References/ sdbadjustments.htm. The offeror shall use the list in effect on the date of this solicitation. "Address," as used in this provision, means the address of the offeror as listed on the Small Business Administration's register of small disadvantaged business concerns or the address on the completed application that the concern has submitted to the Small Business Administration or a Private Certifier in accordance with 13 CFR part 124, subpart B. For joint ventures, "address" refers to the address of the small disadvantaged business concern that is participating in the joint venture.

**(End of Provision)**    **Back to Top**

**52.214-14 Place of Performance-Sealed Bidding (Apr 1985)**

(a)
  The bidder, in the performance of any contract resulting from this solicitation, ☒ intends, ☒ does not intend [check applicable box] to use one or more plants or facilities located at a different address from the address of the bidder as indicated in this bid.

(b) If the bidder checks "intends" in paragraph (a) of this provision, it shall insert in the spaces provided below the required information:

Name and Address of Owner and Operator of the Plant or Facility if Other than Bidder

| Address of Place of Performance (Street, Address, City, County, State, Zip Code): | Owner/Operator: | Owner Address (Street, Address, City, County, State, Zip Code): |
|---|---|---|
| | | |

**(End of Provision)**    **Back to Top**

**52.215-6 Place of Performance (Oct 1997)**

(a)
  The offeror or respondent, in the performance of any contract resulting from this solicitation, ☒ intends ☒ does not intend [check applicable box] to use one or more plants or facilities located at a different address from the address of the offeror or respondent as indicated in this proposal or response to request for information.

(b) If the offeror or respondent checks "intends" in paragraph (a) of this provision, it shall insert in the following spaces the required information:

Name and Address of Owner and Operator of the Plant or Facility if Other than Bidder

| Address of Place of Performance (Street, Address, City, County, State, Zip Code): | Owner/Operator: | Owner Address (Street, Address, City, County, State, Zip Code): |
|---|---|---|
| | | |

**(End of Provision)**    **Back to Top**

**52.219-1 Small Business Program Representations (May 2004)**

(a) (1) The North American Industry Classification System (NAICS) code for this acquisition is See Note.*

(2) The small business size standard is See Note.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations.

(1)
** The offeror represents as part of its offer that it ☒ is, ☒ is not a small business concern (see below).

| NAICS: | Description: | Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(2) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents, for general statistical purposes, that it ☒ is, ☒ is not, a small disadvantaged business concern as defined in 13 CFR 124.1002.

(3) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this
** provision.] The offeror represents as part of its offer that it ☒ is, ☒ is not a women-owned small business concern.

(See Below)

| NAICS: | Description: | |
|---|---|---|
| | | |

| | | Women-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | No |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | No |

(4) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents as part of its offer that it ☒ is, ☒ is not a veteran-owned small business concern. **

| NAICS: | Description: | Veteran-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(5) [Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (b)(4) of this provision.] The offeror represents as part of its offer that it ☒ is, ☒ is not a service-disabled veteran-owned small business concern. **
(See Below)

| NAICS: | Description: | Service-Disabled Veteran-Owned Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

*If you are responding to a Government solicitation for supplies or services under a NAICS code not listed in paragraph (b) of this certification, you must provide this certification directly to the Contracting Officer.*

**Small business concern, Veteran-owned small business concern, Service-disabled veteran-owned small business concern, and Women-owned small business concern status was calculated based on the NAICS codes, Number of Employees, and Average Annual Gross Revenues listed in the CCR Registration for â€œCompany Name â€ along with the Small Business Administration size standard for each NAICS code.**

(6) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents, as part of its offer, that-

(i) It ☒ is, ☒ is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and

(ii) It ☒ is, ☒ is not a joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (b)(6)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. [The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture: .] Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(c)

Definitions. As used in this provision-

"Service-disabled veteran-owned small business concern"-

(1) Means a small business concern-

    (i)  Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

    (ii)  The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and the size standard in paragraph (a) of this provision.

"Veteran-owned small business concern" means a small business concern-

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

"Women-owned small business concern" means a small business concern-

(1) That is at least 51 percent owned by one or more women; or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(d) Notice.

(1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small, HUBZone small, small disadvantaged, or women-owned small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to section 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall-

    (i)  Be punished by imposition of fine, imprisonment, or both;

    (ii)  Be subject to administrative remedies, including suspension and debarment; and

    (iii) Be ineligible for participation in programs conducted under the authority of the Act.

### Alternate I (Apr 2002)

As prescribed in 19.308(a)(2), add the following paragraph (b)(7) to the basic provision:

(7) [Complete if offeror represented itself as disadvantaged in paragraph (b)(2) of this provision.] The offeror shall check the category in which its ownership falls:

☒ Black American.

☒ Hispanic American.

☒ Native American (American Indians, Eskimos, Aleuts, or Native Hawaiians).

☒ Asian-Pacific American (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China, Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru).

☒ Subcontinent Asian (Asian-Indian) American (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands, or Nepal).

☒ Individual/concern, other than one of the preceding.

**(End of Provision)**   **Back to Top**

**52.219-2 Equal Low Bids (Oct 1995)**

(a) This provision applies to small business concerns only

(b) The bidder's status as a labor surplus area (LSA) concern may affect entitlement to award in case of tie bids. If the bidder wishes to be considered for this priority, the bidder must identify, in the following space, the LSA in which the costs to be incurred on account of manufacturing or production (by the bidder or the first-tier subcontractors) amount to more than 50 percent of the contract price.

| State | Eligible Labor Surplus | Civil Jurisdictions Included: |
|---|---|---|

(c) Failure to identify the labor surplus areas as specified in paragraph (b) of this provision will preclude the bidder from receiving priority consideration. If the bidder is awarded a contract as a result of receiving priority consideration under this provision and would not have otherwise received award, the bidder shall perform the contract or cause the contract to be performed in accordance with the obligations of an LSA concern.

**(End of Provision)**   **Back to Top**

**52.219-19 Small Business Concern Representation for the Small Business Competitiveness Demonstration Program (Oct 2000)**

(a)   Definition. "Emerging small business" as used in this solicitation, means a small business concern whose size is no greater than 50 percent of the numerical size standard applicable to the North American Industry Classification System (NAICS) code assigned to a contracting opportunity.

(b)   [Complete only if the Offeror has represented itself under the provision at 52.219-1 as a small business concern under the size standards of this solicitation.] The Offeror ☒ is ☒ is not an emerging small business. (See below)

| NAICS: | Description: | Emerging Small Business Concern (Yes/No): |
|---|---|---|
| 236220 | COMMERCIAL AND INSTITUTIONAL BUILDING CONSTRUCTION | Yes |
| 237990 | OTHER HEAVY AND CIVIL ENGINEERING CONSTRUCTION | Yes |

(c)   [Complete only if the Offeror is a small business or an emerging small business, indicating its size range.] Offeror's number of employees for the past 12 months [check this column if size standard stated in solicitation is expressed in terms of number of employees] or Offeror's average annual gross revenue for the last 3 fiscal years [check this column if size standard stated in solicitation is expressed in terms of annual receipts]. [Check one of the following.]

Number of Employees    Average Annual Gross Revenues

☒ __ 50 or fewer          ☒ __ $1 million or less

☒ __ 51-100               ☒ __ $1,000,001-$2 million

☒ __ 101-250              ☒ __ $2,000,001-$3.5 million

☒ __ 251-500              ☒ __ $3,500,001-$5 million



☒ __ 501-750               ☒ __ $5,000,001-$10 million

☒ __ 751-1,000             ☒ __ $10,000,001-$17 million

☒ __ Over 1,000            ☒ __ Over $17 million

**(End of Provision)**   **Back to Top**

**52.219-21 Small Business Size Representation for Targeted Industry Categories under the Small Business Competitiveness Demonstration Program (May 1999)**

[Complete only if the Offeror has represented itself under the provision at 52.219-1 as a small business concern under the size standards of this solicitation.] Offeror's number of employees for the past 12 months [check this column if size standard stated in solicitation is expressed in terms of number of employees] or Offeror's average annual gross revenue for the last 3 fiscal years [check this column if size standard stated in solicitation is expressed in terms of annual receipts]. [Check one of the following.]

Number of Employees Average Annual Gross Revenues

☒ __ 50 or fewer           ☒ __ $1 million or less

☒ __ 51-100                ☒ __ $1,000,001-$2 million

☒ __ 101-250               ☒ __ $2,000,001-$3.5 million

☒ __ 251-500               ☒ __ $3,500,001-$5 million

☒ __ 501-750               ☒ __ $5,000,001-$10 million

☒ __ 751-1,000             ☒ __ $10,000,001-$17 million

☒ __ Over 1,000            ☒ __ Over $17 million

**(End of Provision)**   **Back to Top**

**52.219-22 Small Disadvantaged Business Status (Oct 1999)**

(a) General. This provision is used to assess an offeror's small disadvantaged business status for the purpose of obtaining a benefit on this solicitation. Status as a small business and status as a small disadvantaged business for general statistical purposes is covered by the provision at FAR 52.219-1, Small Business Program Representation.

(b) Representations.

   (1)  General. The offeror represents, as part of its offer, that it is a small business under the size standard applicable to this acquisition; and either-

   ☒ (i) It has received certification by the Small Business Administration as a small disadvantaged business concern consistent with 13 CFR 124, Subpart B; and

      (A) No material change in disadvantaged ownership and control has occurred since its certification;

      (B) Where the concern is owned by one or more disadvantaged individuals, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

      (C) It is identified, on the date of its representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration (PRO-Net); or

   ☒ (ii) It has submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

   (2)

☒ For Joint Ventures. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements at 13 CFR 124.1002(f) and that the representation in paragraph (b)(1) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: .]

(c) Penalties and Remedies. Anyone who misrepresents any aspects of the disadvantaged status of a concern for the purposes of securing a contract or subcontract shall-

(1)  Be punished by imposition of a fine, imprisonment, or both;

(2)  Be subject to administrative remedies, including suspension and debarment; and

(3)  Be ineligible for participation in programs conducted under the authority of the Small Business Act.

**Alternate I (Oct 1998)**

As prescribed in 19.307(b) 19.308(b), add the following paragraph (b)(3) to the basic provision:

(3)

Address. The offeror represents that its address ☒ is ☒ is not in a region for which a small disadvantaged business procurement mechanism is authorized and its address has not changed since its certification as a small disadvantaged business concern or submission of its application for certification. The list of authorized small disadvantaged business procurement mechanisms and regions is posted at http://www.arnet.gov/References/sdbadjustments.htm. The offeror shall use the list in effect on the date of this solicitation. "Address," as used in this provision, means the address of the offeror as listed on the Small Business Administration's register of small disadvantaged business concerns or the address on the completed application that the concern has submitted to the Small Business Administration or a Private Certifier in accordance with 13 CFR part 124, subpart B. For joint ventures, "address" refers to the address of the small disadvantaged business concern that is participating in the joint venture.

**(End of Provision)  Back to Top**

**52.222-18 Certification Regarding Knowledge of Child Labor for Listed End Products (Feb 2001)**

(a) Definition:

"Forced or indentured child labor" means all work or service-

(1)  Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or

(2)  Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished by process or penalties.

(b) Listed end products. The following end product(s) being acquired under this solicitation is (are) included in the List of Products Requiring Contractor Certification as to Forced or Indentured Child Labor, identified by their country of origin. There is a reasonable basis to believe that listed end products from the listed countries of origin may have been mined, produced, or manufactured by forced or indentured child labor.

| Listed End Products | Listed Country of Origin |
|---|---|
| Bamboo | Burma |
| Beans (including yellow, soya, and green beans | Burma |
| Bricks (hand-made) | Burma, Pakistan |
| Chilies | Burma |
| Corn | Burma |
| Pineapples | Burma |
| Rice | Burma |
| Rubber | Burma |
| Shrimp (acquaculture) | Burma |
| Sugarcane | Burma |
| Teak | Burma |

(c)

Certification. The Government will not make award to an offeror unless the offeror, by checking the appropriate block, certifies to either paragraph (c)(1) or paragraph (c)(2) of this provision

☒ (1) The offeror will not supply any end product listed in paragraph (b) of this provision that was mined, produced, or manufactured in a corresponding country as listed for that end product.

☒ (2) The offeror may supply an end product listed in paragraph (b) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that it has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture such end product. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

**(End of Provision)    Back to Top**

**52.222-22 Previous Contracts and Compliance Reports (Feb 1999)**

The offeror represents that-

(a) It ☒ has It ☒ has not participated in a previous contract or subcontract subject the Equal Opportunity clause of this solicitation;

(b) It ☒ has It ☒ has not filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

**(End of Provision)    Back to Top**

**52.222-25 Affirmative Action Compliance (Apr 1984)**

The offeror represents that-

(a) It ☒ has developed and has on file, ☒ has not developed and does not have on file, at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2); or

(b) It ☒ has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

**(End of Provision)    Back to Top**

**52.222-48 Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment Certification (Feb 2009)**

(a)   The offeror shall check the following certification:

Certification

The offeror ☒ does ☒ does not certify that -

(1)   The items of equipment to be serviced under this contract are used regularly for other than Government purposes, and are sold or traded by the offeror (or subcontractor in the case of an exempt subcontractor) in substantial quantities to the general public in the course of normal business operations;

(2)   The services will be furnished at prices which are, or are based on, established catalog or market prices for the maintenance, calibration, or repair of equipment.

(i)   An â€œestablished catalog priceâ€ is a price included in a catalog, price list, schedule, or other form that is regularly maintained by the manufacturer or the offeror, is either published or otherwise available for inspection by customers, and states prices at which sales currently, or were last, made to a significant number of buyers constituting the general public.

(ii)

An â€œestablished market priceâ€ is a current price, established in the usual course of trade between buyers and sellers free to bargain, which can be substantiated from sources independent of the manufacturer or offeror; and

(3) The compensation (wage and fringe benefits) plan for all service employees performing work under the contract are the same as that used for these employees and equivalent employees servicing the same equipment of commercial customers.

(b) Certification by the offeror as to its compliance with respect to the contract also constitutes its certification as to compliance by its subcontractor if it subcontracts out the exempt services. If the offeror certifies to the conditions in paragraph (a) of this provision, and the Contracting Officer determines in accordance with FAR 22.1003-4(c)(3) that the Service Contract Actâ€

(1) Will not apply to this offeror, then the Service Contract Act of 1965 clause in this solicitation will not be included in any resultant contract to this offeror; or

(2) Will apply to this offeror, then the clause at 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements, in this solicitation will not be included in any resultant contract awarded to this offeror, and the offeror may be provided an opportunity to submit a new offer on that basis.

(c) If the offeror does not certify to the conditions in paragraph (a) of this provisionâ€

(1) The clause in this solicitation at 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipmentâ€" Requirements, will not be included in any resultant contract awarded to this offeror; and

(2) The offeror shall notify the Contracting Officer as soon as possible, if the Contracting Officer did not attach a Service Contract Act wage determination to the solicitation.

(d) The Contracting Officer may not make an award to the offeror, if the offeror fails to execute the certification in paragraph (a) of this provision or to contact the Contracting Officer as required in paragraph (c) of this provision.

**(End of Provision)    Back to Top**

**52.222-52 Exemption from Application of the Service Contract Act to Contracts for Certain Servicesâ€" Certification. (Nov 2007)**

(a) The offeror shall check the following certification:

Certification

The offeror ☒ does ☒ does not certify that -

(1) The services under the contract are offered and sold regularly to non-Governmental customers, and are provided by the offeror (or subcontractor in the case of an exempt subcontract) to the general public in substantial quantities in the course of normal business operations;

(2) The contract services are furnished at prices that are, or are based on, established catalog or market prices. An â€œestablished catalog priceâ€ is a price included in a catalog, price list, schedule, or other form that is regularly maintained by the manufacturer or the offeror, is either published or otherwise available for inspection by customers, and states prices at which sales currently, or were last, made to a significant number of buyers constituting the general public. An â€œestablished market priceâ€ is a current price, established in the usual course of ordinary and usual trade between buyers and sellers free to bargain, which can be substantiated from sources independent of the manufacturer or offeror;

(3) Each service employee who will perform the services under the contract will spend only a small portion of his or her time (a monthly average of less than 20 percent of the available hours on an annualized basis, or less than 20 percent of available hours during the contract period if the contract period is less than a month) servicing the Government contract; and

(4) The offeror uses the same compensation (wage and fringe benefits) plan for all service employees performing work under the contract as the offeror uses for these employees and for equivalent employees servicing commercial customers.

(b) Certification by the offeror as to its compliance with respect to the contract also constitutes its certification as to compliance by its subcontractor if it subcontracts out the exempt services. If the offeror certifies to the conditions

in paragraph (a) of this provision, and the Contracting Officer determines in accordance with FAR 22.1003-4(d) (3) that the Service Contract Actâ€"

(1) Will not apply to this offeror, then the Service Contract Act of 1965 clause in this solicitation will not be included in any resultant contract to this offeror; or

(2) Will apply to this offeror, then the clause at FAR 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Servicesâ€"Requirements, in this solicitation will not be included in any resultant contract awarded to this offer, and the offeror may be provided an opportunity to submit a new offer on that basis.

(c) If the offeror does not certify to the conditions in paragraph (a) of this provisionâ€"

(1) The clause of this solicitation at 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Servicesâ€"Requirements, will not be included in any resultant contract to this offeror; and

(2) The offeror shall notify the Contracting Officer as soon as possible if the Contracting Officer did not attach a Service Contract Act wage determination to the solicitation.

(d) The Contracting Officer may not make an award to the offeror, if the offeror fails to execute the certification in paragraph (a) of this provision or to contact the Contracting Officer as required in paragraph (c) of this provision.

**(End of Provision)**    Back to Top

**52.223-4 Recovered Material Certification (May 2008)**

LW CONSTRUCTION OF CHARLESTON, LLC  has elected not to complete this provision. Information pertaining to this provision, must be submitted to the Government with individual offers/proposals.

**(End of Provision)**    Back to Top

**52.223-9 Estimate of Percentage of Recovered Material Content for EPA-Designated Items**

LW CONSTRUCTION OF CHARLESTON, LLC  has elected not to complete this provision. Information pertaining to this provision, must be submitted to the Government with individual offers/proposals.

**(End of Provision)**    Back to Top

**52.223-13 Certification of Toxic Chemical Release Reporting (Aug 2003)**

(a) Executive Order 13148, of April 21, 2000, Greening the Government through Leadership in Environmental Management, requires submission of this certification as a prerequisite for contract award.

(b) By signing this offer, the offeror certifies that-

(1) As the owner or operator of facilities that will be used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), the offeror will file and continue to file for such facilities for the life of the contract the Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of EPCRA and section 6607 of PPA; or

(2) None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons: [Check each block that is applicable.]

☒ (i)    The facility does not manufacture, process, or otherwise use any toxic chemicals listed in 40 CFR 372.65;

☒ (ii)    The facility does not have 10 or more full-time employees as specified in section 313(b)(1)(A) of EPCRA, 42 U.S.C. 11023(b)(1)(A);

☒ (iii)    The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

☒ (iv)    The facility does not fall within the following Standard Industrial Classification (SIC) codes or their corresponding North American Industry Classification System sectors:

(A) Major group code 10 (except 1011, 1081, and 1094.
(B) Major group code 12 (except 1241).
(C) Major group codes 20 through 39.
(D) Industry code 4911, 4931, or 4939 (limited to facilities that combust coal and/or oil for the purpose of generating power for distribution in commerce).
(E) Industry code 4953 (limited to facilities regulated under the Resource Conservation and Recovery Act, Subtitle C (42 U.S.C. 6921, *et seq.*), or 5169, or 5171, or 7389 (limited to facilities primarily engaged in solvent recovery services on a contract or fee basis); or

☒ (v)    The facility is not located in the United States or its outlying areas.

**(End of Provision)**   **Back to Top**

**52.225-2 Buy American Act Certificate (Feb 2009)**

(a) The offeror certifies that each end product, except those listed in paragraph (b) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The offeror shall list as foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of â€œdomestic end product.â€ The terms â€œcommercially available off-the-shelf (COTS) item,â€ â€œcomponent,â€ â€œdomestic end product,â€ â€œend product,â€ â€œforeign end product,â€ and â€œUnited Statesâ€ are defined in the clause of this solicitation entitled â€œBuy American Actâ€"Supplies.â€

(b) Foreign End Products:

| Description: | Country of Origin: |
|---|---|

(c) The Government will evaluate offers in accordance with the policies and procedures of Part 25 of the Federal Acquisition Regulation.

**(End of Provision)**   **Back to Top**

**52.225-4 Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate (Feb 2009)**

(a) The offeror certifies that each end product, except those listed in paragraph (b) or (c) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The terms â€œBahrainian or Moroccan end product,â€ â€œcommercially available off-the-shelf (COTS) item,â€ â€œcomponent,â€ â€œdomestic end product,â€ â€œend product,â€ â€œforeign end product,â€ â€œFree Trade Agreement country,â€ â€œFree Trade Agreement country end product,â€ â€œIsraeli end product,â€ andâ€ â€œUnited Statesâ€ are defined in the clause of this solicitation entitled â€œBuy American Actâ€"Free Trade Agreementsâ€"Israeli Trade Act.â€

(b) The offeror certifies that the following supplies are Free Trade Agreement country end products (other than Bahrainian or Moroccan end products) or Israeli end products as defined in the clause of this solicitation entitled â€œBuy American Act-Free Trade Agreements-Israeli Trade Actâ€: Free Trade Agreement Country End Products (Other than Bahrainian or Moroccan End Products) or Israeli End Products:â€

| Description: | Country of Origin: |
|---|---|

(c) The offeror shall list those supplies that are foreign end products (other than those listed in paragraph (b) of this provision) as defined in the clause of this solicitation entitled â€œBuy American Actâ€"Free Trade Agreementsâ€"Israeli Trade Act.â€ The offeror shall list as other foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of â€œdomestic end product.â€

Other Foreign End Products:

| Description: | Country of Origin: |
|---|---|

(d) The Government will evaluate offers in accordance with the policies and procedures of Part 25 of the Federal Acquisition Regulation.

**Alternate I (Jan 2004)**

As prescribed in 25.1101 (b)(2)(ii), substitute the following paragraph (b) for paragraph (b) of the basic provision:

(b) The offeror certifies that the following supplies are Canadian end products as defined in the clause of this solicitation entitled "Buy American Act-Free Trade Agreements-Israeli Trade Act": Canadian End Products:

| Description: | Country of Origin: |
| --- | --- |

### Alternate II (Jan 2004)

As prescribed in 25.1101(b)(2)(iii), substitute the following paragraph (b) for paragraph (b) of the basic provision:

(b) The offeror certifies that the following supplies are Canadian end products or Israeli end products as defined in the clause of this solicitation entitled "Buy American Act-Free Trade Agreements-Israeli Trade Act": Canadian or Israeli End Products:

| Description: | Country of Origin: |
| --- | --- |

**(End of Provision)**  **Back to Top**

**52.225-6 Trade Agreements Certificate (Jan 2005)**

(a) The offeror certifies that each end product, except those listed in paragraph (b) of this provision, is a U.S.-made, or designated country, end product, as defined in the clause of this solicitation entitled "Trade Agreements."

(b) The offeror shall list as other end products those supplies that are not U.S.-made, or designated country, end products. Other End Products:

| Description: | Country of Origin: |
| --- | --- |

(c) The Government will evaluate offers in accordance with the policies and procedures of Part 25 of the Federal Acquisition Regulation. For line items covered by the WTO GPA, the Government will evaluate offers of U.S.-made, or designated country, end products without regard to the restrictions of the Buy American Act. The Government will consider for award only offers of U.S.-made, or designated country, end products unless the Contracting Officer determines that there are no offers for those products or that the offers for those products are insufficient to fulfill the requirements of this solicitation.

**(End of Provision)**  **Back to Top**

**52.225-18 Place of Manufacture. (Sept 2006)**

(a) *Definitions.* As used in this clause-
â€œ Manufactured end productâ€ means any end product in Federal Supply Classes (FSC) 1000-9999, exceptâ€"

(1) FSC 5510, Lumber and Related Basic Wood Materials;
(2) Federal Supply Group (FSG) 87, Agricultural Supplies;
(3) FSG 88, Live Animals;
(4) FSG 89, Food and Related Consumables;
(5) FSC 9410, Crude Grades of Plant Materials;
(6) FSC 9430, Miscellaneous Crude Animal Products, Inedible;
(7) FSC 9440, Miscellaneous Crude Agricultural and Forestry Products;
(8) FSC 9610, Ores;
(9) FSC 9620, Minerals, Natural and Synthetic; and
(10) FSC 9630, Additive Metal Materials.

â€œPlace of manufactureâ€ means the place where an end product is assembled out of components, or otherwise made or processed from raw materials into the finished product that is to be provided to the Government. If a product is disassembled and reassembled, the place of reassembly is not the place of manufacture.

(b) For statistical purposes only, the offeror shall indicate whether the place of manufacture of the end products it expects to provide in response to this solicitation is predominantlyâ€"

(1) ☒ In the United States (Check this box if the total anticipated price of offered end products manufactured in the United States exceeds the total anticipated price of offered end products manufactured outside the United States); or

(2)   ☒  Outside the United States.

| FSC Code: | Place of Manufacture: |
|-----------|----------------------|

**(End of Clause)**   <u>Back to Top</u>

**52.226-2 Historically Black College or University and Minority Institution Representation (Oct 2008)**

(a) Definitions. As used in this provision-
"Historically black college or university" means an institution determined by the Secretary of Education to meet the requirements of 34 CFR 608.2. For the Department of Defense, the National Aeronautics and Space Administration, and the Coast Guard, the term also includes any nonprofit research institution that was an integral part of such a college or university before November 14, 1986.
"Minority institution" means an institution of higher education meeting the requirements of Section 365(3) of the Higher Education Act of 1965 (20 U.S.C. 1067k), including a Hispanic-serving institution of higher education, as defined in Section 502(a) of the Act (20 U.S.C. 1101a).

(b) Representation. The offeror represents that it-

☒ is ☒ is not a historically black college or university;

☒ is ☒ is not a minority institution.

**(End of Provision)**   <u>Back to Top</u>

**52.227-15 Representation of Limited Rights Data and Restricted Computer Software (Dec 2007)**

(a)   This solicitation sets forth the Government's known delivery requirements for data (as defined in the clause at 52.227-14, Rights in Data—General). Any resulting contract may also provide the Government the option to order additional data under the Additional Data Requirements clause at 52.227-16, if included in the contract. Any data delivered under the resulting contract will be subject to the Rights in Data—General clause at 52.227-14 included in this contract. Under the latter clause, a Contractor may withhold from delivery data that qualify as limited rights data or restricted computer software, and deliver form, fit, and function data instead. The latter clause also may be used with its Alternates II and or III to obtain delivery of limited rights data or restricted computer software, marked with limited rights or restricted rights notices, as appropriate. In addition, use of Alternate V with this latter clause provides the Government the right to inspect such data at the Contractor's facility.

(b)   By completing the remainder of this paragraph, the offeror represents that it has reviewed the requirements for the delivery of technical data or computer software and states [offeror check appropriate block]—

(1)   ☒  None of the data proposed for fulfilling such requirements qualifies as limited rights data or restricted computer software; or

(2)   ☒  Data proposed for fulfilling such requirements qualify as limited rights data or restricted computer software and are identified as follows:

(c)   Any identification of limited rights data or restricted computer software in the offeror's response is not determinative of the status of the data should a contract be awarded to the offeror.

**(End of Provision)**   <u>Back to Top</u>

LW CONSTRUCTION OF CHARLESTON, LLC
829189864

Click to download a pdf copy of FAR for your record    [ Download FAR PDF ]

Note: Download may take a minute, please click only once to avoid an error

The ORCA website is best viewed using Internet Explorer 6.0 or higher or Netscape 7.x or higher
NOTE: Session will terminate after 20 minutes of inactivity.
Click Here for feedback or comments form.

# **EXHIBIT 4**

# CCR/FedReg Detail Search Results

Not to be used as certifications and representations. See ORCA for official certification.

**Current Registration Status:** Active in CCR; Registration valid until 03/30/2010.

**DUNS:** 829189864

**DUNS PLUS4:**

**CAGE/NCAGE:** 5ADM2

**Legal Business Name:** LW CONSTRUCTION OF CHARLESTON, LLC

**Doing Business As (DBA):**

**Division Name:**

**Division Number:**

**Company URL:**

**Physical Street Address 1:** 8300 DORCHESTER ROAD

**Physical Street Address 2:**

**Physical City:** CHARLESTON

**Physical State:** SC

**Physical Foreign Province:**

**Physical Zip/Postal Code:** 29418-2903

**Physical Country:** USA

**Mailing Name:** LW CONSTRUCTION OF CHARLESTON

**Mailing Street Address 1:** 8300 DORCHESTER ROAD

**Mailing Street Address 2:**

**Mailing City:** CHARLESTON

**Mailing State:** SC

**Mailing Foreign Province:**

**Mailing Zip/Postal Code:** 29418-2903

**Mailing Country:** USA

**Business Start Date:** 08/18/2008

## CORPORATE INFORMATION

### Type of Organization

Other

### Business Types/Grants

2X – For-Profit Organization

A5 – Veteran Owned Business

B1 – Construction Firm

LJ – Limited Liability Company

QF – Service Disabled Veteran Owned Business

VN - Contracts

**DISASTER RESPONSE INFORMATION**

**Bonding Levels**

**Construction Bonding Level, Per Contract (dollars):**

**Construction Bonding Level, Aggregate (dollars):**

**Service Bonding Level, Per Contract (dollars):**

**Service Bonding Level, Aggregate (dollars):**

**Geographic Areas Served**

No geographic areas specified

**GOODS / SERVICES**

**North American Industry Classification System (NAICS)**

236220 - Commercial and Institutional Building Construction
237990 - Other Heavy and Civil Engineering Construction

**Standard Industrial Classification (SIC)**

1541 - INDUSTRIAL BUILDINGS AND WAREHOUSES
1542 - NONRESIDENTIAL CONSTRUCTION, NEC

**Product Service Codes (PSC)**

---

**Federal Supply Classification (FSC)**

---

**SMALL BUSINESS TYPES**

SDB, 8A and HubZone certifications come from the Small Business Administration and are not editable by CCR vendors.

**Business Types Expiration Date**

---                    ---

| North American Industry Classification System (NAICS) | | | |
|---|---|---|---|
| The small business size status is derived from the receipts, number of employees, assets, barrels of oil, and/or megawatt hours entered by the vendor during the registration process. | | | |
| **NAICS Code** | **Description** | **Small Business** | **Emerging Small Business** |
| 236220 | Commercial and Institutional Building Construction | Yes | Yes |
| 237990 | Other Heavy and Civil Engineering Construction | Yes | Yes |

**CCR POINTS OF CONTACT**

### Government Business Primary POC
**Name:** LOUIS WHITE
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-209-0206
**Non-U.S. Phone:**
**Fax:** 843-552-9072

### Government Business Alternate POC
**Name:** CHRISTINA MCALHANEY
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-552-0150 Ext.203
**Non-U.S. Phone:**
**Fax:** 843-552-9072

### Past Performance Primary POC
**Name:** LOUIS WHITE
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-209-0206
**Non-U.S. Phone:**
**Fax:** 843-552-9072

### Past Performance Alternate POC
**Name:** CHRISTINA MCALHANEY
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-552-0150 Ext.203
**Non-U.S. Phone:**
**Fax:** 843-552-9072

### Electronic Business Primary POC
**Name:** LOUIS WHITE
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-209-0206
**Non-U.S. Phone:**
**Fax:** 843-552-9072

### Electronic Business Alternate POC
**Name:** CHRISTINA MCALHANEY
**Address Line 1:** 8300 DORCHESTER ROAD
**Address Line 2:**
**City:** CHARLESTON
**State:** SC
**Foreign Province:**
**Zip/Postal Code:** 29418-2903
**Country:** USA
**U.S. Phone:** 843-552-0150 Ext.203
**Non-U.S. Phone:**
**Fax:** 843-552-9072



## VETBIZ REGISTRY

## Search Results

| Export to Excel | Viewing **1-1** out of **1** | 10 per page |
| Export to Access | **Page 1 of 1** | |
| Print Results | | Search Again |

### Search Criteria:
Business='LW Construction%', Service Disabled='Y'



| View | ∨ Business | ∨ City | ∨ State | ∨ Phone | ∨ Web S |
|------|-----------|--------|---------|---------|---------|
| 🔍 | LW Construction of Charleston | Charleston | SC | 843-552-0150 ext 212 | |

Search | Register | Update | Help | Home | Contact | Veteran Resources

Reviewed/Updated Date: December 21, 2007

# **EXHIBIT 5**



## Y--Fort Jackson National Cemetery Phase 1B Development
**Solicitation Number: VA-101-09-RP-0100**
Agency: Department of Veterans Affairs
Office: VA Office of Construction & Facilities Management
Location: Department of Veterans Affairs Office of Facilities Management

**Notice Type:**
Presolicitation

**Posted Date:**
March 11, 2009

**Response Date:**
April 24, 2009

**Archiving Policy:**
Automatic, on specified date

**Archive Date:**
June 23, 2009

**Original Set Aside:**
N/A

**Set Aside:**
Service-Disabled Veteran-Owned

**Classification Code:**
Y -- Construction of structures and facilities

**NAICS Code:**
237 -- Heavy and Civil Engineering Construction/237990 -- Other Heavy and Civil Engineering Construction

**Synopsis:**
Added: Mar 11, 2009 10:40 am
The Department of Veterans Affairs (VA), Office of Construction and Facilities Management have set-aside for
Service-Disabled Veteran-Owned Small Business (SDVOSB), Solicitation Number RFP VA 101-09-RP-0100 for
construction services at the Fort Jackson National Cemetery, Columbia, SC. The SDVOSB must be a General
Construction company with an approved NAICS Code 237990, Size Standard $33.5 million and bonding capacity.

The SDVOSB contractor shall provide construction services for development of approximately 4,200 pre-placed
concrete crypts, a 2,000 niche columbarium and 1,200 ground sites for cremated remains. The project will develop
approximately 50 acres to include access roads; an entrance area; flag/assembly area/two committal shelters; an
administration building/public information center with electronic gravesite locator and public restrooms; memorial
walkway/donations area; maintenance building/complex/ road system/ parking/ utilities/ signage; site furnishings;
fencing; irrigation system; utility distribution system; environmental preservation and mitigation. The estimated cost
for this project is between $10,000,000 and $20,000,000. The approximate Construction Duration will be 540
calendar days.

NOTICE TO PRIME (GENERAL) CONTRACTORS: The SDVOSB must be registered in the Central Contractor

Registration (CCR) database at http://www.ccr.gov prior to award and must also be registered as a SDVOSB firm at the VetBiz Vendor Information Pages at http://www.vip.vetbiz.gov.

SOLICITATION and AMENDMENTS: Prospective Offerors must obtain copies of solicitation documents from FedBizOpps, which will be available on or about March 25, 2009. By registering at FedBizOpps (http://www.fedbizopps.gov) the Offerors will have access to downloading plans, specifications and amendments, which will be available only in Adobe PDF electronic format. The Offerors must be registered in CCR, have a DUNS Number to download documents. By registering for the Register to Receive Notification list at http://www.fedbizopps.gov, you will be notified by e-mail of any new amendments that have been issued and posted. No other notification of amendments will be provided. Potential Offerors are advised that they are responsible for obtaining and acknowledging any amendments to the solicitation.

PRE-PROPOSAL CONFERENCE: A Pre-proposal conference will be held on April 6, 2009, at 1:00 pm Eastern time at the Fort Jackson National Cemetery, 4170 Percival Road, Columbia, SC 29229. A site visit will be conducted immediately following the pre-proposal conference. The offerors shall submit questions to the Contracting Officer but not later than April 10, 2009 at 4:30 pm Eastern time. The government will respond to all questions not later than April 15, 2009 via an amendment.

There will be no public bid opening. All Offerors must ensure that their firms have the ability to provide both 100% Performance and Payment Bonds. In addition, the Offerors will be required to submit a bid guarantee with their proposal. The proposals will be evaluated and award made utilizing the Best Value method per FAR Part 15. Offerors are advised award may be made without discussion.

Proposals are due to the Contracting Officer by 2:00 PM EST on April 24, 2009. If you have any questions, please contact Greg Sabater at 202-461-8273 or email Gregory.M.Sabater@va.gov.

**Contracting Office Address:**
Department of Veterans Affairs;Office of Construction and;Facilities Management (00CFM3B);811 Vermont AVE, NW;Washington DC 20420

**Place of Performance:**
Fort Jackson National Cemetery;4170 Percival Road;Columbia, SC
29229
US

**Point of Contact(s):**
Gregory Sabater (Contract Specialist) 202-461-8273Ed Carlos (Project Manager) 202-461-8940

Contracting Officer
_____

**Opportunity History**

- **Original Synopsis**
  Mar 11, 2009
  10:40 am